No. 11-1259

**UNITED STATES OF AMERICA**
**FOR THE FIRST CIRCUIT**

**UNITED STATES,**

**Appellee**

**v.**

**ANTONIO ORTIZ-APONTE**

**Defendant- Appellant**

---

**ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

**APPELLANTS' BRIEF**

**RAFAEL F. CASTRO LANG**
**Federal Circuit Bar #26074**
**Attorney for Appellant**
**P.O. Box 9023222**
**San Juan, P. R. 00902-3222**
**(787) 723-3672 - 723-1809**
**rafacastro@prtc.net**
**castrolang@centennialpr.net**

# TABLE OF CONTENTS

PAGE

Jurisdiction                                                1

Statement of the Case                                       2-3

Statement of Facts                                          4-10

Statement of Issues                                         10-12

Summary of Argument                                        12-13

Argument

    1- Ortiz-Aponte's guilty plea should be set aside because it    13-20
was not entered voluntarily, knowingly or intelligently.  Where plea
agreement informed that Ortiz Aponte faced a mandatory penalty of
60 months for the 18 U.S.C. 924(c)(1)(A) violation but failed to
advise that said time period was a mandatory minimum without
informing him of maximum potential penalty nor was such an error
corrected during the change of plea hearing nor was he ever advised
that he could receive a consecutive sentence for any other unexpired
sentence Rule 11 core violations occurred that render guilty plea null
and void.

    Errors cannot be considered harmless in light of ten year
sentence imposed by Judge for the firearms count and consecutive
federal sentence to the unexpired local conviction.

    2- District Court Judge committed procedural error when he    20-27
determined that local firearms conviction was not related to federal
indictment which led to an incorrect guideline computation. He also
erred in taking into consideration to determine the sentence imposed
incorrect-unrelated facts all of which led to imposition of an
"*unreasonable*" sentence.

Procedural error also occurred during sentence hearing when Judge failed to inquire with Ortiz-Aponte if his attorney had reviewed with him the pre-sentence report as required by Fed. R. Cr. P. 32(i)(1)(A) and in failing to state why he was imposing a ten year sentence in the firearms count.

3- Prosecutor violated terms of plea agreement when she stated it included   a consecutive federal sentence to the local ten year sentence which increased penalty the parties had agreed to recommend of 130 months that justifies setting aside guilty plea.    27-32

4- Waiver of appeal clause cannot be enforced in this case.    32-35

Conclusion    35

# Cases

<u>Gall V. U.S.</u> 128 s.Ct. 586,596-597((2007) ..................................................... 27

<u>McCarthy v. U.S.</u> 394 U.S.  459, 464(1968) ................................................... 19

<u>Santobello v. U.S.</u>, 404 U.S. 257, 262 (1971) ............................................... 29

<u>U.S. v. Allard</u>, 926 F.2d 1237, 1243(1st Cir. 1991) ......................................... 16

<u>U.S. v. Borrero Acevedo</u>, 533 F.3d 11, 15 (1st Cir. 2008) ................................ 31

<u>U.S. v. Borrero-Acevedo</u>, 533 F.3d 11,13 (1st Cir. 2008) ................................. 17

<u>U.S. v. Bowman</u>, 634 F.3d 357,360-361(6th Cir.2011) ...................................... 33

<u>U.S. v. Cardona-Diaz</u>, 524 F.3d 20, 24 (1st Cir. 2008) .................................... 29

<u>U.S. v. Castro-Gomez</u>, 233 F.3d 684, 687 (1st Cir. 2000) ............................... 15

<u>U.S. v. Cotal-Crespo</u> 47 F.3d 1,4(1st Cir. 1995) ............................................ 19

<u>U.S. v. Davila-Gonzalez</u>, 595 F.3d 42,47(1st Cir. 2010) ................................. 24

<u>U.S. v. Dominguez Benitez</u>, 542 U.S. 74,83(2004) ......................................... 18

<u>U.S. v. Fernandez-Cabrera</u>, 625 F.3d 48,51 (1st Cir. 2010)..................................... 32, 33

<u>U.S. v. Gibbons</u>, 553 F.3d 40,45-46 (1st Cir. 2009) ....................................... 23

<u>U.S. v. Gigot</u>, 147 F.3d 1193,1199-1200 (10th Cir. 1998) .............................. 16

<u>U.S. v. Gonzalez-Castillo</u>, 562 F.3d 80,83-84 (1st Cir. 2009) ......................... 26

<u>U.S. v. Gray</u>, 581 F.3d 749,751-755 (8th Cir. 2009) ....................................... 16

<u>U.S. v. Gray</u>, 63 F.3d 57, 60-61(1st Cir. 1995) ............................................... 16

<u>U.S. v. Jaramillo-Suarez</u>, 857 F.2d 1368,1369-1473 (9th Cir. 1987) ......................... 16, 19

U.S. v. Jimenez-Beltre 440 F3d 514(1st Cir. 2006).......................................... 27

U.S. v. Martin 520 F.3d 87,91(1st Cir. 2008)................................................ 27

U.S. v. Medina-Silverio, 30 F.3d 1,2-4(1st Cir. 1994).................................... 16

U.S. v. Merced-Rodriguez, 2009 US App. Lexis 6338 (1st Cir.)....................... 34

U.S. v. Nguyen, 618 F.3d 72, 74 (1st Cir. 2010) ............................................ 27

U.S. v. Olano, 507 U.S. 725, 736 (1993)...................................................... 17

U.S. v. Parra-Ibañez, 936 F.2nd 588, 593 (1st Cir. 1991) ............................. 34

U.S. v. Portillo-Cano, 192 F.3rd 1246, 1250-1251 (9th Cir. 1999) .................. 34

U.S. v. Powell, 50 F.3d 94, 104 (1st Cir. 1995)............................................. 24

U.S. v. Rivera-Rodriguez, 489 F.3d 48,57(1st Cir. 2007)........................... 30, 31

U.S. v. Santiago-Rivera, 594 F.3d 82,83-84 (1st Cir. 2010) ........................... 25

U.S. v. Sebastian, 612 F.3d 47 (1st Cir. 2010) ............................................. 17

U.S. v. Siegel, 102 F.3d 477, 481-482 (11th Cir. 1996)................................. 16

U.S. v. Teeter, 257 F.3d 14,25 (1st Cir. 2001) ......................................... 34,35

U.S. v. Velez Carrero, 77 F.3d 11-12 (1st Cir. 1996) ..................................... 29

U.S. v. Vonn, 535 U.S. 55,59(2002) .......................................................... 17

U.S. v. Whitlow, 287 F.3rd 638, 640(7th Cir. 2002) ..................................... 34

U.S. v. Yazbeck, 524 F.2d 641,643(1st Cir. 1975)........................................ 20

## STATUTES

18 U.S.C. 924 (c)(1)(A) ........................................................ 2, 10, 12, 20, 22, 25, 26

18 U.S.C. 924(c)(1)(A)(i) ........................................................ 14

21 U.S.C. 841(a)(1) ................................................................ 2

21 U.S.C. 846 ........................................................................ 2

28 U.S.C. 1291 ...................................................................... 1

Fed.R.App.P.Rule 4(b)(I) ...................................................... 1

Fed.R.Crim.P. 11 ........................................ 12, 15, 16, 17, 18, 33, 34

Fed.R.Crim.P. 32(i)(1)(A) ..................................................11, 19, 27

U.S.S.G. 1B1.3 ...................................................................... 24

U.S.S.G. 5G1.3(b) ................................................................ 24

U.S.S.G. 5G1.3(c) ................................................................ 33

## STATEMENT REGARDING RECORD CITATION

References to the Addendum, transcript, and other parts of the record below will be as follows:

**"Add"** refers to the Addendum, followed by the page number (e.g. Add. 20)

**"Tr"** refers to portions of the trial transcript.  If they are not followed by an App. or Add. they have not been included in the Appendix nor the Addendum  (e.g. Tr. 10/16. pg. 75)

(e.g. Tr. 10/16. pg. 75)

No. 11-1259

## UNITED STATES OF AMERICA
## FOR THE FIRST CIRCUIT

### UNITED STATES,

### Appellee

### v.

### ANTONIO ORTIZ-APONTE

### Defendant – Appellant
_____

## APPELLANT'S BRIEF

**HEREIN** appears appellant Antonio Ortiz Aponte through his undersigned counsel and most respectfully submits his Brief to this Hon. Court:

## JURISDICTION

The Court has jurisdiction over appeals from final orders of the District Court under Title 28, United States Code, Section 1291. In the instant case, the District Court's judgment is a final order subject to appeal under 28 USC sec. 1291. Rule 4(b)(I) of the Federal Rules of Appellate Procedure, requires that a notice of appeal in a criminal case be filed in the District Court within fourteen (14) days after the entry of judgment or order appealed. In this case appellant's sentence was entered on 2/14/11. (Docket entry #1187-Add. 27) A timely notice of appeal was filed on 2/14/11. (Docket Entry #1224, Add. 86)

2

## <u>STATEMENT OF THE CASE</u>

Appellant Antonio Ortiz-Aponte was indicted with 109 other defendants for having engaged in a conspiracy to possess with intent to distribute in excess of 1 kilogram of heroin, 50 grams of crack, 5 kilograms of cocaine, 100 kilograms of marihuana, oxycodone and Xanax from the year 2005 until the return of the indictment on July 14, 2010, in the Municipality of Bayamon, in the District of P.R., **elsewhere,** and within 1,000 ft. of a public housing facility authority at Virgilio Davila Public Housing Project, Las Gardenias housing Project, Brisas de Bayamon Housing Project, Falin Torrench Housing project, and other areas within the Municipality of Bayamon, P.R. in violation of 21 U.S.C. 846, 841(a)(1) and 860(count one);and for aiding and abetting in the  carriage and use of  firearms during and in relation to a drug trafficking crime during the same time period and places in violation of  18 U.S.C. 924 (c)(1)(A) and 2.(count two). He was allegedly an enforcer of the drug organization and on occasions acted as a drug processor. (Add. 1-26)

The case was assigned to District Court Judge J.A. Fuste.

Appellant was represented by court appointed counsel  Javier Cuyar-Olivo.

Ortiz-Aponte negotiated a plea agreement  whereby he pled guilty to both counts of the indictment and if his criminal history category was I, the parties would recommend a t erm of 70 months incarceration as to count one and a

consecutive term of 60 months on the firearms count two, for a total term of 130 months incarceration. (Add. 36)

Two pre-sentence reports were prepared (filed separately under seal)that concluded that a firearms conviction of defendant in the local courts was related to the offenses charged in the indictment leaving his criminal history at I, and a guideline calculation that matched the one found in the plea agreement. No objections were filed to the PSR by any of the parties.

At the sentence hearing (Add. 67-85) Hon. Judge Fuste sua ponte without providing advance notice to the parties rejected the un-objected finding of relatedness of the local conviction, established a criminal history category of II, and sentenced Ortiz-Aponte to 97 months in the drug conspiracy count, 120 months in the firearms count to be served consecutively with each other for a total of 217 months to be served consecutively with the undischarged 10 year state conviction. (Add. 28, 82)

Ortiz-Aponte filed a pro-se notice of appeal complaining of ineffective assistance of counsel, not knowing the consequences of his acceptance of guilt and that the Judge breached all of the terms of his plea agreement based on "*ill conceived and without the proper facts.*" (Add. 86)

## STATEMENT OF FACTS

As appears from the plea agreement "*the parties will recommend a sentence of 70 months imprisonment as to count One and a sentence of 60 months of imprisonment as to count Two, to be served consecutively. The total combined sentence recommended by the parties would be a term of imprisonment of 130 months of imprisonment, assuming a CHC I. If the defendant is a CHC II or higher the parties will recommend the lower end of the applicable guideline range.*" (Add. 36) The plea agreement fails to mention what treatment would be given to other convictions for sentencing purposes. It did stipulate that "*The United States and the defendant agree that no further adjustments or departures to the defendant's base offense level shall be sought by the parties.*"(Add. 37)

As to the penalty that Ortiz-Aponte was facing in the 924(c)(1) firearms charged in count Two, the plea agreement informed "*The defendant understands that in relation to COUNT TWO a consecutive term of imprisonment of sixty(60) months is mandatory.*"(Add. 34) **It failed to specify any maximum term of imprisonment or any range of incarceration in excess of 60 months.**

At the change of plea hearing the only admonitions provided by District Court Judge Fuste concerning the penalty Ortiz-Aponte faced in count two were:

> "*THE COURT:  And of course you know, because it says here, that the sentence regarding the gun count is consecutive to the sentence imposed in the drug count.  In other words, gun counts are consecutive to drug counts. Do you understand that?*

*THE DEFENDANT:  Yes.*
*THE COURT:  And it mentions here 60 months mandatory consecutive. Do you understand that?*
*THE DEFENDANT:  Yes.*
*THE COURT:  Okay.  You are proposing a guideline calculation here. Because of the stipulation you entered with the Government, you start with a base offense level of 28.  Two points are added because of the location where the facts took place. Because you accepted your involvement and if you clearly demonstrate that at the end of the day, I could give up to three points for acceptance of criminal responsibility. And then your adjusted base offense level should be in the neighborhood of a 27.*
*And assuming no criminal history, your Guideline Imprisonment Range should be 70 to 87 months with the understanding that there is of course a 60-month statutory mandatory minimum, plus the 60-month consecutive sentence for the gun.  Do you understand that?*
*THE DEFENDANT:  Yes.*"  (Add. 60, C.O.P. Hearing)


**It is clear that Ortiz-Aponte was never informed during the change of plea hearing nor in the plea agreement the maximum penalty he was exposed to as to Count Two.**

When the case was called for sentencing Judge Fuste never inquired with Ortiz-Aponte if his court appointed counsel had reviewed with him the pre-sentence report:

"*MR. CUYAR:  Good morning, Your Honor. Javier Cuyar-Olivo on behalf of Antonio Ortiz-Aponte.  We are ready to proceed.*
*THE COURT:  Give me one second.*
*Well, let me ask you this: Have you engaged in settlement negotiations, in plea negotiations?*
*COURTROOM DEPUTY:  This is a sentencing.*

> *THE COURT:  A sentencing. One minute. Sorry. Let me look at something here. Yes, I have it right here. Absolutely. Let me take a look at something. Give me a minute.*
> *Okay. I see from the record now that there are no objections to the report, correct?*
> *MR. CUYAR: That's correct, Your Honor.*" (Add. 69- Sent. H)

A waiver of appeal clause was included in the plea that stated; "*The defendant hereby agrees that if this Honorable Court accepts this agreement and sentences defendant according to its terms, conditions and* **recommendations,** *the defendant waives and surrenders the right to appeal the judgment and sentence in this case.*" (Add. 39)

The two unobjected pre-sentence reports filed followed the same guideline computation of the plea agreement establishing a t otal offense level of 27, a criminal history category of I, with a guideline imprisonment Range of 70-87 months as to the drug conspiracy charged in count one and a consecutive sentence of not less than 60 months in count two. (PSR, parr. 62-68, pg. 21; parr. 88, pg. 26)

As to his criminal convictions the pre-sentence report reflected that Ortiz-Aponte was arrested in Camuy, P.R. on April 20, 2006, and charged with illegal possession of several firearms. On December 14, 2010 he pled guilty in the Superior Court of Arecibo and was sentenced to a total of 10 years incarceration. (Pg. 22, parr. 70, PSR dated 1/19/11, docket 1039, filed under seal) The pre-sentence report **expressly stated** *"The defendant has one(1) prior conviction, which did not yield criminal history points as it was considered relevant*

*conduct*.**" (pg. 22, par. 71, PSR filed on 1/19/11) **The government never objected to said finding by the probation officer.**

During the sentence hearing District Court Judge Fuste on his own brought up the issue as to whether he should treat said conviction as relevant conduct in this case since the arrest did not occur in Bayamon. (Tr. Sent. H.-Add. 70) Ortiz-Aponte's court appointed counsel argued that the incident was clearly related since it occurred during the time period of the conspiracy where he was indicted as an enforcer and the government had included the arrest and firearms seized as part of the evidence it was going to present at trial to establish his guilt. Although the arrest occurred outside of the Municipality of Bayamon, the prosecutor that sought the arrest warrants was the District Attorney's Office of Bayamon. Merely because the arrest occurred outside of Bayamon did not render the event as unrelated to the conspiracy charged since the possession of the firearms in the year 2006 had to do with his being an enforcer of the organization. (Tr. Sent. H.-Add. 71-74) **The prosecutor admitted that "***it is correct that that evidence was to be used in this case in order to prove the fact that he had weapons for the organization.***"(Tr. Sent. H.-Add. 73)**

Judge Fuste rejected treating the incident as related based on numerous facts that had nothing to do with Ortiz-Aponte's conduct:

8

"*THE COURT:  Let me tell you what's in my mind, because it is always good, we are told, Judges are instructed that honesty in sentencing is extremely important. And these days where you have so much unacceptable violence on this island – now last year we had almost one thousand murders committed by individuals who basically have weapons in violation of the law.*

*This month alone, January and February we are almost duplicating the same, the murder rate for the months of January of February of the year 2010.  At that rate we're going, we're going to surpass one thousand murders this year.*

*I am sitting here to sentence an individual who had a conviction in Arecibo for possession of a revolver with mutilated serial number. You know that that means. Stolen.*

*MR. CUYAR:  Yes, Your Honor.*

*THE COURT:  Smith and Wesson, nine millimeter pistol with mutilated serial number, carbon pistol, caliber 5.5; a Glock 40 millimeter pistol; 1,452 bullets of caliber 5.54 –56; 254 bullets of caliber .40; 16 bullets of caliber .45, even though he had not .45 firearms; 77 bullets of nine millimeters; plus some drugs.  Let's forget about drugs for the time being.*

*And you're telling me that he pled guilty, and that's fine, but I have to be convinced inside my own mind that this is related to the conspiracy that was going in this case in Bayamon, because if it wasn't, I don't think I should accept it just like that, as if it was – I need to know.  I have to – so we have to discuss it.*

*MR. CUYAR:  Well, that's the information, what we are stating, Your Honor, that it was in 2006, part of the conspiracy, but further, that it was provided in <u>Jencks</u> material.  And that when we verified the <u>Jenks</u> material, it was requested by the Bayamon District Attorney's Office.*

*THE COURT:  It doesn't mean much. I need a clear statement here on this record that for sure this stashing of firearms in Arecibo had – was related to the Bayamon conspiracy, because if it's a different crime, it's not relevant conduct; and I'm not letting guns by – I am not going to let guns go by easily, no way, because everybody sitting in this courtroom today can be a victim of this kind of individual, while even having an espresso coffee innocently somewhere.  That's the way it goes.  So I need to know.*"  (Add. Sent. H.-Add. 73-75)

It is clear that the sentencing Judge was retaliating against Ortiz-Aponte based on facts that were not part of his offense conduct such as the near one thousand murders that had occurred, that "*in this month alone, January and February we are almost duplicating the same, **the murder rate[1] for the months of January and February of the year 2010.**"[2]* He even made reference to "*everybody sitting in this courtroom today can be a victim of this kind of individual, while even having an espresso coffee innocently somewhere.*"[3]

The prosecutor jumped on the bandwagon and proceeded to inject into the plea agreement matters that are not mentioned nor included in the plea to justify imposing a consecutive federal sentence to the local ten year sentence:

> "*MS. HERNANDEZ:  Your Honor, there is another matter we also brought forward to defense counsel, and it's the fact when the prosecutor entered into the agreement, he made sure that it indicated that it were to run consecutive as to any other sentence, because he was aware that he had pled guilty in this case.  Nonetheless, that is the wording that he used in the sentence, that it be consecutive.*" (Sent. H.- Add. 78)

As appears from the plea agreement there is nothing that substantiates the allegation made by the prosecutor. In fact the plea is quite clear that "*The United States and the defendant acknowledge that the above stated terms and conditions*

---

[1] Ortiz-Aponte was not charged with any murders.

[2] Ortiz-Aponte was incarcerated during this time period. Said facts had nothing to do with his offense conduct.

[3] Ortiz-Aponte's offense conduct did not include any drive by shootings of innocent persons.

*constitute the entire plea agreement between the parties and deny the existence of* *any other terms and conditions not stated herein.*" (Add. 39) The plea agreement does not contemplate anywhere the existence of a prior conviction nor the treatment that should be given to one.

District Court Judge Fuste proceeded to find that the local conviction was not related, added three criminal history points establishing a criminal history category of II, and in total violation of the plea agreement sentenced Ortiz-Aponte to 97 months, the higher end of the guideline in the drug conspiracy count, and instead of five years he imposed a ten year consecutive term on the firearms count both to be served consecutively to the ten year unexpired local conviction. (Add. 28, 82)

Instead of the 130 month total incarceration term recommended in the plea agreement Ortiz Aponte was sentenced to a total of 217 months for the federal offenses consecutive to the local ten year sentence for a total of 337 months incarceration.

The present appeal followed.

## STATEMENT OF ISSUES

1- Ortiz-Aponte's guilty plea should be set aside because it was not entered voluntarily, knowingly or intelligently. Where plea agreement informed that Ortiz Aponte faced a mandatory penalty of 60 months for the 18 U.S.C. 924(c)(1)(A)

violation but failed to advise that said time period was a mandatory minimum without informing him of maximum potential penalty nor was such an error corrected during the change of plea hearing nor was he ever advised that he could receive a co nsecutive sentence for any other unexpired sentence Rule 11 core violations occurred that render guilty plea null and void.

Errors cannot be considered harmless in light of ten year sentence imposed by Judge for the firearms count and consecutive federal sentence to the unexpired local conviction.

2- District Court Judge committed procedural error when he determined that local firearms conviction was not related to federal indictment which led to an incorrect guideline computation. He also erred in taking into consideration to determine the sentence imposed incorrect-unrelated facts all of which led to imposition of an "*unreasonable*" sentence.

Procedural error also occurred during sentence hearing when Judge failed to inquire with Ortiz-Aponte if his attorney had reviewed with him the pre-sentence report as required by Fed. R. Cr. P. 32(i)(1)(A) and in failing to state why he was imposing a ten year sentence in the firearms count.

3- Prosecutor violated terms of plea agreement when she stated it included a consecutive federal sentence to the local ten year sentence which increased penalty

the parties had agreed to recommend of 130 months that justifies setting aside guilty plea.

4- Waiver of appeal clause cannot be enforced in this case.

## SUMMARY OF ARGUMENT

I-     Where appellant was misinformed in written plea agreement and in change of plea hearing that he was to be sentenced to a mandatory fixed consecutive term of 60 months for 18 U.S.C. 924(c)(1)(A) violation and never advised of the maximum penalty he faced nor was he informed of possible consecutive sentence if convicted for local offenses pending at time hearing was held Rule 11 core violations occurred that render plea involuntary nor entered knowingly or intelligently. Failure to properly inform Ortiz-Aponte of the possible consequences of his guilty plea mandates setting aside plea. Error cannot be considered harmless in light of ten year sentence imposed on the 924(c)(1)(A) count and consecutive federal sentence to local conviction for firearms.

II-     District Court's multiple procedural errors in determining applicable guideline by treating related case as unrelated, taking into consideration improper facts in determining sentence to be imposed, failing to explain why it imposed 10 year sentence of incarceration in firearms count and failing to inquire if presentence report had been reviewed with appellant at sentence hearing require

remand for re-sentencing before a different Judge. Resulting sentence was procedurally and substantively unreasonable and should be set aside.

III-    Where prosecutor incorrectly informed during sentence hearing that plea agreement called for imposition of a consecutive federal sentence to local conviction prosecutor violated terms of plea agreement which did not contemplate such a sentence which exceeded the 130 months the parties had agreed to recommend entitling Ortiz-Aponte to withdraw his guilty plea.

IV-    Waiver of appeal clause cannot be enforced where District Court committed Rule 11 core violations, incorrectly computed the guidelines used to impose sentence, took into consideration improper facts in determining sentence and failed to follow sentence recommendations as stipulated in plea agreement and waiver of appeal.

## ARGUMENT

**I- Ortiz-Aponte's guilty plea should be set aside because it was not entered voluntarily, knowingly or intelligently.   Where plea agreement informed that Ortiz Aponte faced a mandatory penalty of 60 months for 924(c)(1) violation but failed to advise that said time period was a mandatory minimum without informing him of maximum potential penalty nor was such an error corrected during the change of plea hearing nor was he ever advised that he could receive a consecutive sentence for any other unexpired sentence Rule 11 core violations occurred that render guilty plea null and void.**

**    Errors cannot be considered harmless in light of ten year sentence imposed by Judge for the firearms count and consecutive federal sentence to the unexpired local conviction.**

Rule 11(b)(1)(H) states:

"***Advising and Questioning the Defendant.*** *Before the Court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the Court must address the defendant personally in open Court. During this address, the Court must inform the defendant of, and determine that the defendant understands, the following:*
…….
*(H)* <u>*any maximum possible penalty,*</u> *including imprisonment, fine, and term of supervised release;*"

18 U.S.C. 924(c)(1)(A)(i) states:

"*Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –*
*(i)     Be sentenced to a term of imprisonment of not less than 5 years*."

As appears from the transcript of the change of plea hearing (Add. 44-66) the Court never informed Ortiz-Aponte of the maximum penalty he faced by pleading guilty to count two. The plea agreement did not provide that information either. The only penalty that was informed was that he faced "*a consecutive term of imprisonment of 60 months.*" (Add. 34) There is nothing in the record that establishes that when he pled guilty Ortiz-Aponte was informed as required by law

that he faced a sentencing range in count two that could reach life imprisonment. The impression created by the language of the plea agreement was that he faced a mandatory term of 60 months incarceration not more.

In <u>U.S. v. Castro-Gomez</u>, 233 F.3d 684, 687 (1ˢᵗ Cir. 2000) this Court reiterated the Rule 11 "*core concerns*" that must be addressed by the District Court when it accepts a guilty plea:

> "*Rule 11(c) of the Federal Rules of Criminal Procedure governs a Court's conduct when a defendant pleads guilty or nolo contendere. Specifically,* **the court must communicate** *to the defendant personally: "the nature of the charge to which the plea is offered, the* **mandatory minimum** penalty provided by law, if any, and the **maximum possible penalty provided by law**. Fed.R.Crim.P. 11(c)(1). This Court has identified three "core" concerns of Rule 11(c). They are: (1) that the plea is voluntary; (2) that the defendant understands the charge to which he has pled guilty; and (3) that the defendant knows the consequences of his guilty plea. Marrero-Rivera, 124 F.3d at 348 n.7. **The complete failure of the District Court to address one or more of these three concerns would warrant reversal.**" Id. at 348.*

In <u>Castro-Gomez</u>, supra, this Court set aside defendant's guilty plea because the court failed to inform him of the mandatory minimum term of incarceration he faced when it held the change of plea hearing.

As to the "*core concern*" related to "*defendant's knowledge of the consequences of the guilty plea*" it is clear that there was a complete failure to inform Ortiz-Aponte of the maximum penalty he faced once the court accepted his guilty plea to count two nor was he informed of the "*possible*" consecutive

sentence he faced related to his state charges which were pending at that time. Such a complete violation under the circumstances of this case requires that the guilty plea be set aside. See also <u>U.S. v. Gray</u>, 63 F.3d 57, 60-61(1st Cir. 1995); <u>U.S. v. Medina-Silverio</u>, 30 F.3d 1,2-4(1st Cir. 1994)

Numerous appellate courts have set aside guilty pleas due to the District Courts' failure to inform defendant at the change of plea hearing the maximum penalty he faced as required by Rule 11. See <u>U.S. v. Jaramillo-Suarez</u>, 857 F.2d 1368,1369-1473 (9th Cir. 1987); <u>U.S. v. Gray</u>, 581 F.3d 749,751-755 (8th Cir. 2009); <u>U.S. v. Siegel</u>, 102 F.3d 477, 481-482 (11th Cir. 1996); <u>U.S. v. Gigot</u>, 147 F.3d 1193,1199-1200 (10th Cir. 1998).

As recognized by this Court in <u>U.S. v. Allard</u>, 926 F.2d 1237, 1243 (1st Cir. 1991); "*In reaching a plea bargain,* **a defendant assesses the likelihood of conviction and balances that against the relative severity of the sentence he expects to receive pursuant to the agreement and that which could be imposed upon conviction.** *In many cases, that process results in a compromise pursuant to which the defendant makes a conscious decision to relinquish a perceived defence*. **As long as that decision is not the product of** *coercion or* **misinformation,** *the defendant may not later renege on the agreement on the ground that he miscalculated or belatedly discovered a new defence.*" The record in this case is

clear that Ortiz-Aponte was misinformed of the amount of incarceration term he faced

Since Ortiz-Aponte is raising for the first time on direct appeal the District Court's non-compliance with Rule 11 review is for plain error. U.S. v. Vonn, 535 U.S. 55,59(2002); U.S. v. Borrero-Acevedo, 533 F.3d 11,13 (1st Cir. 2008)   In order to satisfy the plain error standard appellant is required to show that (1) an error occurred; (2) the error was clear and obvious; (3) the error affected defendant's substantial rights; (4) the error impaired the fairness, integrity, or public reputation of the judicial proceedings. U.S. v. Sebastian, 612 F.3d 47 (1st Cir. 2010); U.S. v. Olano, 507 U.S. 725, 736 (1993)

The present case meets such a standard. There is no doubt that an important Rule 11 vi olation occurred; it was clear and obvious since Rule 11 specifically mandates the District Court to inform defendant of the maximum penalty and the potential consequences of his guilty plea; it affected defendant's substantial rights since he was not fully informed of the consequences of his pleading guilty thereby compromising the voluntary and intelligent nature of the guilty plea; and the error impaired the fairness of judicial proceedings since the record is devoid of any indication that appellant when he pled guilty pursuant to a plea agreement that called for a sentence of 5 years was made aware that the Court could sentence him to up to life imprisonment. In view of the fact that the sentence imposed was

substantially higher than the recommended sentence and included those areas not informed the failure to comply with the mandate of Rule 11 cannot be dismissed as harmless nor does it warrant a finding that Ortiz-Aponte would have pled guilty had he been informed of all of the possible consequences of his guilty plea.

Under the circumstances of this case Ortiz-Aponte satisfies the Supreme Court's standard announced in U.S. v. Dominguez Benitez, 542 U.S. 74,83(2004) that *" a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the District Court committed plain error under Rule 11, must show a **reasonable probability** that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding."*

Nor can it reasonably be argued that Ortiz-Aponte was aware from other sources that he faced a maximum penalty of life imprisonment or a consecutive sentence to the state charges.

Even though the pre-sentence report filed in excess of a month and a half after he pled guilty mentioned that he faced "*a consecutive term of not less than five years*", it treated the local charges as related and did not even contemplate a consecutive sentence. Also the Judge failed to inquire at sentencing if the pre-sentence report had been reviewed with him by counsel in gross violation of

Fed.R.Crim.P. 32(i)(1)(A), so there is no adequate record to conclude he was made aware of any information of the PSR prior to sentencing. In addition as was held in Jaramillo-Suarez, supra at pg. 1372, "*the dictates of Rule 11 and the federal policy of fair and efficient judicial administration require that the reviewing court look* **solely to the record of the plea proceeding.**" The severity of the Rule 11 violations in light of the sentence imposed warrant setting aside the guilty plea.

As held by the Supreme Court in McCarthy v. U.S. 394 U.S. 459, 464(1968) "*Rule 11 expressly directs the District Court Judge to inquire whether a defendant who pleads guilty….is aware of the consequences of his plea.*" One of the consequences of the guilty plea was the potential that he faced of a consecutive sentence on the pending local case. This was never addressed neither in the plea agreement nor in the change of plea hearing. See also U.S. v. Cotal-Crespo 47 F.3d 1,4(1st Cir. 1995) where this court held that Rule 11 was designed to ensure that defendants who enter guilty pleas do so with full understanding of "*the consequences of [their] plea.*" When Ortiz-Aponte pled guilty on November 10, 2010, to the federal charges he had already been indicted in the local courts for the firearms violations of 4/20/06. The court and the prosecution had the obligation to address the potential consequence of a consecutive sentence as part of the guilty plea process. The complete failure to do so in light of the ensuing consecutive sentence renders the plea null because it was

not entered knowingly nor intelligently with full awareness of the potential consequences of the guilty plea. <u>U.S. v. Yazbeck</u>, 524 F.2d 641,643(1st Cir. 1975)

**II. District Court Judge committed procedural error when he determined that local firearms conviction was not related to federal indictment which led to an incorrect guideline computation. He also erred in taking into consideration to determine the sentence imposed incorrect-unrelated facts all of which led to imposition of an "*unreasonable*" sentence.**

**Procedural error also occurred during sentence hearing when Judge failed to inquire with Ortiz-Aponte if his attorney had reviewed with him the pre-sentence report as required by Fed. R. Cr. P. 32(i)(1)(A) and in failing to state reasons why he was imposing a ten year sentence in the firearm count.**

The conspiracy charged in count one alleged that the defendants from on "*or about the year 2005, and continuing up to and until the return of the instant indictment (July 14, 2010), in the Municipality of Bayamon, in the district of Puerto Rico, **elsewhere, and within the jurisdiction of this court***" conspired to possess with intent to distribute narcotics. (Add. 8) "*It was further part of the manner and means of the conspiracy that some of the co-conspirators would routinely possess, carry, brandish and use firearms to protect themselves and their drug trafficking organization.*" (Add. 14) Ortiz-Aponte as an enforcer "*did possess, carry, brandish, use and discharge firearms to protect the leaders and members of the drug trafficking organization, the narcotics, the proceeds derived from their sales, and to further accomplish the goals of the conspiracy.*" (Add. 18) The aiding and abetting 18 U.S.C. 924(c)(1)(A)firearms count two was based on the

underlying conspiracy to possess with intent to distribute narcotics charged in count one.

As appears from the pre-sentence report within the time period of the charged conspiracy Ortiz-Aponte was arrested on April 20, 2006, for illegal possession of 4 firearms, ammunition and cocaine. In the first PSR, the charging district appeared to be the Superior Court of Bayamon (PSR filed 1/03/11, docket 946, pg. 21, par. 70) When said report was amended on 1/19/11(docket 1039), the charging district was changed to be the Arecibo Superior Court. (pg. 22, par. 70) On 12/10/10, Ortiz-Aponte pled guilty and was sentenced to 10 years incarceration in the local court.

**In both pre-sentence reports the probation officer stated "*The defendant has one (1) prior conviction, which did not yield criminal history points as it was considered <u>relevant conduct</u>.*" (Docket 1039- pg. 34, par. 71; docket 946- pg. 34, par. 71)  The prosecutor never objected to said conclusion.**

At the sentence hearing the prosecutor admitted to the Court "*that evidence was to be used in this case in order to prove the Fact that he had weapons for the organization.*" (Add. 73)

Ortiz-Aponte's lawyer justified a finding that the local conviction was related to the federal charges because the arrest and seizure of the firearms was provided in the Jencks material by the government who was going to present them

in evidence as part of their case in chief[4]; the seizure of the firearms occurred within the time period of the charged conspiracy and the 924(c)(1)(A) count two where Ortiz-Aponte was indicted as an enforcer; and although the case was filed in the Arecibo Superior Court the search warrant was requested by the District Attorney's Office of Bayamon who was conducting the investigation. All of these combined factors warranted a finding of relatedness so that the possession of said firearms should be considered part of the offense conduct charged federally. (Add. 71-72,74)

District Court Judge Fuste rejected all of said arguments merely because the firearms were seized outside of the Municipality of Bayamon. (Add. 70,72) He was moved to conclude that they  were unrelated incidents in order to justify imposing a substantially higher term of imprisonment  because of the "*unacceptable violence on this island—now last year we had almost one thousand murders committed by individuals who basically have weapons in violation of the law.*[5]

*This month alone, January and February we are almost duplicating the same, the murder rate for the months of January and February of the year 2010. At the rate we are going, were going to surpass one thousand murders this year.*"(Add. 73) Additional  facts he took into consideration were " *I am not going*

---

[4] The government never alleged the incident was to be treated as 404(b) evidence.

[5] **Ortiz-Aponte was not charged with the commission of murders.**

*to let guns go by easily, no way, because everybody sitting in this courtroom today can be a victim of this kind of individual, while even having an espresso coffee innocently somewhere. That's the way it goes."* (Add. 74-75)

Appellant submits that the District Court committed clear error when it rejected a finding of relatedness merely because the firearms had been seized in Camuy when everyone prior to the sentence hearing was in agreement that the incident was related. The arguments made by Ortiz-Aponte's counsel justified a finding of relevant conduct that should have prevented the conviction as being treated as separate from the federal charges. His criminal history should have remained at I, instead of the II determined by the Judge who added three criminal history points erroneously.

It is clear that Ortiz-Aponte timely objected to the District Court treating the local conviction as unrelated to the federal charges. Questions about whether the evidence is sufficient to support a particular guideline determination is a question of law that engenders de novo review. Fact bound challenges are reviewed for clear error. Where a defendant has preserved an issue on appeal, the appellate court reviews de novo. <u>U.S. v. Gibbons</u>, 553 F.3d 40, 45-46 (1st Cir. 2009)

Procedural error analysis includes *"failing to calculate or improperly calculating) the guideline range... selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."* Claims of procedural

unreasonableness in sentencing are reviewed, generally, for abuse of discretion. U.S. v. Davila-Gonzalez, 595 F.3d 42,47(1st Cir. 2010) The District Court clearly erred when it considered Ortiz-Aponte's 2006 firearms conviction as a s eparate offense and determined his criminal history category as II. There was ample factual support for a finding of relatedness that overrode the fact that the seizure occurred outside of the Municipality of Bayamon. The indictment mentions "*elsewhere*" so it was not limited to said area. "*The "same course of conduct" concept looks to whether the defendant repeats the same type of criminal activity over time.*" U.S. v. Powell, 50 F.3d 94, 104 (1st Cir. 1995) His possession in the year 2006, within the time period of the charged federal conspiracy where he was arrested possessing 4 firearms fits neatly with his purported participation as an enforcer in the conspiracy charged in count one. The prosecutors announced intent to present said firearms as part of its evidence during the case in chief and its failure to object the probation officers conclusion that the offense conduct was relevant conduct coupled with the fact that the local arrest was sought by the Bayamon District Attorneys' office should have moved the court to accept said event as relevant conduct. Because the court erred in calculating the applicable guideline remand for re-sentencing is warranted.

   Had the District Court correctly treated the conviction as related it would have had to consider U.S.S.G, 1B1.3 (Relevant conduct) and U.S.S.G. 5G1.3(b)

which called for crediting time served in the local case to the federal conviction and for a concurrent sentence. Since the government was using the firearms seized in 2006 to prove the charge in Count Two and the conspiracy charged in Count One it cannot be doubted that it complied with the requirement that it "was the basis for an increase in the offense level", in this case the imposition of a consecutive sentence for the 924(c)(1)(A) violation.[6]

In addition the Judge's findings were motivated by the consideration of erroneous facts that had nothing to do with Ortiz-Aponte's offense conduct which also warrants setting aside his findings and the sentence imposed which is unreasonable. The drive by shootings of innocent bystanders and the amount of murders committed in the island which included months that went beyond the time period of the indictment and for criminal acts that had nothing to do with Ortiz-Aponte's offense conduct also warrant setting aside the sentence because the District Court committed procedural error when it relied on clearly erroneous facts in determining the applicable guideline and the sentence it imposed. See U.S. v. Santiago-Rivera, 594 F.3d 82,83-84 (1st Cir. 2010) (Court reviews de novo whether a factor considered by the District Court in sentencing a defendant is impermissible; a concern that a state will fail to adequately punish a defendant on

---

[6] Had there been no firearms count charged said evidence would have caused a two level upward adjustment in the offense computation of count one for possession of firearms during the course of the drug conspiracy. U.S.S.G. 2D1.1(b)(1).

an unrelated charge is an impermissible sentencing factor); <u>U.S. v. Gonzalez-Castillo</u>, 562 F.3d 80,83-84 (1st Cir. 2009) (selecting a sentence based on clearly erroneous facts is an abuse of discretion. "*Basing a substantial criminal sentence on a non existent material fact threatens to compromise the fairness, integrity, or public reputation of the proceedings.*") The substantial 337 months sentence imposed on Ortiz-Aponte was motivated by facts wholly unrelated to his offense conduct and he was punished for murders that had nothing to do with his crime. Remand for re-sentencing before a different Judge is warranted.

The Judge also committed procedural error when he failed to advance any reasons as to why he was imposing a ten year sentence for the 924(c)(1)(A) firearms count instead of the recommended 5 years which was duplicated by making the federal sentence consecutive to the 10 year firearms possession sentence imposed in the local courts. Such a draconian sentence is "*unreasonable*" and should be set aside by this court. Not only did the Judge improperly increase his criminal history from I to II, he used the increased criminal history to impose a higher end 97 months guideline sentence in count one; punished appellant with a 10 year consecutive sentence in the firearms count two, which was duplicated when he failed to credit him any time for the undischarged local firearms possession sentence pursuant to section 5G1.3, imposing the federal sentence consecutive to the local sentence in violation of said section which called for a

concurrent sentence. The incorrect guideline calculation taints the sentencing process since it is the "*starting point*" or "*initial benchmark*". Gall V. U.S. 128 s.Ct. 586,596-597((2007); U.S. v. Martin 520 F.3d 87,91(1st Cir. 2008); U.S. v. Jimenez-Beltre 440 F3d 514(1st Cir. 2006)

Aside from this, procedural error occurred when the District Court Judge failed to address Ortiz-Aponte as required by Fed.R. Cr. P. 32(I)(1)(A) and verify that the presentence report had been read and discussed with him. U.S. v. Nguyen, 618 F.3d 72, 74 (1st Cir. 2010) There is nothing that establishes that such review took place. When combined with the other procedural errors committed remand for re-sentencing should be required before a different judge.

**III.   Prosecutor violated terms of plea agreement when she stated it included  a consecutive federal sentence to the local ten year sentence which increased penalty the parties had agreed to recommend of 130 months that justifies setting aside guilty plea.**

The parties agreed to recommend a " *total combined sentence ….of 130 months of imprisonment, assuming a CHC I.*" (Add. 36) No reference was made in the plea agreement to pending state charges nor was there ever any statement by the government that it would seek a consecutive sentence to any local conviction. (Add. 32-43)

Notwithstanding the above the prosecutor incorrectly told the court during the sentence hearing that the plea contemplated a consecutive sentence to any state conviction:

"*MS. HERNANDEZ: Your Honor, there is another matter we also brought forward to defense counsel, and it's the fact when the prosecutor entered into the agreement, he made sure that it indicated that it were to run consecutive as to any other sentence, because he was aware that he had pled guilty in this case. Nonetheless, that is the wording that he used in the sentence, that it be consecutive.*

*THE COURT: Right, has to be also consecutive, because it's a different case.*"(Add. 78)

There is nothing in the wording of the plea that supports such a statement.

On the contrary the plea states that

"**ENTIRETY     OF     PLEA     AGREEMENTS     AND AMENDMENTS**

*21. The United States and the defendant acknowledge that the above-stated terms and conditions constitute the entire plea agreement between the parties and deny the existence of any other terms and conditions not stated herein. No additional promises, terms or conditions will be entered unless in writing and signed by all parties.*"(Add. 39)

It is the position of Ortiz-Aponte that the prosecutor violated the plea agreement when she incorrectly stated that the plea agreement called for a consecutive federal sentence to any other conviction.

The parties not only "*assumed*" that Ortiz-Aponte criminal history Category would be I, when the pre-sentence reports were notified classifying Ortiz-Aponte's local firearms conviction as relevant conduct of the federal charges the prosecutor never objected to such a conclusion and the computation made by the probation officer that matched that established in the plea agreement.

This was negated for the first time during the sentence hearing after the Judge expressed his intention to treat the local case as separate. The misstatement of the contents of the plea agreement constituted a request for a higher sentence than the parties had agreed to recommend and violated its terms.

Pursuant to <u>Santobello v. U.S.</u>, 404 U.S. 257, 262 (1971) Ortiz-Aponte can request the opportunity to withdraw the guilty plea.

In <u>U.S. v. Cardona-Diaz</u>, 524 F.3d 20, 24 (1st Cir. 2008) this Court reiterated that "*we have recognized that when parties agree that the government will recommend a certain sentence, they do so with the understanding that it is likely the District Court will accept the recommendation.*" That principle was clearly violated by the government in this case when it requested that the Court impose a consecutive federal sentence to the local conviction.

In <u>U.S. v. Velez Carrero</u>, 77 F.3d 11-12 (1st Cir. 1996), this Court determined that the government had breached the plea agreement when it informed the Court at sentencing that it would make no suggestion as to the role of defendant in the offense when it had bargained to oppose any adjustment. The government in the present case also breached the plea agreement when it failed to uphold recommended guideline agreed upon in the plea and actually argued in favour of imposing a consecutive federal sentence to the local conviction. If the government **as it claimed at the sentence hearing** was aware when it entered into the plea

agreement with Ortiz-Aponte of the local prosecution and that it had assumed the

position that a conviction in said case would require a recommendation on their

part of a consecutive sentence why wasn't that included in the plea? If that is true,

the government acted in bad faith when it negotiated the terms of the plea

agreement and Ortiz-Aponte is entitled to have it set aside.

As held by this court in U.S. v. Rivera-Rodriguez, 489 F.3d 48,57(1st Cir.

2007)

> "*Because defendants must ultimately waive fundamental rights
> as a result of entering into any plea agreement, "we hold prosecutors
> engaging in plea bargaining to "the most meticulous standards of
> both promise and performance"." Riggs, 287 F.3d at 224 [quoting
> U.S. v. Velez-Carrero, 77 F.3d 11, 11 (1st Cir. 1996)].    This
> requirement prohibits, therefore, "not only explicit repudiation of the
> government's assurances, but must in the interests of fairness be read
> to forbid end-runs around them" U.S. v. Voccola, 600 F.Supp. 1534,
> 1537 (D.R.I. 1985), quoted in U.S. v. Frazier, 340 F.3d 5,10 (1st Cir.
> 2003); Saxena, 229 F.3d at 6; Canada, 960 F.2d at 269.*"

The government's misrepresentations to the court at the sentence hearing

concerning the plea agreement calling for a consecutive federal sentence to the

local conviction is precisely the type of run around tactics this court prohibits and

should move the court to set aside the pea agreement to discourage future

violations of this sort by federal prosecutors.

> "*Ordinarily, whether the government has breached its plea
> agreement with a defendant is a question of law and our review is
> plenary. See U.S. v. Doe, 233 F.3d 642, 643-44 (1st Cir. 2000) [citing
> U.S. v. Clark, 55 F.3d 9,11 (1st Cir. 1995)]; U.S. v. Canada, 960 F.2d
> 263,269 (1st Cir. 1992).   Where as here, however, the "defendant has
> knowledge of conduct ostensibly amounting to a breach of a plea*

*agreement, yet does not bring that breach to the attention of the sentencing court, we review only for plain error." U.S. v. Saxena, 229 F.3d 1,5 (1ˢᵗ Cir. 2000). Thus, we consider whether: (1) there was error, (2) it was plain, (3) the error affected the defendnat's substantial rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings. U.S, v. Olano, 507 US 725,732,113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Saxena, 229 F.3d at 5.*" Rivera-Rodriguez, supra, at 59.

Although it cannot be said that Ortiz-Aponte's court appointed counsel raised the issue of breach of the plea agreement during the sentence hearing he did specifically argue that the plea contemplated treating the local case as relevant conduct of the federal charges. Merely because he did not take the extra step of accusing the government of breaching the terms of the agreement should not foreclose treating his arguments as sufficient to preserve the objection.

In any event appellant submits that where a prosecutor breaches a plea agreement the appellate court should find that even under the plain error test such an action "*affects substantial rights*" that warrants granting relief since such an action undermines the fairness, integrity, or public reputation of judicial proceedings. U.S. v. Borrero Acevedo, 533 F.3d 11, 15 (1ˢᵗ Cir. 2008)

That Ortiz-Aponte's substantial rights were affected cannot be doubted since the consecutive ten year federal sentence with the local conviction clearly exceeded what he expected the government to recommend based on the language of the plea. The prosecutor's request for a consecutive sentence was clear and plain error based on the terms and recommendations of the plea agreement.

The breach warrants setting aside the plea agreement and guilty plea.

**IV.    Waiver of appeal clause cannot be enforced in this case.**

The waiver of appeal clause states: "*The defendant hereby agrees that if this Honorable Court accepts the Plea Agreement and sentences him according to its terms, condition and recommendations, the defendant waives and surrenders his right to appeal the judgment and sentence in this case.*" (Add. 39)

As held by this Court in U.S. v. Fernandez-Cabrera, 625 F.3d 48,51 (1st Cir. 2010) where the waiver of appeal clause was exactly worded as in the present case:

> "*The government's waiver argument need not detain us. A criminal defendant who waives his right to appeal relinquishes a substantial right. Consequently, a waiver-of-appeal provision in a plea agreement should be construed according to its tenor, and any ambiguities should be resolved in favour of allowing the appeal to proceed. See U.S. v. Acosta-Roman, 549 F.3d 1,3-4 (1st Cir. 2008); U.S. v. McCoy, 508 F.3d 74,77 (1st Cir. 2007); U.S. v. Teeter, 257 F.3d 14,23-25 (1st Cir. 2001). In the case at hand, the language of waiver-of-appeal provision is pellucid; the waiver does not attach unless the District Court has "sentence(d) the defendant according to the sentencing recommendation contemplated (in the Agreement)"*
>
> ......
>
> *When the District Court chose not to follow the parties' joint sentencing recommendations, the waiver-of-appeal provision, as framed, was relegated to the scrap heap. Consequently, the appeal may proceed.*"

Here, Judge Fuste totally ignored the sentencing recommendations:

a)      In the drug conspiracy count he rejected the recommendation that he be sentenced to the lower end of the applicable guideline range (Add. 36) and imposed a 97 months sentence which was the higher end.

b)      He rejected the 5 year recommendation as to the firearms count two and imposed a ten year sentence. (Add. 36)

Fernandez-Cabrera is dispositive that the waiver of appeal claim is unenforceable.

In addition no reference is made in the plea agreement to either the state sentence or to U.S.S.G. 5G1.3(c), and the discretion of the court to impose a consecutive sentence. This omission takes the waiver of appeal clause outside of the scope of the appeal and is unenforceable. See U.S. v. Bowman, 634 F.3d 357,360-361(6th Cir.2011)

This Court has repeatedly entertained Rule 11 core violations which are raised for the first time on appeal refusing to recognize a waiver:

> "*This is so because the standards Rule 11 brings to the plea bargaining process "protect not only the parties, but also the 'fairness, integrity [and] public reputation of judicial proceedings'." U.S. v. Daniels, supra, 821 F.2[nd] at 81 (quoting U.S. v. Corbett, 742 F.2[nd] 173, 178 n. 12 (5th Cir. 1984) [quoting U.S. v. Adams, 634 F.2[nd] 830, 836 (5th Cir. 1981)]).   In short, the basic wisdom is that "an Appellate Court must determine compliance with Rule 11, even if a claim of noncompliance was never presented to the trial Court."   See U.S. v. Van Buren, 804 F.2[nd] 888, 890 (6th Cir. 1986) [explaining U.S. v. Briscoe, 428 F.2[nd] 954, 957 (8th Cir.) cert. denied, 400 US 966, 91 S.Ct. 378, 27 L.Ed.2[nd] 386 (1970)]; McCarthy v. U.S., 394 US 459, 89 S.Ct. 1166, 22 L.Ed.2[nd] 418 (1969); U.S. v. Coronado, 554 F.2[nd]*

166, 170-71 (5th Cir.) cert. denied, 434 US 870, 98 S.Ct. 214, 54 L.Ed.2nd 149 (1977); <u>U.S. v. Daniels, supra</u>..." <u>U.S. v. Parra-Ibañez</u>, 936 F.2nd 588, 593 (1st Cir. 1991)

It follows that if there has been a Rule 11 core violation the appeal waiver clause will suffer the same fate of the plea, it will not be enforced by the appellate Court. Where at issue in an appeal is an attack on the legality of the plea because it was taken in violation of Rule 11 core concerns the government cannot enforce the waiver because the Rule 11 violation would annul the plea waiver clause. Thus, in the case of <u>U.S. v. Portillo-Cano</u>, 192 F.3rd 1246, 1250-1251 (9th Cir. 1999) the Court refused to enforce an appeal waiver because a violation of Rule 11 rendered the plea as a whole invalid. See also <u>U.S. v. Whitlow</u>, 287 F.3rd 638, 640 (7th Cir. 2002) where the Court held that "*a waiver of appeal stands or falls with the rest of the bargain*." See also <u>U.S. v. Merced-Rodriguez</u>, 2009 US App. Lexis 6338 (1st Cir.)

Where the District Court's inquiry into the appeal waiver is not sufficiently informed or is ambiguous as to its scope during the sentence hearing this Court will not enforce appeal waiver. See <u>U.S. v. Teeter</u>, 257 F.3rd 14, 27 (1st Cir. 2001). In Ortiz-Aponte's sentencing hearing, District Court Judge Fuste did not even mention the waiver of appeal clause. (Add. 83-84)

Finally, the draconian "*unreasonable*" sentence of 337 months imposed based on an incorrect guideline computation triggers the "*miscarriage of justice*"

exception to such clauses announced in <u>U.S. v. Teeter</u>, 257 F .3d 14.25 (1st Cir. 2001)

## **CONCLUSION**

For all of the above stated reasons the sentence and guilty plea of Ortiz-Aponte should be set aside.

**RESPECTFULLY SUBMITTED.**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that copy of the above has been notified to all parties in the attached Service List through their correspondent method.

San Juan, Puerto Rico, this 27th day of September, 2011.

S/ *Rafael F. Castro Lang*
**RAFAEL F. CASTRO LANG**
Attorney for Appellant
P O Box 9023222
San Juan  PR 00902-3222
(787) 723-3672 - 723-1809
Fax   (787) 725-4133

**Service Preference Report**

| Case Number: 11-1259 | Service Preference |
|---|---|
| Antonio Ortiz-Aponte<br>MDC Guaynabo<br>Federal Bureau of Prisons<br>PO Box 2005<br>Catano, PR 00963 | US Mail |
| Cesar S. Rivera-Giraud<br>US Attorney's Office<br>350 Carlos Chardon Ave.<br>Torre Chardon, Room 1201<br>San Juan, PR 00918-0000 | Email |
| Jenifer Yois Hernandez-Vega<br>US Attorney's Office<br>350 Carlos Chardon Ave.<br>Torre Chardon, Room 1201<br>San Juan, PR 00918-0000 | Email |
| Nelson Jose Perez-Sosa<br>US Attorney's Office<br>350 Carlos Chardon Ave.<br>Torre Chardon, Room 1201<br>San Juan, PR 00918-0000 | Email |
| Rafael F. Castro Lang<br>Rafael F.Castro Lang Law Offices<br>PO Box 9023222<br>San Juan, PR 00902-3222 | Email |

## **CERTIFICATE OF COMPLIANCE  PURSUANT TO F.R.A.P. 32(a)(7)**

I hereby certify that this brief complies with the type-volume limitations specified in Rule 32(a)(7) of F.R.A.P.

According to the Word Processing System used, this Brief contains 8,596 words and 812 lines of text.

In San Juan, Puerto Rico this 27th day of September, 2011.

S/ *Rafael F. Castro Lang*
**RAFAEL F. CASTRO LANG**
**USDC-PR- 128505**
Attorney for Appellant
P O Box 9023222
San Juan  PR 00902-3222
(787) 723-3672 - 723-1809
Fax   (787) 725-4133

38

## <u>CERTIFICATE OF SERVICE</u>

I, Rafael F. Castro Lang, counsel for Appellant Antonio Ortiz-Aponte, hereby certify that I have served on this same date by hand delivery, two copies of the Appellant's Brief, copy of Motion to Allow Addendum in Excess of 20 Pages, Motion to Exempt Filing of Appendix, and copy of this Certificate of Mail and Certificate of Compliance Pursuant to F.R.A.P. 32 (a)(7) to AUSA Nelson Perez Sosa, U.S. Attorney's Office, Torre Chardon, Suite 1201, 350 Carlos Chardon Ave., San Juan, PR 00918.

In San Juan, Puerto Rico this 27th day of September, 2011.

S/ *Rafael F. Castro Lang*

**RAFAEL F. CASTRO LANG**
**USDC-PR- 128505**
Attorney for Appellant
P O Box 9023222
San Juan  PR 00902-3222
(787) 723-3672 - 723-1809
Fax   (787) 725-4133

## <u>INDEX TO ADDENDUM</u>

| | | |
|---|---|---|
| 1. | Indictment | 1-26 |
| 2. | Judgment | 27-31 |
| 3 | Plea Agreement | 32-43 |
| 4. | Change of Plea transcript | 44-66 |
| 5. | Sentence transcript | 67-85 |
| 6. | Pro Se Notice of Appeal | 86-88 |

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

Entry ID: 5582929

Date Filed: 09/27/2011

Page: 47

Document: 0011626639

Case: 11-1259

UNITED STATES OF AMERICA,

    Plaintiff,

       v.

[1] JOSE COLON- DE JESUS a/k/a "MARCIAN", "JEFE","PAI","PRIMO", "BROTHER", "MARCIANO", "MARCIAL", 30

[2] ANGEL COLON-DE JESUS  a/k/a "PURI", "PURITIN",

[3] JOSE O. JIMENEZ-ECHEVARRIA a/k/a "LECHON", "COJO",

[4] CARLOS SEVILLA-OYOLA a/k/a "CARLITOS CARIDAD", "VIEJO",

[5] WILFREDO RODRIGUEZ-RODRIGUEZ a/k/a "FREDO", "CAPE", "CAPELLAN",

[6] ADALBERTO RIVERA-BERMUDEZ a/k/a "JUNITO TALI", "TALIBAN", "EL MAS QUE BRILLA",

[7] RAFAEL A. NAZARIO-PEDROZA a/k/a "MANCHA",

[8] SADDID RIVERA-MEDINA a/k/a "EL LOCO",

[9] JORGE REYES-SANTIAGO a/k/a "PECA",

[10] LUIS RAMOS-OYOLA a/k/a "EL FATHER","EL GORDO", "HOMERO", "BART SIMPSON",

[11] LUIS ORTA-RAMOS a/k/a "KILITO",

[12] CHRISTOPHER COLON-DE JESUS a/k/a "PUPU", "BOMBI",

[13] HAROLD AYALA-VAZQUEZ a/k/a "HARRY

---

**INDICTMENT**

CRIMINAL NO.   10-251 (JAF)

Violations:

**(COUNT ONE) - Conspiracy**
Title 21, United States Code, Sections 841(a)(1), 846, and 860

**(COUNT TWO) - Firearms**
Title 18, U.S.C., §§ 924(c)(1)(A) and 2.

Forfeiture Allegation
Title 21, U.S.C., § 853 and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

**(TWO COUNTS and Forfeiture Allegation)**

2010 JUL 14  PM 4: 03

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT
SAN JUAN, PR



35382-069 (A-C)

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 2

EL MECANICO",

[14] CARLOS H. ROSADO-MARQUEZ a/k/a "PAPO",

[15] FRANCISCO E. LOPEZ-NEGRON a/k/a "FRANKIE CATAÑO",

[16] ANTONIO APONTE-ORTIZ a/k/a "GORDO ZANTAC",

[17] GRISELLE LACOSTA-FRANCO a/k/a "LA PRIETA", "LA NEGRA",

[18] LUIS MARRERO-BAEZ a/k/a "PELU", "PELUCA",

[19] FELIX VIDAL-NUNEZ a/k/a "GALLETITA", "GALLLETA", "DOMI", "MUFFLE",

[20] CHRISTIAN REYES-BONILLA a/k/a "BEBO MAGALY",

[21] JUAN G. SANTOS-PINTADO a/k/a "GABY", "TORTOLA",

[22] ANIBAL BORIA-ALEJANDRO a/k/a "INDIO", "INDIO BORIA",

[23] CARLOS BURGOS-RODRIGUEZ a/k/a "TITITO", "BIG BOY", "TITTIO CARIDAD",

[24] ANGEL ANDINO-MORENO a/k/a "CUCA",

[25] JOSEPH SIRAGUZA-DE JESUS,

[26] MIGUEL ABRIL-PEREZ a/k/a "CHINO YAYA",

[27] MIGUEL A. ALVAREZ-RIVERA a/k/a "SHAKA",

[28] CHRISTOPHER MORALES-RODRIGUEZ a/k/a "COCO",

[29] NELSON MORALES-PLUMEI a/k/a "VIETNAM",

[30] FNU LNU a/k/a "CHIRI GALLO", "VIEJO

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 3

CHIRI",



[31] CHRISTIAN NIEVES RODRIGUEZ a/k/a
"CHRISTIAN RISITA", est. blay 1000

[32] FNU LNU a/k/a "PEQUE", "PEQUEÑO",
"MENOR", RIP



[33] EDWIN TEXIDOR-NUÑEZ a/k/a "CHINO",

[34] FNU LNU a/k/a "ADRIAN",



[35] FNU ABRIL-PEREZ a/k/a "CHOCHO",



[36] CARMELO ORTIZ a/k/a "CARMELIN",
"CARMELITO",

[37] ERIC DIAZ-RAMIREZ a/k/a "TINTILILLO",
"BAMBINO",

[38] RAYMOND SANCHEZ-SANTIAGO,

[39] ORLANDO ANDINO-VAZQUEZ a/k/a
"ORLY", "ORLY PALANCA", "ORLAN",

[40] ARMANDO DIAZ a/k/a "MANDY",

Case: 11-1259    Document: 0011626399    Page: 49    Date Filed: 09/27/2011    Entry ID: 5582929

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 4

[41] JORAN TORRES-ROSARIO a/k/a
"COHETE",

[42] RICARDO RIVERA-FIGUEROA a/k/a
"INTREPIDO", "LACOSTE",

[43] VICTOR AYALA-MALPICA, e st

[44] VALENTIN NIEVES-SANTIAGO  a/k/a
"VALECITO", "VALE",

[45] RAFAEL MARTINEZ a/k/a "GRAMPA",
"RAFAEL TRAMPA",

[46] ERICK MARQUEZ-PEREZ a/k/a "ABUELO",
"VIEJO",

[47] VALENTIN NIEVES-RAMIREZ a/k/a
"VIEJO VALE",

[48] RAFAEL VAZQUEZ-VAZQUEZ a/k/a
"FELLO" ,

[49] FELIX RIVERA-REYES a/k/a "FELITO",

[50] ANTHONY BATISTA-ARROYO,——

[51] JORGE MERCADO-SANTIAGO a/k/a
"OMAR CATAÑO",

[52] OSVALDO RODRIGUEZ a/k/a "TRIPA",

[53] KEYVIN SARAGUZA-DE JESUS,___

[54] JOSE M. APONTE-RIVERA a/k/a
"PASCUA",

[55] JULIO DELGADO-DELGADO a/k/a "VIEJO
JULIO",

[56] JOEL BERMUDEZ-HERNANDEZ a/k/a
"JOEL PABLIN",

[57] LUIS PRESTAMO-COTTO a/k/a
"PRESTAMO",

[58] DAVID TORRES-SERRANO a/k/a
"PESETA",

[59] ESTEBAN OLMO-HERNANDEZ a/k/a

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 50   Document: 0011626639   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 5

"VIEJO KIKE", "KIKE YERBA",

[60] JOSE TORRES-RIVERA a/k/a "CADAVER",

[61] ANDERSON DIAZ-SALAS a/k/a "MORENO",

[62] FNU LNU a/k/a "BRIAN", "CARLOS TORRES
VELEZ",



[63] EUGENIO QUINTANA-SEVILLA a/k/a
"GEÑO",

[64] RAMON SIERRA-VAZQUEZ a/k/a
"GALLERO",

[65] ADALBERTO RIVERA-ROBLES a/k/a
"BATATA", "JUNITO",

[66] STEVEN ROSARIO-RAMOS a/k/a
"CHOMPI", "RENE",

[67] DAVID VAZQUEZ-SERRANO a/k/a "PEPE",

[68] FNU LNU a/k/a "PIMPO",



[69] VICTOR COLON-CURRIER a/k/a "PINGA
FLEX",

[70] DANNY LOPEZ-SANTOS a/k/a "DANNY
SUCRE",

[71] LUIS ROBLES-SOTO a/k/a "BARY",

[72] FNU LNU a/k/a "ÑECO",

Entry ID: 5582929     Date Filed: 09/27/2011     Page: 51     Document: 0011626639     Case: 11-1259

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 52   Document: 0011626399   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 6



[73] WILLIAM SIERRA-OLMO a/k/a "WILLIE
WAO WAO",

[74] JOSE SEVILLA a/k/a "BAMBI",

[75] ERIC L. AYALA-VAZQUEZ a/k/a "LEROY",
"GEORGIE",

[76]SIGFREDO RAMOS-CABALLERO a/k/a
"JUNITO CAPSULA", "HAMBURGER",

[77]DANIEL OTERO-VEGA a/k/a "SOFO",

[78]ORLANDO DAVILA-BONILLA a/k/a "ALEX
MAGALY",

[79]ADALBERTO GONZALEZ-VELAZQUEZ
a/k/a " CARI CANSAO",

[80]FNU LNU a/k/a "RALPH",



[81]JOEL OCASIO-CANCEL a/k/a
"GARABATO",

[82]ANGEL R. ORTIZ a/k/a "RANDY",

[83]ROBERTO HERNANDEZ-BERMUDEZ a/k/a
"PUKI",

[84]CHRISTIAN VAZQUEZ-ORTIZ,

[85] RAFAEL GONZALEZ-LASTRA a/k/a
"RAFI",

[86] PEDRO J. FIGUEROA OCASIO a/k/a
"JORDAN",

[87] PEDRO CORREA-ADORNO,

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 7

[88] ANGEL M. DIAZ-PAGAN a/k/a "EMA",
"EMANUEL",——

[89] ADALBERTO DE LA TORRE-QUILES a/k/a
"RAMBO",—

[90] RAFAELA SANCHEZ-PIZARRO,——

[91] EDGARDO RAMIREZ-RODRIGUEZ a/k/a
"COJO",

[92] PABLO GARNIER-PADILLA a/k/a
"EDISON", Est

[93] ISRAEL SANTIAGO-WALKER a/k/a "MATA
HAMBRE", "PAN VIEJO", ——

[94] EDGAR PEREZ-RIVERA a/k/a "DINASH",
"EDGARDITO", ——

[95] EDWIN RIVERA-RAMOS a/k/a "ZURDO",

[96] CHRISTIAN J. RIVERA-MALDONADO
a/k/a "PLO PLO",

[97] JOSE DIAZ-RAMIREZ a/k/a "JOSEAN",

[98] NILSA RODRIGUEZ-CARABALLO a/k/a
"LA ENANA",

[99]JOSE L. ROSADO-DIAZ a/k/a "CUTO",

[100]JUAN ABRIL-PEREZ a/k/a   "JUANCHO",

[101]JAIME BAEZ-BONILLA,

[102]JORGE BERMUDEZ-HERNANDEZ a/k/a
"CHINO PABLIN",

[103]JOSE G. RAMOS TORRES,

[104]JUAN ROMERO-MELENDEZ,

[105] FNU LNU a/k/a "VISCO",

[106] GABRIEL O. RIVERA PEREZ,

[107] ISRAEL BAEZ-RIVERA a/k/a "TOPO",

[108] YARI SANCHEZ-SANTIAGO,

[109] FNU LNU a/k/a "MASCOTA", "GORDO",

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 54   Document: 0011626399   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 8



[110] PHILLIP GARCIA-OSORIO a/k/a
"GALAN",

Defendants.

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>

Beginning on a date unknown, but no later than in or about the year 2005, and continuing up to and until the return of the instant Indictment, in the Municipality of Bayamon, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court,

[1] JOSE COLON- DE JESUS a/k/a "MARCIAN", "JEFE","PAI", PRIMO", "BROTHER", "MARCIANO", "MARCIAL",

[2] ANGEL COLON-DE JESUS   a/k/a "PURI", "PURITIN",

[3] JOSE O. JIMENEZ-ECHEVARRIA a/k/a "LECHON", "COJO" ,

[4] CARLOS SEVILLA-OYOLA a/k/a "CARLITOS CARIDAD", "VIEJO",

[5] WILFREDO RODRIGUEZ-RODRIGUEZ a/k/a "FREDO", "CAPE", "CAPELLAN",

[6] ADALBERTO RIVERA-BERMUDEZ a/k/a "JUNITO TALI", "TALIBAN", "EL MAS QUE BRILLA",

[7] RAFAEL A. NAZARIO-PEDROZA a/k/a "MANCHA" ,

[8] SADDID RIVERA-MEDINA a/k/a "EL LOCO" ,

[9] JORGE REYES-SANTIAGO a/k/a "PECA" ,

[10] LUIS RAMOS-OYOLA a/k/a "EL FATHER", "EL GORDO", , "HOMERO", "BART SIMPSON" ,

[11] LUIS ORTA-RAMOS a/k/a "KILITO" ,

[12] CHRISTOPHER COLON-DE JESUS a/k/a "PUPU", "BOMBI",

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 9

[13] HAROLD AYALA-VAZQUEZ a/k/a "HARRY EL MECANICO",

[14] CARLOS H. ROSADO-MARQUEZ a/k/a "PAPO",

[15] FRANCISCO E. LOPEZ-NEGRON a/k/a "FRANKIE CATAÑO",

[16] ANTONIO APONTE-ORTIZ a/k/a "GORDO ZANTAC",

[17] GRISELLE LACOSTA-FRANCO a/k/a "LA PRIETA", "LA NEGRA",

[18] LUIS MARRERO-BAEZ a/k/a "PELU", "PELUCA",

[19] FELIX VIDAL-NUNEZ a/k/a "GALLETITA", "GALLLETA", "DOMI", "MUFFLE",

[20] CHRISTIAN REYES-BONILLA a/k/a "BEBO MAGALY",

[21] JUAN G. SANTOS-PINTADO a/k/a "GABY", "TORTOLA",

[22] ANIBAL BORIA-ALEJANDRO a/k/a "INDIO", "INDIO BORIA",

[23] CARLOS BURGOS-RODRIGUEZ a/k/a "TITITO", "BIG BOY", "TITTIO CARIDAD",

[24] ANGEL ANDINO-MORENO a/k/a "CUCA",

[25] JOSEPH SIRAGUZA-DE JESUS,

[26] MIGUEL ABRIL-PEREZ a/k/a "CHINO YAYA",

[27] MIGUEL A. ALVAREZ-RIVERA a/k/a "SHAKA",

[28] CHRISTOPHER MORALES-RODRIGUEZ a/k/a "COCO",

[29] NELSON MORALES-PLUMEI a/k/a "VIETNAM",

[30] FNU LNU a/k/a "CHIRI GALLO", "VIEJO CHIRI",

[31] CHRISTIAN NIEVES RODRIGUEZ   a/k/a "CHRISTIAN RISITA",

[32] FNU LNU a/k/a "PEQUE", "PEQUEÑO", "MENOR",

[33] EDWIN TEXIDOR-NUÑEZ a/k/a "CHINO",

[34] FNU LNU a/k/a "ADRIAN",

[35] FNU ABRIL-PEREZ a/k/a "CHOCHO",

[36] CARMELO ORTIZ a/k/a "CARMELIN", "CARMELITO",

[37] ERIC DIAZ-RAMIREZ a/k/a "TINTILILLO", "BAMBINO",

[38] RAYMOND SANCHEZ-SANTIAGO,

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 56   Document: 00116266399   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 10

[39] ORLANDO ANDINO-VAZQUEZ a/k/a "ORLY", "ORLY
PALANCA", "ORLAN",

[40] ARMANDO DIAZ a/k/a "MANDY",

[41] JORAN TORRES-ROSARIO a/k/a "COHETE",

[42] RICARDO RIVERA-FIGUEROA a/k/a "INTREPIDO",
"LACOSTE",

[43] VICTOR AYALA-MALPICA,

[44] VALENTIN NIEVES-SANTIAGO   a/k/a "VALECITO",
"VALE",

[45] RAFAEL MARTINEZ a/k/a "GRAMPA", "RAFAEL TRAMPA",

[46] ERICK MARQUEZ-PEREZ a/k/a "ABUELO", "VIEJO",

[47] VALENTIN NIEVES-RAMIREZ a/k/a "VIEJO VALE",

[48] RAFAEL VAZQUEZ-VAZQUEZ a/k/a "FELLO",

[49] FELIX RIVERA-REYES a/k/a "FELITO",

[50] ANTHONY BATISTA-ARROYO,

[51] JORGE MERCADO-SANTIAGO a/k/a "OMAR CATAÑO",

[52] OSVALDO RODRIGUEZ a/k/a "TRIPA",

[53] KEYVIN SARAGUZA-DE JESUS,

[54] JOSE M. APONTE-RIVERA a/k/a "PASCUA",

[55] JULIO DELGADO-DELGADO a/k/a "VIEJO JULIO",

[56] JOEL BERMUDEZ-HERNANDEZ a/k/a "JOEL PABLIN",

[57] LUIS PRESTAMO-COTTO a/k/a  "PRESTAMO",

[58] DAVID TORRES-SERRANO a/k/a "PESETA",

[59] ESTEBAN OLMO-HERNANDEZ a/k/a "VIEJO KIKE", "KIKE
YERBA",

[60] JOSE TORRES-RIVERA a/k/a "CADAVER",

[61] ANDERSON DIAZ-SALAS a/k/a "MORENO",

[62] FNU LNU a/k/a "BRIAN", "CARLOS TORRES VELEZ",

[63] EUGENIO QUINTANA-SEVILLA a/k/a "GEÑO",

[64] RAMON SIERRA-VAZQUEZ a/k/a "GALLERO",

[65] ADALBERTO RIVERA-ROBLES a/k/a "BATATA", "JUNITO",

[66] STEVEN ROSARIO-RAMOS a/k/a "CHOMPI", "RENE",

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 57   Document: 00116266399   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 11

[67] DAVID VAZQUEZ-SERRANO a/k/a "PEPE",

[68] FNU LNU a/k/a "PIMPO",

[69] VICTOR COLON-CURRIER a/k/a "PINGA FLEX",

[70] DANNY LOPEZ-SANTOS a/k/a "DANNY SUCRE",

[71] LUIS ROBLES-SOTO a/k/a "BARY",

[72] FNU LNU a/k/a "ÑECO",

[73] WILLIAM SIERRA-OLMO a/k/a "WILLIE WAO WAO",

[74] JOSE SEVILLA a/k/a "BAMBI",

[75] ERIC L. AYALA-VAZQUEZ a/k/a "LEROY", "GEORGIE"

[76] SIGFREDO RAMOS-CABALLERO a/k/a "JUNITO CAPSULA", "HAMBURGER",

[77] DANIEL OTERO-VEGA a/k/a "SOFO",

[78] ORLANDO DAVILA-BONILLA a/k/a "ALEX MAGALY",

[79] ADALBERTO GONZALEZ-VELAZQUEZ a/k/a " CARI CANSAO",

[80] FNU LNU a/k/a "RALPH",

[81] JOEL OCASIO-CANCEL a/k/a "GARABATO",

[82] ANGEL R. ORTIZ a/k/a "RANDY",

[83] ROBERTO HERNANDEZ-BERMUDEZ a/k/a "PUKI",

[84] CHRISTIAN VAZQUEZ-ORTIZ,

[85] RAFAEL GONZALEZ-LASTRA a/k/a "RAFI",

[86] PEDRO J. FIGUEROA OCASIO a/k/a "JORDAN",

[87] PEDRO CORREA-ADORNO,

[88] ANGEL M. DIAZ-PAGAN a/k/a "EMA", "EMANUEL"

[89] ADALBERTO DE LA TORRE-QUILES a/k/a "RAMBO",

[90] RAFAELA SANCHEZ-PIZARRO,

[91] EDGARDO RAMIREZ-RODRIGUEZ a/k/a "COJO",

[92] PABLO GARNIER-PADILLA a/k/a "EDISON",

[93] ISRAEL SANTIAGO-WALKER a/k/a "MATA HAMBRE", "PAN VIEJO",

[94] EDGAR PEREZ-RIVERA a/k/a "DINASH", "EDGARDITO",

[95] EDWIN RIVERA-RAMOS a/k/a "ZURDO",

Entry ID: 5582929      Date Filed: 09/27/2011      Page: 58      Document: 00116266399      Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 12

[96] CHRISTIAN J. RIVERA-MALDONADO a/k/a "PLO PLO",

[97] JOSE DIAZ-RAMIREZ a/k/a "JOSEAN",

[98] NILSA RODRIGUEZ-CARABALLO a/k/a "LA ENANA",

[99]JOSE L. ROSADO-DIAZ a/k/a "CUTO",

[100]JUAN ABRIL-PEREZ a/k/a "JUANCHO",

[101]JAIME BAEZ-BONILLA

[102]JORGE BERMUDEZ-HERNANDEZ a/k/a "CHINO PABLIN",

[103]JOSE G. RAMOS TORRES,

[104]JUAN ROMERO-MELENDEZ,

[105] FNU LNU a/k/a "VISCO",

[106] GABRIEL O. RIVERA PEREZ,

[107] ISRAEL BAEZ-RIVERA a/k/a "TOPO",

[108] YARI SANCHEZ-SANTIAGO,

[109] FNU LNU a/k/a "MASCOTA", "GORDO",

[110] PHILLIP GARCIA-OSORIO a/k/a "GALAN",

the defendants herein, did knowingly and intentionally combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is: to possess with intent to distribute one (1) kilogram or more of heroin, a Schedule I Narcotic Drug Controlled Substance; fifty (50) grams or more of cocaine base (commonly known as "crack"), a Schedule II Narcotic Drug Controlled Substance; five (5) kilograms or more of cocaine, a Schedule II, Narcotic Drug Controlled Substance; one hundred (100) kilograms or more of marijuana, a Schedule I Controlled Substance; a mixture or substance containing detectable amounts of Oxycodone (commonly known as Percocet), a Scehdule II Controlled Substance; and a mixture or substance containing detectable amounts of Alprazolam (commonly known as Xanax), a Schedule IV Controlled Substance, all within one thousand (1,000) feet of the real properties comprising housing facilities owned by a public housing authority, that is, the Virgilio Davila Public Housing Project, Las Gardenias Public Housing Project; the Brisas de Bayamon Public Housing Project, the Falin Torrech Public Housing Project, and other areas

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 59   Document: 0011626699   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 13

within the Municipality of Bayamon, Puerto Rico.   All in violation of Title 21, <u>United States Code</u>, Sections 846, 841(a)(1), and 860.

## I.   OBJECT OF THE CONSPIRACY

The object of the conspiracy was to distribute controlled substances at the Virgilio Davila Public Housing Project, Las Gardenias Public Housing Project, Brisas de Bayamon Public Housing Project, Falin Torrech Public Housing Project, and other areas within the Municipality of Bayamon, Puerto Rico, all for significant financial gain and profit.

## II.   MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and co-conspirators would accomplish and further the object of the conspiracy, among others, included the following:

1.      It was part of the manner and means of the conspiracy that the defendants and their co-conspirators would purchase wholesale quantities of heroin, cocaine and marijuana in order to distribute the same in street quantity amounts at their drug distribution points in the Municipalities of Bayamon, Puerto Rico.

2.      It was further part of the manner and means of the conspiracy that the leaders would maintain a group of co-defendants administrating the activities of the drug distribution points.

3.      It was further part of the manner and means of the conspiracy that some of the cocaine purchased at wholesale prices would be "cooked" in order to make cocaine base ("crack"), which would then be distributed at the drug distribution points.

4.      It was further part of the manner and means of the conspiracy that some of the co-conspirators would cut, divide and package heroin, cocaine base ("crack"), cocaine and marijuana for subsequent sale at their drug distribution points.

5.      It was further part of the manner and means of the conspiracy that some of the co-conspirators would routinely place the controlled substances in distinctive "baggies", vials or packaging,

Case: 11-1259   Document: 00116266399   Page: 60   Date Filed: 09/27/2011   Entry ID: 5582929

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 14

using specific seals ("sellos") or stickers in order to identify, and maintain control of the drugs distributed at the drug distribution points mentioned herein.

6.      It was further part of the manner and means of the conspiracy that leaders of this organization would divide among themselves and their subordinates the proceeds of the drug trafficking sales. The "drug owners" would often receive proceeds from the sale of specific controlled substances.

7.      It was further part of the manner and means of the conspiracy that some of the co-conspirators would use apartments in order to package and/or conceal the heroin, cocaine base ("crack"), cocaine, marijuana, pills, equipment and the materials used to process and package the controlled substances (drug paraphernalia).

8.      It was further part of the manner and means of the conspiracy that members of the drug trafficking organization would use force, violence and intimidation in order to gain and maintain control of their drug points and in order to intimidate rival drug trafficking organizations and/or expand their drug trafficking activities.

9.      It was further part of the manner and means of the conspiracy that members of the drug trafficking organization would intimidate residents of the public housing projects in order to control the locations they controlled.

10.      It was further part of the manner and means of the conspiracy that members of the drug trafficking organization took control of rival drug distribution points by means of force, violence and intimidation.

11.      It was further part of the manner and means of the conspiracy that some of the co-conspirators would routinely possess, carry, brandish and use firearms to protect themselves and their drug trafficking organization.

12.    It was further part of the manner and means of the conspiracy that the co-conspirators would act in different roles in order to further the goals of the conspiracy, to wit: leaders, drug owners, enforcers, suppliers, runners, sellers, and facilitators.

13.    It was further part of the manner and means of the conspiracy that the co-conspirators at times would allow customers to consume the controlled substances at or near the drug point areas.

14.    It was further part of the manner and means of the conspiracy that the co-conspirators would conduct drug transactions in the presence of minor children.

15.    It was further part of the manners and means of this conspiracy that some of its members would use two-way radios (walkie-talkies) to communicate amongst themselves in order to alert the presence of law enforcement agents or members of rival gangs.

## III.    ROLES OF THE MEMBERS OF THE CONSPIRACY

A. Leaders

Leaders directly controlled and supervised the drug trafficking operations at drug distribution points located in Bayamon, Puerto Rico.  During the span of the conspiracy, leaders purchased multi-kilogram quantities of narcotics and oversaw the transportation and sale of such narcotics by their subordinates at the different drug distribution points.  Throughout the conspiracy leaders would allow members of the conspiracy to carry firearms in order to protect the drug distribution business, during and in furtherance of their drug trafficking activities.  The following co-conspirators acted as leaders in this organization:

[1] JOSE A. COLON DE JESUS, a/k/a "MARCIAN", "JEFE","PAI", "PRIMO", "BROTHER", "MARCIANO", "MARCIAL", became the principal leader of the conspiracy in or about the year 2005.  As the principal leader and organizer, he was in charge of maintaining control of drug distribution activities and had final approval authority with regards to discipline measures to be

imposed. He directly controlled and supervised the daily activities of the drug trafficking organization's drug distribution point located at Virgilio Davila Public Housing Project. He allowed other co-conspirators to act as leaders within the drug trafficking organization's drug distribution points located at the Las Gardenias Public Housing Project, Brisas de Bayamon Public Housing Project, the Falin Torrech Public Housing Project, and within other areas of Bayamon, Puerto Rico. As the principal leader, he often authorized the use of firearms by members of the drug trafficking organization. Some of the co-conspirators would often refer to him as "the owner of the cocaine", the "asesinato cocaine", and "the owner of the crack".

[2] ANGEL COLON-DE JESUS a/k/a "PURI", "PURITIN", acted as a leader, manager, and enforcer for the drug trafficking organization. Some of the co-conspirators would often refer to him as "the leader at Fallin Torrech".

[3] JOSE O. JIMENEZ-ECHEVARRIA a/k/a "LECHON", "COJO", acted as a leader, manager, and enforcer for the drug trafficking organization. Some of the co-conspirators would often refer to him as "the owner of the crack" and "one of the leaders and/or owner at las Gardenias".

[4] CARLOS SEVILLA-OYOLA a/k/a "CARLITOS CARIDAD", "VIEJO", acted as a leader, manager, and enforcer for the drug trafficking organization. Some of the co-conspirators would often refer to him as "the owner of the cocaine" and "the other leader and/or owner at las Gardenias".

[5] WILFREDO RODRIGUEZ-RODRIGUEZ a/k/a "FREDO", "CAPE", "CAPELLAN", acted as a leader, manager, and enforcer for the drug trafficking organization. Some of the co-conspirators would often refer to him as "the owner at Brisas".

B.  Managers/Drug Owners

Managers, often referred to as "drug owners" would directly supervise the drug distribution activities at the various drug distribution points. They would receive proceeds from the sale of controlled

Entry ID: 5582929

Date Filed: 09/27/2011   Page: 63   Document: 0011626399   Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 17

substances distributed at the various drug distribution points. They would routinely place their drugs in distinctive colored (labels, stickers, seals) baggies in order to keep track of their drugs being sold at the drug trafficking organization's drug distribution points. The following co-conspirators acted as managers/drug owners:

[6] **ADALBERTO RIVERA-BERMUDEZ** a/k/a "JUNITO TALI", "TALIBAN", "EL MAS QUE BRILLA", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "criptonita" and "regalito" heroin.

[7] **RAFAEL A. NAZARIO-PEDROZA** a/k/a "MANCHA" acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "sangre" heroin and "scarface" cocaine.

[8] **SADDID RIVERA-MEDINA** a/k/a "EL LOCO", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of heroin and "Jordan" marijuana.

[9] **JORGE REYES-SANTIAGO** a/k/a "PECA", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "Boston Red Sox" marijuana.

[10] **LUIS RAMOS-OYOLA** a/k/a "EL FATHER", "EL GORDO", "HOMERO", "BART SIMPSON", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of cocaine and "creepy" marijuana.

[11] **LUIS HORTA-RAMOS** a/k/a "KILITO", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "Volcom" marijuana.

[12] **CHRISTOPHER COLON-DE JESUS** a/k/a "PUPU", "BOMBI", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "Air Force" marijuana.

[13] **HAROLD AYALA-VAZQUEZ** a/k/a "HARRY EL MECANICO", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the "owner of marijuana at Gardenias".

[14] **CARLOS H. ROSADO-MARQUEZ** a/k/a "PAPO", acted as a manager and/or "drug owner" for the drug trafficking organization. Some of the co-conspirators would often refer to him as the owner of "Pitbull" cocaine.

C. **Suppliers**

[15] **FRANCISCO E. LOPEZ-NEGRON** a/k/a "FRANKIE CATAÑO", would perform or carry out several acts within the conspiracy, including but not limited to, purchasing and transporting wholesale amounts of narcotics and delivering them to the leaders of the drug trafficking organization for further distribution at the drug distribution points.

D. **Enforcers**

Enforcers did possess, carry, brandish, use and discharge firearms to protect the leaders and members of the drug trafficking organization, the narcotics, the proceeds derived from their sales, and to further accomplish the goals of the conspiracy. Enforcers often acted upon instructions given by the leaders and/or "drug owners" of this organization. At various times, enforcers were assigned to provide protection to specific drug points in the area.

In addition to the above-mentioned leaders who also acted as enforcers, the following, and others known and unknown to this Grand Jury, acted as enforcers for the drug trafficking organization operating in the Public Housing Projects mentioned herein and within Bayamon, Puerto Rico:

Entry ID: 5582929          Date Filed: 09/27/2011          Page: 65          Document: 00116266399          Case: 11-1259

Indictment
United States of America v. Jose A. Colon de Jesus, et al
Page 19

          [16] ANTONIO APONTE-ORTIZ a/k/a "GORDO ZANTAC".  At
times he also acted as a drug processor,
          [17] GRISELLE LACOSTA-FRANCO a/k/a "LA PRIETA", "LA
NEGRA",

### E. Runners

       The runners worked under the direct supervision of the leaders of the drug trafficking organization
and or "drug owners". They were responsible for providing sufficient narcotics to the sellers for further
distribution at the drug point.  They were also responsible for collecting the proceeds of drug sales and
paying the street sellers.   They would also supervise and make sure that there were street sellers for every
shift at the drug points.  They would make schedules and prepare ledgers to maintain accountability of the
sales of the narcotics sold at the drug point. At various times, they would be responsible for recruiting street
sellers and additional runners.  The runners would also supervise the sellers and the daily activities at the
drug point.

       The following co-conspirators and others known and unknown to the Grand Jury, acted as drug
runners for the above described drug trafficking organization:

          [18] LUIS MARRERO-BAEZ a/k/a "PELU", "PELUCA",
          [19] FELIX VIDAL-NUNEZ a/k/a "GALLETITA", "GALLLETA",
"DOMI", "MUFFLE",
          [20] CHRISTIAN REYES-BONILLA a/k/a "BEBO MAGALY",
          [21] JUAN G. SANTOS-PINTADO a/k/a "GABY", "TORTOLA",
          [22] ANIBAL BORIA-ALEJANDRO a/k/a "INDIO", "INDIO
BORIA",
          [23] CARLOS BURGOS-RODRIGUEZ a/k/a "TITITO", "BIG BOY",
"TITTIO CARIDAD",
          [24] ANGEL ANDINO-MORENO a/k/a "CUCA",
          [25] JOSEPH SIRAGUZA-DE JESUS,
          [26] MIGUEL ABRIL-PEREZ a/k/a "CHINO YAYA",
          [27] MIGUEL A. ALVAREZ-RIVERA a/k/a "SHAKA",

[28] CHRISTOPHER MORALES-RODRIGUEZ a/k/a "COCO",

[29] NELSON MORALES-PLUMEI a/k/a "VIETNAM",

[30] FNU LNU a/k/a "CHIRI GALLO", "VIEJO CHIRI",

[31] CHRISTIAN NIEVES RODRIGUEZ   a/k/a "CHRISTIAN
RISITA",

[32] FNU LNU a/k/a "PEQUE", "PEQUEÑO", "MENOR",

[33] EDWIN TEXIDOR-NUÑEZ a/k/a "CHINO",

[34] FNU LNU a/k/a "ADRIAN",

F. Sellers

The sellers would distribute street quantity amounts of heroin, crack cocaine, cocaine, marijuana,

and pills.   They would also be held accountable to the runners for the drug proceeds and the narcotics sold

at the drug distribution points. At times, some sellers would use two-way radios ("walkie-talkies") in order

to communicate with other members of the conspiracy.

The following co-conspirators and others known and unknown to the Grand Jury, acted as drug

sellers for the above described drug trafficking organization:

[35] FNU ABRIL-PEREZ a/k/a "CHOCHO",

[36] CARMELO ORTIZ a/k/a "CARMELIN", "CARMELITO",

[37] ERIC DIAZ-RAMIREZ a/k/a "TINTILILLO", "BAMBINO",

[38] RAYMOND SANCHEZ-SANTIAGO,

[39] ORLANDO ANDINO-VAZQUEZ a/k/a "ORLY", "ORLY
PALANCA", "ORLAN",

[40] ARMANDO DIAZ a/k/a "MANDY",

[41] JORAN TORRES-ROSARIO a/k/a "COHETE",

[42] RICARDO RIVERA-FIGUEROA a/k/a "INTREPIDO",
"LACOSTE",

[43] VICTOR AYALA-MALPICA,

[44] VALENTIN NIEVES-SANTIAGO   a/k/a "VALECITO",
"VALE",

[45] RAFAEL MARTINEZ a/k/a "GRAMPA", "RAFAEL TRAMPA",

Indictment
United States of America v. Jose Colon De Jesus, et al., et al
Page 21

[46] ERICK MARQUEZ-PEREZ a/k/a "ABUELO", "VIEJO",

[47] VALENTIN NIEVES-RAMIREZ a/k/a "VIEJO VALE",

[48] RAFAEL VAZQUEZ-VAZQUEZ a/k/a "FELLO",

[49] FELIX RIVERA-REYES a/k/a "FELITO",

[50] ANTHONY BATISTA-ARROYO,

[51] JORGE MERCADO-SANTIAGO a/k/a "OMAR CATAÑO",

[52] OSVALDO RODRIGUEZ a/k/a "TRIPA",

[53] KEYVIN SARAGUZA-DE JESUS,

[54] JOSE M. APONTE-RIVERA a/k/a "PASCUA",

[55] JULIO DELGADO-DELGADO a/k/a "VIEJO JULIO",

[56] JOEL BERMUDEZ-HERNANDEZ a/k/a "JOEL PABLIN",

[57] LUIS PRESTAMO-COTTO a/k/a "PRESTAMO",

[58] DAVID TORRES-SERRANO a/k/a "PESETA",

[59] ESTEBAN OLMO-HERNANDEZ a/k/a "VIEJO KIKE", "KIKE YERBA",

[60] JOSE TORRES-RIVERA a/k/a "CADAVER",

[61] ANDERSON DIAZ-SALAS a/k/a "MORENO",

[62] FNU LNU a/k/a "BRIAN", "CARLOS TORRES VELEZ",

[63] EUGENIO QUINTANA-SEVILLA a/k/a "GEÑO",

[64] RAMON SIERRA-VAZQUEZ a/k/a "GALLERO",

[65] ADALBERTO RIVERA-ROBLES a/k/a "BATATA", "JUNITO",

[66] STEVEN ROSARIO-RAMOS a/k/a "CHOMPI", "RENE",

[67] DAVID VAZQUEZ-SERRANO a/k/a "PEPE",

[68] FNU LNU a/k/a "PIMPO",

[69] VICTOR COLON-CURRIER a/k/a "PINGA FLEX",

[70] DANNY LOPEZ-SANTOS a/k/a "DANNY SUCRE",

[71] LUIS ROBLES-SOTO a/k/a "BARY",

[72] FNU LNU a/k/a "ÑECO",

[73] WILLIAM SIERRA-OLMO a/k/a "WILLIE WAO WAO",

[74] JOSE SEVILLA a/k/a "BAMBI",

[75] ERIC L. AYALA-VAZQUEZ a/k/a "LEROY", "GEORGIE",

[76] SIGFREDO RAMOS-CABALLERO a/k/a "JUNITO CAPSULA", "HAMBURGER",

Entry ID: 5582929    Date Filed: 09/27/2011    Page: 67    Document: 00116266399    Case: 11-1259

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 68   Document: 0011626399   Case: 11-1259

Indictment
United States of America v. Jose Colon De Jesus, et al., et al
Page 22

[77]DANIEL OTERO-VEGA a/k/a "SOFO",

[78]ORLANDO DAVILA-BONILLA a/k/a "ALEX MAGALY",

[79]ADALBERTO GONZALEZ-VELAZQUEZ a/k/a " CARI
CANSAO",

[80]FNU LNU a/k/a "RALPH",

[81]JOEL OCASIO-CANCEL a/k/a "GARABATO",

[82]ANGEL R. ORTIZ a/k/a "RANDY",

[83]ROBERTO HERNANDEZ-BERMUDEZ a/k/a "PUKI",

[84]CHRISTIAN VAZQUEZ-ORTIZ,


G. Lookouts

The lookouts conducted surveillance at strategic locations within the Public Housing Projects mentioned herein in Bayamon, Puerto Rico. They would attempt to detect the presence of law enforcement personnel and members of rival gangs. At times they would use two-way radios ("walkie-talkies") in order to communicate their observations to other members of the drug trafficking organization. The following co-conspirators acted as lookouts within the conspiracy:

[85] RAFAEL GONZALEZ-LASTRA a/k/a "RAFI",

[86] PEDRO J. FIGUEROA OCASIO a/k/a "JORDAN",

[87] PEDRO CORREA-ADORNO,

[88] ANGEL M. DIAZ-PAGAN a/k/a "EMA", "EMANUEL",

[89] ADALBERTO DE LA TORRE-QUILES a/k/a "RAMBO",

[90] RAFAELA SANCHEZ-PIZARRO,

[91] EDGARDO RAMIREZ-RODRIGUEZ a/k/a "COJO",

[92] PABLO GARNIER-PADILLA a/k/a "EDISON",

[93] ISRAEL SANTIAGO-WALKER a/k/a "MATA HAMBRE",
"PAN VIEJO",

[94] EDGAR PEREZ-RIVERA a/k/a "DINASH", "EDGARDITO",

[95] EDWIN RIVERA-RAMOS a/k/a "ZURDO",

[96] CHRISTIAN J. RIVERA-MALDONADO a/k/a "PLO PLO",

[97] JOSE DIAZ-RAMIREZ a/k/a "JOSEAN",

[98] NILSA RODRIGUEZ-CARABALLO a/k/a "LA ENANA",

[99]JOSE L. ROSADO-DIAZ a/k/a "CUTO",

[100]JUAN ABRIL-PEREZ a/k/a "JUANCHO",

[101]JAIME BAEZ-BONILLA,

[102]JORGE BERMUDEZ-HERNANDEZ a/k/a "CHINO PABLIN",

[103]JOSE G. RAMOS TORRES,

[104]JUAN ROMERO-MELENDEZ,

[105] FNU LNU a/k/a "VISCO",

[106] GABRIEL O. RIVERA PEREZ,

## II. Facilitators

Facilitators would often allow the use of their apartments in the public housing project in order to process, store, and package narcotics for distribution. Some would allow the use of their apartments within the public housing project as temporary drug distribution points. At times they would run errands in furtherance of the drug trafficking activities.

The following co-conspirators acted as facilitators within the conspiracy:

[107] ISRAEL BAEZ-RIVERA a/k/a "TOPO",

[108] YARI SANCHEZ-SANTIAGO,

[109] FNU LNU a/k/a "MASCOTA", "GORDO",

[110] PHILLIP GARCIA-OSORIO a/k/a "GALAN",

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### (Firearms during and in relation to Drug Trafficking Crime)

Beginning on a date unknown, but no later than in or about the year 2005, and continuing up to and until the return of the instant Indictment, in the Municipality of Bayamon, District of Puerto Rico and within the jurisdiction of this Court,

[1] JOSE COLON- DE JESUS a/k/a "MARCIAN", "JEFE","PAI",

"PRIMO", "BROTHER", "MARCIANO", "MARCIAL",

[2] ANGEL COLON-DE JESUS   a/k/a "PURP", "PURITIN",

[3] JOSE O. JIMENEZ-ECHEVARRIA a/k/a "LECHON", "COJO",

[4] CARLOS SEVILLA-OYOLA a/k/a "CARLITOS CARIDAD",
"VIEJO",

[5] WILFREDO RODRIGUEZ-RODRIGUEZ a/k/a "FREDO",
"CAPE", "CAPELLAN",

[6] ADALBERTO RIVERA-BERMUDEZ a/k/a "JUNITO TALI",
"TALIBAN", "EL MAS QUE BRILLA",

[7] RAFAEL A. NAZARIO-PEDROZA a/k/a "MANCHA",

[8] SADDID RIVERA-MEDINA a/k/a "EL LOCO",

[9] JORGE REYES-SANTIAGO a/k/a "PECA",

[10] LUIS RAMOS-OYOLA a/k/a "EL FATHER", "EL GORDO",
"HOMERO", "BART SIMPSON",

[11] LUIS ORTA-RAMOS a/k/a "KILITO",

[12] CHRISTOPHER COLON-DE JESUS a/k/a "PUPU", "BOMBI",

[13] HAROLD AYALA-VAZQUEZ a/k/a "HARRY EL MECANICO",

[14] CARLOS H. ROSADO-MARQUEZ a/k/a "PAPO",

[15] FRANCISCO E. LOPEZ-NEGRON a/k/a "FRANKIE
CATAÑO",

[16] ANTONIO APONTE-ORTIZ a/k/a "GORDO ZANTAC",

[17] GRISELLE LACOSTA-FRANCO a/k/a "LA PRIETA", "LA
NEGRA",

[32] FNU LNU a/k/a "PEQUE", "PEQUEÑO", "MENOR",

[40] ARMANDO DIAZ a/k/a "MANDY",

[71] LUIS ROBLES-SOTO a/k/a "BARY",

the defendants herein and diverse other persons known and unknown to the Grand Jury, aiding and abetting each other, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy to possess with intent to distribute and/or to distribute heroin, cocaine base, cocaine, marijuana, Oxycodone, and Xanax in violation of

Entry ID: 5582929

Date Filed: 09/27/2011    Page: 71

Case: 11-1259    Document: 00116266399

Indictment
United States of America v. Jose Colon De Jesus, et al., et al
Page 25

Title 21, United States Code, Sections 841 (a)(l), 860, and 846 (as charged in Count One of the instant Indictment), did carry and use firearms, as that term is defined in Title 18, United States Code, Section 921 (a)(3). All in violation of Title 18, United States Code, Section 924(c)(1)(A) and 2.

## FORFEITURE ALLEGATION

1.    Upon conviction of the controlled substance offense alleged in Count One of this Indictment, the defendants named in this Indictment, shall forfeit to the United States pursuant to Title 21, United States Code, §§ 853(a)(I) and (2), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violation, including but not limited to the following:

a. All rights, titles, and interest in all property constituting, or derived from, any proceeds defendants obtained, directly or indirectly, as a result of the offense described in Counts One of the instant Indictment and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violations alleged in this Indictment.

b. A sum of money in U.S. Currency equal to the amount of proceeds obtained as a result of the offense described in Counts One of the instant Indictment for which the defendants are jointly and severally liable.

2.    Pursuant to Title 21, United States Code, § 853(p), as incorporated by Title 18, United States Code, § 982(b), each defendant named in this Indictment shall forfeit substitute property up to the value of any property described in paragraph 1(a) or 1(b), above, by any act or omission of the defendant, the property described in paragraph 1(a) or 1(b), above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

Indictment
United States of America v. Jose Colon De Jesus, et al., et al
Page 26

All in accordance with Title 21, United States Code, § 853 and Rule 32.2(a) of the Federal Rules

of Criminal Procedure.


**ROSA EMILIA RODRIGUEZ-VELEZ**
**United States Attorney**


Jose Ruiz-Santiago
Assistant United States Attorney
Chief, Criminal Division

Mario Torres Marín
Special Assistant United States Attorney

Timothy Henwood
Assistant United States Attorney
Deputy Chief, Narcotics Unit

César Rivera Giraud
Special Assistant United States Attorney

Jenifer Y. Hernández Vega
Assistant United States Attorney

Entry ID: 5582929   Date Filed: 09/27/2011   Page: 73   Document: 00116266399   Case: 11-1259

# UNITED STATES DISTRICT COURT

**FOR THE** _____ District of _____ **PUERTO RICO**

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **V.** | |
| ANTONIO ORTIZ-APONTE | Case Number:  10-CR-251-16 (JAF) |
| | USM Number:  35382-069 |
| | Javier A. Cuyar-Olivo, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

X  pleaded guilty to count(s)   One (1) and Two (2) of the Indictment.

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 841(a)(1) and 860. | Conspiracy to possess with the intent to distribute at least 2 kilograms, but less than 3.5 kilograms of cocaine within a protected location. | July 14, 2010 | One (1) |
| 18 U.S.C. § 924(c)(1)(A)(i) and (2). | Carrying firearms during and in relation to drug trafficking crime. | July 14, 2010 | Two (2) |

The defendant is sentenced as provided in pages 2 through   5   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____   ☐ is   ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 8, 2011
Date of Imposition of Judgment

S/ JOSE A. FUSTE
Signature of Judge

JOSE A. FUSTE, CHIEF, U.S. DISTRICT JUDGE
Name and Title of Judge

February 8, 2011
Date

Judgment — Page  2  of  5

DEFENDANT:       ANTONIO ORTIZ-APONTE
CASE NUMBER:     10-CR-251-16 (JAF)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:  **Ninety-seven (97) months as to count 1 and One Hundred and Twenty (120) months as to count 2, to be served consecutively with each other, for a total of 217 months, to be served consecutively with the state convictions under Cr. No.CLA2007G0151 to G0156 and with Cr. No. CSC2007G0456.**

☐  The court makes the following recommendations to the Bureau of Prisons:

X  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____    ☐ a.m.   ☐ p.m.   on _____.

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
                              UNITED STATES MARSHAL

By _____
                    DEPUTY UNITED STATES MARSHAL

Entry ID: 5582929    Date Filed: 09/27/2011    Page: 74    Document: 0011626399    Case: 11-1259

DEFENDANT:         ANTONIO ORTIZ-APONTE
CASE NUMBER:       10-CR-251-16 (JAF)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    **Ten (10) years as to count 1, and Five (5) years as to count 2, to be served concurrently with each other.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, destructive device, or any other dangerous weapon. (Check, if

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Entry ID: 5582929    Date Filed: 09/27/2011    Page: 75    Document: 0011626399    Case: 11-1259

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 3A — Supervised Release
Case 0:09-cv-00251-JAF   Document 1187   Filed 02/14/11   Page 4 of 5

DEFENDANT:       ANTONIO ORTIZ-APONTE
CASE NUMBER:     10-CR-251-16 (JAF)

Judgment—Page 4 of 5

30

## ADDITIONAL SUPERVISED RELEASE TERMS

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, or other dangerous weapons.

4. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release, and thereafter submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year accordance with the Drug Aftercare Program Policy of the U.S. Probation Officer approved by this Court. If any such sample detect substance abuse, the defendant shall participate in an in-patient or out-patient substance abuse treatment program, for evaluation and/or treatment, as arranged by the U.S. Probation Officer until duly discharged. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the U.S. Probation Officer based on the ability to pay or the availability of third party payment.

5. The defendant shall provide the U.S. Probation Officer access to any financial information upon request and produce evidence to the U.S. Probation Officer to the effect that income tax returns have been duly filed within his place of residence as required by law.

6. The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search, conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

7. The defendant shall cooperate in the collection of a DNA sample as directed by the U.S. Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code § 3563(a)(9).

8. The defendant shall participate in vocational training and/or job training placement program recommended by the U.S. Probation Officer.

Case 3:10-cr-00251-JAF    Document 1187    Filed 02/14/11    Page 5 of 5

DEFENDANT:          ANTONIO ORTIZ-APONTE
CASE NUMBER:        10-CR-251-16 (JAF)

Judgment — Page __5__ of __5__

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|           | **Assessment** | **Fine** | **Restitution** |
|-----------|----------------|----------|-----------------|
| **TOTALS** | $ 200.00 | $ ------------------- | $ --------------------- |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

  If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|-----------------|-------------------------|----------------------------|
|                   |                 |                         |                            |
| **TOTALS** | $ _____ | $ _____ | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐  the interest requirement is waived for the    ☐ fine    ☐ restitution.

  ☐  the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>(16) ANTONIO A~~PONTE ORTIZ~~<br>a.k.a. Gordo Zantac,<br>Defendant. | Criminal No. 10-251 (JAF) |

*Ortiz aponte 1/11/10/10*

*Received & Filed*
*11/10/10 @ 10:12 AM*
*A*

### PLEA AGREEMENT

**TO THE HONORABLE COURT:**

COMES NOW the United States of America, by and through its attorneys, Rosa Emilia Rodriguez Vélez, United States Attorney for the District of Puerto Rico, José A. Ruiz, Assistant U.S. Attorney, Chief, Criminal Division, Timothy R. Henwood, Assistant U.S. Attorney, Deputy Chief, Narcotics Division and Jenifer Hernández Vega, Assistant U.S. Attorney, the defendant, Antonio Aponte Ortiz, and the defendant's counsel, Javier A. Cuyar Olivo, Esq. and state that they have reached an agreement pursuant to Rule 11(e)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### OFFENSE TO WHICH DEFENDANT PLEADS GUILTY

1.      Antonio Aponte Ortiz agrees to plead guilty to COUNTS ONE and TWO of the Indictment.

2.      COUNT ONE of the Indictment charges the defendant herein with from in or about 2005 to in or about July, 2010, knowingly and intentionally combining, conspiring, and agreeing with other persons, to commit an offense against the United States, that is: to possess with intent to distribute one (1) kilogram or more of heroin, a Schedule I Narcotic Drug Controlled Substance; fifty (50) grams or more of cocaine base (commonly known as "crack"), a Schedule II Narcotic Drug

Plea Agreement
Page 2

Controlled Substance; five (5) kilograms or more of cocaine, a Schedule II, Narcotic Drug

Controlled Substance; one hundred (100) kilograms or more of marijuana, a Schedule I Controlled

Substance; a mixture or substance containing detectable amounts of Oxycodone (commonly known

as Percocet), a Scehdule II Controlled Substance; and a mixture or substance containing detectable

amounts of Alprazolam (commonly known as Xanax), a Schedule IV Controlled Substance, all

within one thousand (1,000) feet of the real properties comprising housing facilities owned by a

public housing authority, that is, the Virgilio Davila Public Housing Project, Las Gardenias Public

Housing Project; the Brisas de Bayamon Public Housing Project, the Falin Torrech Public Housing

Project, and other areas within the Municipality of Bayamon, Puerto Rico.  All in violation of Title

21, United States Code, Sections 846, 841(a)(1), and 860.

      3.    COUNT TWO of the Indictment charges the defendant herein with from in or about

2005 to in or about July, 2010, aiding and abetting other persons, during and in relation to a drug

trafficking crime for which they may be prosecuted in a court of the United States, that is, conspiracy

to possess with intent to distribute and/or to distribute heroin, cocaine base, cocaine, marijuana,

Oxycodone, and Xanax in violation of Title 21, United States Code, Sections 841 (a)(l), 860, and

846 (as charged in Count One of the instant Indictment), carrying and using firearms, as that term

is defined in Title 18, United States Code, Section 921 (a)(3). All in violation of Title 18, United

States Code, Section 924(c)(1)(A) and 2.

## MAXIMUM PENALTIES

      4.    In this regard, the defendant understands that in relation to COUNT ONE the

penalties for the offenses charged are a maximum term of life imprisonment, a minimum mandatory

term of imprisonment of ten (10) years, a fine not to exceed eight (8)  million dollars and a term of

**Plea Agreement**
**Page 3**

supervised release of at least ten (10) years.

5.      Nonetheless, for the purpose of this Plea Agreement, the parties agree and stipulate
that this ***defendant is accountable for conspiring to possess with intent to distribute at least 2 KG
but less than 3.5 KG of Cocaine.***      If the Court accepts this stipulation, the statutorily authorized
punishment for would be: a term of not less than five (5) years and not more than forty (40) years;
a fine not to exceed four (4) million dollars; and a term of supervised release of at least eight (8)
years in addition to any term of incarceration.

6.      The defendant understands that in relation to COUNT TWO  a consecutive term of
imprisonment of sixty (60) months is mandatory. Said term is to be served consecutively to the term
of imprisonment imposed in Count One.



## APPLICABILITY OF SENTENCING GUIDELINES

7.      Antonio Aponte Ortiz understands that the sentence will be left entirely to the sound
discretion of the Court in accordance with the advisory Sentencing Guidelines, Title 18 <u>United States
Code</u>, Section 3551, *et. seq.* (hereinafter Guidelines). It is further understood that the defendant may



not withdraw defendant's plea solely as a result of the sentence imposed and the Court is not bound
by this plea agreement.  The defendant acknowledges that defendant is aware that parole has been
abolished.

## SPECIAL MONETARY ASSESSMENT

8.      Prior to or at the time of sentencing, the defendant shall pay a special assessment of
one-hundred dollars ($100.00), per count, as required by Title 18, <u>United States Code</u>, Section
3013(a).

Plea Agreement
Page 4

**FINES AND RESTITUTION**

9.    The defendant is aware that the Court may, pursuant to Section 5E1.2(i) of the
<u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u>, order the defendant
to pay a fine sufficient to reimburse the government for the costs of any imprisonment, probation or
supervised release. The defendant is aware that in some instances, the Court may impose restitution
to the victim. As part of this plea agreement, and should the Court impose restitution upon the
defendant, the defendant agrees to produce complete information regarding all restitution victims
and defendant agrees to execute a financial statement to the United States (OBD Form 500).

**SENTENCING GUIDELINES CALCULATIONS**

10.    Although the Guidelines are now advisory in nature, the sentencing court, in imposing
sentence, is required to consider the Guideline "sentencing range established for the applicable
category of the offense committed by the defendant". <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).
Therefore, the United States and the defendant submit the following Advisory Sentencing Guideline
calculations:

| SENTENCING GUIDELINES CALCULATION TABLE | |
|---|---|
| Based on the amount of controlled substance stipulated by the parties, that is at least 2 kilograms but less than 3.5 kilograms of cocaine, the Base Offense Level shall be twenty-eight (28), pursuant to the Drug Quantity Table in U.S.S.G. § 2D1.1. | 28 |
| Since the offense occurred in a protected location the base offense level shall be increased by two (2) levels, pursuant to U.S.S.G. § 2D1.2(a)(1). | +2 |
| Should defendant clearly demonstrate acceptance of responsibility for the offense, defendant's base offense level shall be further reduced by three (3) levels, pursuant to U.S.S.G. § 3E1.1. | -3 |
| **TOTAL OFFENSE LEVEL**<br>Assuming a Criminal History Category of I, | **27**<br>(70-87) |

Plea Agreement
Page 5

| SENTENCING GUIDELINES CALCULATION TABLE | |
|---|---|
| In Count TWO of the Indictment where defendant pleads guilty for carrying a firearm during and in relation to a drug trafficking crime, a consecutive term of imprisonment of sixty (60) months is mandatory. Said term is to be served consecutively to the term of imprisonment imposed in Count ONE. | |
| **SENTENCING RANGE** | (130-147) |
| The parties make no stipulation as to defendant's Criminal History Category. | |

## RULE 11(e)(1)(B) WARNINGS

11.     Defendant understands that, pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, the Court is not bound by these sentencing guidelines calculations, that is, the Court may impose a harsher or lesser sentence in spite of the recommendations set forth herein. Also, the defendant understands that defendant may not withdraw defendant's plea solely as a result of the final sentencing guidelines calculations made by the Court.

## SENTENCE RECOMMENDATION

12.     If the defendant is a Criminal History Category of I, the parties will recommend a sentence of 70 months of imprisonment as to Count One and a sentence of 60 months of imprisonment as to Count Two, to be served consecutively. The total combined sentence recommended by the parties would be a term of imprisonment of 130 months of imprisonment, assuming a CHC I. If the defendant is a CHC II or higher the parties will recommend the lower end of the applicable guideline range. The defendant agrees that this sentence is reasonable pursuant to Title 18, United States Code, Section 3553 (a).

## NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY

13.     The parties make no stipulation as to defendant's Criminal History Category.

37

Plea Agreement
Page 6

### NO FURTHER ADJUSTMENTS OR DEPARTURES

14.     The United States and the defendant agree that no further adjustments or departures to the defendant's base offense level shall be sought by the parties. The parties agree that any request by the defendant for an adjustment, departure, or a lower sentence will be considered a material breach of this Plea Agreement and the United States will be able to request the withdrawal of the Plea Agreement.

### SATISFACTION WITH ATTORNEY

15.     The defendant, represents to the Court that defendant is satisfied with defendant's attorney, Javier A. Cuyar Olivo, Esq., and hereby indicates that counsel has rendered effective legal assistance.

### RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

16.     Defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement.  Defendant understands that the rights of criminal defendants include the following:

a.     If the defendant had persisted in a plea of not guilty to the charges, defendant would have had the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the judge agree.

b.     If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. The defendant and the defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty.  The jury

Plea Agreement
Page 7

would be instructed that the defendant is presumed innocent, that it could not convict the defendant unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

        c.     If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the defendant's guilt beyond a reasonable doubt.

        d.     At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court.

        e.     At a trial, the defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilty could be drawn from defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on defendant's own behalf.

## STIPULATED VERSION OF FACTS

      17.     The accompanying Stipulated Version of Facts signed by the defendant is hereby incorporated into this plea agreement. Defendant adopts the Version of Facts and agrees that the facts therein are accurate in every respect and that, had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

## JURISDICTIONAL LIMITS OF PLEA AGREEMENT

      18.     It is specifically understood by the defendant, that this plea agreement does not extend

Plea Agreement
Page 8

to or bind other federal districts, federal civil and/or tax authorities, and/or State or Commonwealth of Puerto Rico tax authorities, civil and/or State or Commonwealth of Puerto Rico law enforcement authorities.

## WAIVER OF APPEAL

19.    The defendant hereby agrees that if this Honorable Court accepts this agreement and sentences the defendant according to its terms, conditions, and recommendations, the defendant waives and surrenders the right to appeal the judgment and sentence in this case.

## DISMISSAL OF REMAINING COUNTS

20.    As part of this plea agreement, the United States, after sentencing, will request the dismissal of the remaining counts of the Indictments pending against the defendant, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.

## ENTIRETY OF PLEA AGREEMENTS AND AMENDMENTS

21.    The United States and the defendant acknowledge that the above-stated terms and conditions constitute the entire plea agreement between the parties and deny the existence of any other terms and conditions not stated herein.  No additional promises, terms or conditions will be entered unless in writing and signed by all parties.

## VOLUNTARINESS OF PLEA

22.    It is understood by the defendant, that defendant is entering into this plea agreement without compulsion, threats, or any other promises from the United States Attorney or any of his agents. The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is, in fact, guilty.

Plea Agreement
Page 9

## BREACH AND WAIVER

23.     The defendant understands and agrees that if the defendant breaches the plea

agreement, the defendant may be prosecuted and sentenced for all of the offenses the defendant may

have committed. The defendant agrees that if the defendant breaches this plea agreement, the

Government reserves the right to take whatever steps are necessary to nullify the plea agreement,

including the filing of a motion to withdraw from the plea agreement and/or to set aside the

conviction and sentence. The defendant also agrees that if he is in breach of this plea agreement,

the defendant is deemed to have waived any objection to the reinstatement of any charges under the

indictment, information, or complaint which may have previously been dismissed or which may have

not been previously prosecuted.

**ROSA EMILIA RODRIGUEZ VELEZ**
United States Attorney

José A. Ruiz,
Chief, Criminal Division
Dated: 11/09/2010

Javier A. Cuyar Olivo, Esq.,
Counsel for Defendant
Dated: 11-10-10

Timothy R. Henwood
Deputy Chief, Narcotics Division
Dated: 1-9-10

Antonio Aponte Ortiz
Defendant
Dated: 11-10-10

Jenifer Y. Hernandez Vega
Assistant United States Attorney
Dated: 11/9/10

Plea Agreement
Page 10

I have consulted with my counsel and fully understand all my rights with respect to the Indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u> which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I fully understand this agreement and I voluntarily agree to it.

Date:   11- 10- 10

Antonio Aponte Ortiz
Defendant

I am the attorney for the defendant. I have fully explained to the defendant the defendant's rights with respect to the pending indictment. Further, I have reviewed the provisions of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u>, and I have fully explained to the defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part this Plea Agreement with the defendant. To my knowledge, the defendant is entering into this agreement voluntarily, intelligently and with full knowledge of all the consequences of defendant's plea of guilty.

Date:  11-10-10

Javier A. Cuyar Olivo, Esq.
Counsel for Defendant

## STIPULATED VERSION OF THE FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the United States submits the following summary setting forth the version of the facts leading to defendant's acceptance of criminal responsibility for violating Title 21, United States Code, §§ 846, 841(a)(1), and 860, and Title 18, United States Code, §§ 924(c)(1)(A) and 2.

From in or about 2005 up to in or about July, 2010, Antonio Aponte Ortiz a.k.a. Gordo Zantac, participated in a conspiracy with other persons to knowingly and intentionally possess with intent to distribute controlled substances, that is, one (1) kilogram or more of heroin, a Schedule I Narcotic Drug Controlled Substance; fifty (50) grams or more of cocaine base (commonly known as "crack"), a Schedule II Narcotic Drug Controlled Substance; five (5) kilograms or more of cocaine, a Schedule II, Narcotic Drug Controlled Substance; one hundred (100) kilograms or more of marijuana, a Schedule I Controlled Substance; a mixture or substance containing detectable amounts of Oxycodone (commonly known as Percocet), a Scehdule II Controlled Substance; and a mixture or substance containing detectable amounts of Alprazolam (commonly known as Xanax), a Schedule IV Controlled Substance, all within one thousand (1,000) feet of the real properties comprising housing facilities owned by a public housing authority.

During and in relation to such drug trafficking crime, Antonio Aponte Ortiz, aiding and abetting other persons, carried and used firearms.

The object of the conspiracy was to distribute controlled substances at the Virgilio Davila Public Housing Project, Las Gardenias Public Housing Project, Brisas de Bayamon Public Housing Project, Falin Torrech Public Housing Project, and other areas within the Municipality of Bayamon, Puerto Rico, all for significant financial gain and profit.

In furtherance of the conspiracy and to achieve its objects the defendant would participate in the distribution of controlled substances at the housing projects. To further accomplish the goals

Plea Agreement
Page 12

of the conspiracy, the defendant would also provide protection to the leaders and members of the

drug trafficking organization, the narcotics and the proceeds derived from their sales.

For the sole purpose of this Plea Agreement, it has been agreed upon that the defendant will

be held accountable for at least 2 kilograms but less than 3.5 kilograms of cocaine.

Had the government proceeded to trial, it would have presented the testimony of cooperating

witnesses, confidential sources, law enforcement officers and expert witnesses as well as submitted

into evidence video and/or audio recordings, surveillance videos, drug ledgers, drug paraphernalia,

firearms and narcotics seized, photographs, as well as any other pertinent evidence.

Full discovery was timely disclosed to the defense.

Jenifer Hernandez Vega
Date: 11\9\10

Antonio Aponte Ortiz
Date: 11-10-10

Javier A. Cuyar Olivo, Esq.
Date: 11-10-10

```
 1                  UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3

    UNITED STATES OF AMERICA,
 4
                  Plaintiff,
 5    v.                                Docket No. 10-251

 6                                      San Juan, Puerto Rico
    ANTONIO ORTIZ-APONTE,               November 10, 2010
 7
                  Defendant.
 8

 9                        CHANGE OF PLEA

10        BEFORE THE HONORABLE CHIEF JUDGE JOSÉ A. FUSTÉ,

11             UNITED STATES DISTRICT JUDGE.

12

13  APPEARANCES:

14  For the Government:      Mr. Alberto Lopez, AUSA

15

16  For the Defendant:       Mr. Javier Cuyar-Olivo, Esq.

17

18

19

20

21

22

23
    Proceedings recorded by stenography.  Transcript produced by
24  CAT.

25
```

Case: 11-1259    Document: 0011626266399    Page: 91    Date Filed: 09/27/2011    Entry ID: 5582929

```
 1                          I N D E X

 2   WITNESSES:                                        PAGE

 3        None offered.

 4

 5   EXHIBITS:

 6        None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case: 11-1259   Document: 0011626399   Page: 92   Date Filed: 09/27/2011   Entry ID: 5582929

```
 1                              San Juan, Puerto Rico
 2                              November 10, 2010
 3                              At or about 11:10 AM
 4                    *    *    *
 5          COURTROOM DEPUTY:  For Change of Plea, criminal
 6   10-251, United States of America versus Antonio Aponte-Ortiz
 7   (sic).  Appearing on behalf of the Government, Assistant U.S.
 8   Attorney Alberto Lopez.  And appearing on behalf of the
 9   defendant, Javier Cuyar.
10          Defendant is present in court and will be assisted
11   with services of the court interpreter.
12          MR. CUYAR:  Good morning, Your Honor.  Javier
13   Cuyar-Olivo on behalf of Antonio Ortiz-Aponte.  We are ready
14   to proceed.
15          First of all, we must clarify his name, Antonio
16   Ortiz-Aponte.  He was indicted as Antonio Aponte-Ortiz, but at
17   the arraignment we talked with the Attorney Jenifer Hernandez
18   and it was clarified before Magistrate Judge Camille
19   Velez-Rive.
20          THE COURT:  So his name is Antonio Ortiz-Aponte?
21          MR. CUYAR:  Yes, Your Honor.
22          THE COURT:  And you have no objection if we correct
23   it accordingly?
24          MR. CUYAR:  No objection, Your Honor.
25          THE COURT:  There should be a minute entry that this
```

man's correct name is Antonio Ortiz-Aponte and not Antonio

Aponte-Ortiz, okay?  Fair enough.

       MR. CUYAR:  Thank you, Your Honor.

       THE COURT:  And this is not a type C plea.

       MR. CUYAR:  No, Your Honor.

       THE COURT:  Very well.  Mr. Ortiz, let me just fix it

myself here.  Antonio Ortiz-Aponte.  To avoid further

confusion, I have done it by hand in pen with my initials on

two documents, on the Plea Supplement and on the Plea

Agreement.

       THE COURT:  Mr. Ortiz, you are here because, as you

know, you were charged in this case, 10-251, a case that is

set for trial starting on Monday, was set for trial starting

on Monday.  You have signed a Plea Agreement to plead guilty

to Counts I and Count II of the Indictment in this case.  Is

that what you want to do?

       THE DEFENDANT:  Yes.

       THE COURT:  Very well.  Before I accept your plea, I

will have to ask you a number of questions.  This will be done

under oath.  If you give me any false information, you may be

found liable for additional penalties for perjury or for

making false statement.

       Bear in mind that through this process, we're going

to talk about the facts of the case, and when we talk about

the facts of the case, you will be for all purposes waiving

Case: 11-1259   Document: 00116266399   Page: 93   Date Filed: 09/27/2011   Entry ID: 5582929

Case: 11-1259    Document: 00116266399    Page: 94    Date Filed: 09/27/2011    Entry ID: 5582929

```
 1   your right not to incriminate yourself.  Do you have any
 2   objection to this?
 3            THE DEFENDANT:  No.
 4            THE COURT:  Very well.  The defendant will be
 5   sworn.
 6            COURTROOM DEPUTY:  Please raise your right hand.
 7            Do you solemnly swear that the testimony you are
 8   about to give in this case is the truth, the whole truth, and
 9   nothing but the truth, so help you God?
10            THE DEFENDANT:  Yes.
11            THE COURT:  Very well.  So confirming what we just
12   heard, your complete name is Antonio Ortiz-Aponte, correct?
13            THE DEFENDANT:  Yes.
14            THE COURT:  And you have a nickname, like many of us
15   have.  In this case you appear to be known as Gordo Zantac?
16            THE DEFENDANT:  Yes.
17            THE COURT:  What was that -- you liked to take Zantac
18   pills for your stomach?  That's the reason?
19            THE DEFENDANT:  Yes.
20            THE COURT:  Very well.  Any other name?  Any other
21   nickname?
22            THE DEFENDANT:  No.
23            THE COURT:  How old are you now, Mr. Ortiz?
24            THE DEFENDANT:  28.
25            THE COURT:  And how far did you attend school?
```

Case: 11-1259   Document: 0011626399   Page: 95   Date Filed: 09/27/2011   Entry ID: 5582929

1          THE DEFENDANT:  Seven.

2          THE COURT:  7th grade?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And regarding legal work, what have you

5 done for a living in the past?

6          THE DEFENDANT:  Sometimes I helped my dad out doing

7 mechanical work.

8          THE COURT:  You are a mechanic?

9          THE DEFENDANT:  My dad.

10          THE COURT:  Your dad is a mechanic?

11          THE DEFENDANT:  I know a little bit.

12          THE COURT:  So you are a mechanic's helper?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Your dad has a shop?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Okay.  Even though you are detained, I

17 have to ask you, have you taken any drugs, medications, pills,

18 alcoholic beverage in the past 24 hours, anything that may

19 effect your ability to understand what is happening here

20 today?

21          THE DEFENDANT:  No.

22          THE COURT:  Do you feel competent to plead?  That

23 means capable of entering an intelligent decision on this

24 record accepting the charges in this case, your culpability in

25 this case.

Case: 11-1259    Document: 0011626266399    Page: 96    Date Filed: 09/27/2011    Entry ID: 5582929

1          THE DEFENDANT:  Yes.

2          THE COURT:  And, Counsel, do you concur in that?

3     Counsel, do you concur?

4          MR. CUYAR:  Yes.

5          THE COURT:  Very well.  Have you had ample time to

6     discuss this case and your decision to plead with your

7     attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Are you satisfied with the work that your

10    attorney's doing for you in this case?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that under the

13    constitutional laws of the United States you are entitled to a

14    trial by jury on any charge pending against you in the

15    Indictment?

16         THE DEFENDANT:  Uh-huh.  Yes.

17         THE COURT:  And of course the -- by saying this, I am

18    also saying that by pleading guilty, you're waiving that

19    right.  Do you understand that?

20         THE DEFENDANT:  (Nodding head up and down.)  Yeah.

21         THE COURT:  Very well.  If you were to try your case,

22    you would be presumed innocent and the Government would be

23    required to prove a case against you by competent evidence

24    beyond a reasonable doubt before you could be found guilty.

25    You have no obligation of proving your innocence.  Is that

1  understood?

2    THE DEFENDANT:  Yes.

3    THE COURT:  And if you were to try your case, you are

4  entitled to be present.  You are entitled to confront the

5  witnesses offered by the Government.  You are entitled to

6  object to evidence offered by the Government, present evidence

7  on your behalf.  You are entitled, in other words, to have

8  your lawyer defend you according to law vigorously,

9  completely.  Do you understand that?

10    THE DEFENDANT:  Yes.

11    THE COURT:  If you were to try your case, you could

12  testify if you wanted to.  You don't have to.  If you were to

13  decide to remain silent, nobody could point to your silence as

14  evidence of guilt.  Nobody could say that defendant who is

15  sitting there in that table who has failed to testify must be

16  guilty.  That cannot be.  That's not allowed.  Do you

17  understand that?

18    THE DEFENDANT:  Yes.

19    THE COURT:  Okay.  If you plead guilty and if I

20  accept your plea, do you understand that you will be waiving

21  your right to a trial by jury; the right to be presumed

22  innocent; the right of putting the Government through the

23  burden of proving you guilty beyond a reasonable doubt; the

24  right to confront evidence, challenge evidence, present

25  evidence?  All those rights will be waived.  The right to

Case: 11-1259  Document: 0011626399  Page: 97  Date Filed: 09/27/2011  Entry ID: 5582929

Case: 11-1259    Document: 00116266399    Page: 98    Date Filed: 09/27/2011    Entry ID: 5582929

1    remain silent without adverse inferences of any kind.  Those

2    rights are waived.  Do you understand that?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Having discussed these matters with you,

5    do you still want to plead guilty in this case?

6             THE DEFENDANT:  Yes.

7             THE COURT:  You have seen the Indictment in this

8    case?  The document, the charging document, the accusation?

9             THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  You are charged in a number of

11   counts, but the two that you are pleading guilty to are Counts

12   I and II.  And Count I is a conspiracy count to possess with

13   intent to distribute narcotics.  And the other one is a

14   firearms count related to drug trafficking.  Do you understand

15   that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Well, Count I charges you with the

18   following:  That you along with others conspired to possess

19   with intent to distribute one kilogram or more of heroin; 50

20   grams or more of crack cocaine; five kilograms or more of

21   cocaine, of powder cocaine; 100 kilograms or more of

22   marijuana; pills that are controlled substances if dispensed

23   illegally, such as Percocet and Xanax, which are Schedule IVs;

24   and that all this happened within one thousand feet of the

25   real properties comprising housing facilities owned by Public

Housing Authorities, which included the Virgilio Davila

Public Housing Project, Las Gardenias Public Housing Project,

the Brisas de Bayamon Public Housing Project, the Falin

Torrech Public Housing Project, and other areas within the

Municipality of Bayamon. That is Count One. Do you

understand that?

THE DEFENDANT: Yes.

THE COURT: And Count II is that in reference to that

activity that is described in Count I, you, along with others,

aiding and abetting others, actually carried and used firearms

while committing these drug trafficking offenses. Do you

understand that?

THE DEFENDANT: Yes.

THE COURT: Let's talk about the facts of what has to

be proven. What has to be proven if you were to be tried is

the following: First, who you are, and that you are one of

those that conspired to do these things. Do you understand

that?

THE DEFENDANT: Yes.

THE COURT: A conspiracy is an agreement between two

or more persons to make a crime happen. In the context of

drug trafficking, the mere agreement, the mere meeting of the

minds is a crime. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. The Government has to prove that

Case: 11-1259    Document: 00116266399    Page: 100    Date Filed: 09/27/2011    Entry ID: 5582929

1  the object of this conspiracy was to possess with intent to

2  distribute these narcotics.  The reason why specific narcotics

3  are mentioned with specific amounts is because those kinds of

4  narcotics in those amounts have a relationship to the kind of

5  penalty that can be imposed at the time of sentencing.  Do you

6  understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  So therefore the Government would prove

9  then that the conspiracy and that you people, those who

10  participated, possessed with intent to distribute X kind of

11  drugs in X amounts.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  The Government also has to prove that the

14  activities of this drug trafficking took place within one

15  thousand feet of these properties, which are Public Housing

16  Projects owned or under the authority of Public Housing

17  Projects.  The names, I don't have to mention them again.  The

18  reason for that is because that triggers additional penalties.

19  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  And Count II, which is the

22  firearms count, basically what it says is that while you and

23  others were drug trafficking and conspiring to do that, you

24  were possessing, using, carrying firearms as the term is

25  described; and by firearms we're talking about real guns, guns

Case: 11-1259    Document: 0011626399    Page: 101    Date Filed: 09/27/2011    Entry ID: 5582929

1    capable of firing bullets, not toys, real, the real thing. Do

2    you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  Any doubt about the kind of crimes

5    that you're pleading guilty to?

6            THE DEFENDANT:  No.

7            THE COURT:  Needless to say that the Government also

8    has to prove that you acted knowingly, willfully, and

9    unlawfully.  That is, with a bad purpose to disobey or

10   disregard the law, not because of a mistake, not because of an

11   accident, not because of any other innocent reason.  Do you

12   understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  The evidence has to establish beyond a

15   reasonable doubt that you people got together to basically

16   drug traffic.  Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Okay.  Any doubt?  Any question about

19   that?

20           THE DEFENDANT:  No.

21           THE COURT:  Okay.  Let's first talk about the

22   statutory penalties, which are the ones that appear in Title

23   21 and Title 18.  One of the alternatives for sentence is

24   making use of those statutory penalties.

25           If you were to be convicted under the Indictment

Case: 11-1259    Document: 00116266399    Page: 102    Date Filed: 09/27/2011    Entry ID: 5582929

1    without a Plea Agreement, by that mere fact you are exposing

2    yourself to a statutory mandatory term of ten years; a maximum

3    of life imprisonment; a fine that should not exceed four

4    million dollars, but because of the location where the facts

5    took place, it can be eight million.  It's multiplied by two.

6    A term of supervised release of at least five years, but

7    because of the location where the facts took place, also

8    multiplied by two, and it is ten years; plus the payment of a

9    special monetary assessment.  Do you understand that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Okay.  In Federal Court, there are no

12    suspended sentences.  Probation is not an alternative for this

13    kind of crime.  Parole has been abolished.  That means your

14    case will never go before a Parole Board.  No Parole Board

15    will release you before you serve your sentence from beginning

16    to end.  Is that understood?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Okay.  Aside from statutory penalties, I

19    should tell you that there is another source of information

20    that the judges use for sentencing purposes.  Those are the

21    Advisory Sentencing Guidelines promulgated by the Sentencing

22    Commission.  Those guidelines will consider kind of drug,

23    amount of drug, role in the offense, criminal record, among

24    other factors to suggest to the Court an appropriate sentence

25    for a case.  Do you understand that?

Case: 11-1259    Document: 00116266399    Page: 103    Date Filed: 09/27/2011    Entry ID: 5582929

1      THE DEFENDANT:  Yes.

2      THE COURT:  And your Plea Agreement obviously tells

3  me that you have discussed that with your lawyer.  And, as a

4  matter of fact, there is even a tentative guideline

5  calculation suggested by you with your lawyer and the

6  Government.  Do you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  The Court cannot guarantee to you a

9  guideline today.  The guideline could be this one, could be

10  different, could be higher, could be lower.  We will know the

11  guideline at the end of the day when I am about to sentence

12  you.  Do you understand that?

13      THE DEFENDANT:  Yes.

14      THE COURT:  If the guideline is higher and therefore

15  prejudicial to you, that by itself would not allow you to

16  withdraw your plea.  Do you understand that?

17      THE DEFENDANT:  Yes.

18      THE COURT:  If a sentence recommendation is given to

19  the Court, the Court will consider the sentencing

20  recommendation, but the Court doesn't have to follow any

21  particular recommendation.  Do you understand that?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Okay.  The Judge always retains the

24  authority to impose a higher sentence or lower sentence.  Do

25  you understand that?

Case: 11-1259    Document: 00116266399    Page: 104    Date Filed: 09/27/2011    Entry ID: 5582929

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  Supervised release, which I mentioned, is

3    a term of supervision that starts to accrue when you are

4    released from prison.  You are released from prison.  You

5    report to the probation officer.  You are given terms and

6    conditions of good behavior that you follow, must follow.  If

7    you don't follow them, you may be revoked and sent back to

8    jail.  Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  In this case, there is a term of

11   supervised release of at least ten years.  Do you understand

12   that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And to be clear, if a sentencing

15   recommendation is contained in your Plea Agreement, I will

16   look into it.  I will study it.  I will think about it.  I

17   don't have to follow it.  Do you understand that?

18         THE DEFENDANT:  Yes, I understand.

19         THE COURT:  Okay.  Has somebody threatened you in any

20   form or fashion in order to induce you to plead?

21         THE DEFENDANT:  No.

22         THE COURT:  Your decision to plead was reached by

23   yourself with your lawyer, without the intervention of anybody

24   else?

25         THE DEFENDANT:  Yes.

Case: 11-1259    Document: 00116266399    Page: 105    Date Filed: 09/27/2011    Entry ID: 5582929

1           THE COURT:  Okay.  Let's talk about your Plea

2   Agreement.  Your Plea Agreement says that you are pleading

3   guilty to Counts I and II, conspiracy to possess with intent

4   to distribute narcotics, and the gun count that is related to

5   the distribution of narcotics.

6           It talks about the maximum penalties, which are the

7   ones that I have talked about here and explained to you.  And

8   it also mentions the fact that you have a stipulation

9   regarding your relevant conduct.

10          That stipulation runs between yourself, your lawyer,

11  and the Government.  And the stipulation is to the effect that

12  you are going to plead, you're responsible, you're accepting

13  your involvement to possess with intent to distribute at least

14  two but less than three -- 3.5 kilos of cocaine.  Do you

15  understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If the Court were to accept that

18  stipulation, there is a change in the statutory penalties.

19  The ten-year minimum now becomes a five-year minimum.  The

20  life imprisonment maximum now becomes a 40-year maximum, which

21  could be multiplied by two because of the location.  The fine,

22  rather than being four million maximum, is now two million,

23  which multiplied by two again becomes four million.  And the

24  supervised release is at least four years, not five, which

25  multiplied by two is eight years.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And of course you know, because it says it here, that the sentence regarding the gun count is consecutive to the sentence imposed in the drug count.  In other words, gun counts are consecutive to drug counts.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And it mentions here 60 months mandatory consecutive.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  You are proposing a guideline calculation here.  Because of the stipulation you entered with the Government, you start with a base offense level of 28.  Two points are added because of the location where the facts took place.  Because you have accepted your involvement and if you clearly demonstrate that at the end of the day, I could give you up to three points for acceptance of criminal responsibility.  And then your adjusted base offense level should be in the neighborhood of a 27.

And assuming no criminal history, your Guideline Imprisonment Range should be 70 to 87 months with the understanding that there is of course a 60-month statutory mandatory minimum, plus the 60-month consecutive sentence for the gun.  Do you understand that?

THE DEFENDANT:  Yes.

Case: 11-1259    Document: 00116266399    Page: 106    Date Filed: 09/27/2011    Entry ID: 5582929

Case: 11-1259    Document: 0011626399    Page: 107    Date Filed: 09/27/2011    Entry ID: 5582929

1    THE COURT:  So therefore, according to the pages that

2    I have before me, the sentencing language in this case could

3    be 130 to 147 months.  That is the best estimate of today.

4    And the sentencing recommendation that I see here in writing

5    is that you would like to be sentenced to 70 months on the

6    drug count, with 60 months consecutive on the gun count.  Do

7    you understand that?

8    THE DEFENDANT:  Yes.

9    THE COURT:  And you understand that that is simply a

10    recommendation, correct?

11    THE DEFENDANT:  Yes, I understand.

12    THE COURT:  There is no stipulation regarding your

13    criminal history.  We are assuming it is a Criminal History

14    Category of I, and maybe it's I, but let me review, once

15    again, the papers that I have here from the Pretrial Services

16    Department.  I want to make certain that this is true, that

17    there are no mistakes here.

18    According to this record, when you were 20 years old,

19    in May of 2002, at Bayamon Superior Court, you were charged in

20    a number of cases which include the firearms and trafficking

21    law.  The case was disposed of in April of the year 2003 with

22    a dismissal; is that correct?

23    THE DEFENDANT:  Yes.

24    THE COURT:  And in the year 2003, when you were 21,

25    also in Bayamon Superior Court -- District Court, you had an

Case: 11-1259    Document: 00116266399    Page: 108    Date Filed: 09/27/2011    Entry ID: 5582929

1  Article 25 of the Puerto Rico Penal Code, falsification of

2  evidence and illegal appropriation, and that case was also

3  dismissed in the year 2005, correct?

4        THE DEFENDANT:  Yes.

5        THE COURT:  And when you were 24 in April of 2006 in

6  Arecibo, you were charged in a number of cases for firearms

7  and controlled substances, drugs.  Trial was set, but the case

8  was closed because you were a fugitive, correct?

9        THE DEFENDANT:  Yes.

10        THE COURT:  And that case was never disposed of other

11  than that, correct?  That was the end of it, correct?

12        MR. CUYAR:  May I?

13        THE COURT:  Was it?

14        MR. CUYAR:  May I address the Court, Your Honor?

15        THE COURT:  Yes.

16        MR. CUYAR:  There is currently a trial by jury.  It

17  already started, and it is rescheduled to be continued in mid

18  December.

19        THE COURT:  When did it start?

20        MR. CUYAR:  It's a long story, Your Honor.  It

21  started on I believe it is June 28, 2009, then it went to the

22  Court of --

23        THE COURT:  It's still pending?

24        MR. CUYAR:  Yes, Your Honor.  It is pending, because

25  it went to the Court of Appeals, then to the Supreme Court,

Case: 11-1259    Document: 00116266399    Page: 109    Date Filed: 09/27/2011    Entry ID: 5582929

1    with a certiorari.  And right now he already started, and it
2    was like two weeks ago the trial was celebrated.  And it was
3    continued by the Court; and in December, mid December it will
4    be restarted.  Trial by jury in Arecibo.
5                 THE COURT:  Pending.
6                 MR. CUYAR:  Yes, Your Honor.
7                 THE COURT:  Okay.  And then when you were age 27 in
8    the year 2009 in Bayamon, a number of criminal cases were
9    filed against you for first degree murder, attempted murder,
10    illegal possession of a firearm; and most of these charges
11    were dismissed -- well, they are dismissed basically, true?
12                 THE DEFENDANT:  Yes, that's correct.
13                 THE COURT:  And this is all you have, correct?
14    Nothing else?
15                 THE DEFENDANT:  Nothing else.
16                 THE COURT:  Okay.  So the Plea Agreement continues
17    saying that there will be no further adjustments or departures
18    in this case.  Nobody's going to seek adjustments or
19    departures other than the ones that are contained in the Plea
20    Agreement.
21                 That you are satisfied with the services that your
22    lawyer is rendering.  That of course you have surrendered all
23    these rights that we have talked about here today, including
24    trial by jury, et cetera.
25                 You have waived your right to appeal if I were to

Case: 11-1259    Document: 00116266399    Page: 110    Date Filed: 09/27/2011    Entry ID: 5582929

1   sentence you according to the Plea Agreement, and you have

2   also stipulated a factual basis for your plea.  And you are

3   telling me here that this is your entire plea, nothing else

4   has been promised to you, everything is above board,

5   everything is in this piece of paper, correct?

6          THE DEFENDANT:  Correct.

7          THE COURT:  And the stipulation that you entered into

8   is a short stipulation basically.  You signed it.  That you

9   joined this conspiracy to possess with intent to distribute

10  one kilo or more of heroin; 50 grams or more of crack cocaine;

11  five kilograms or more of cocaine; 100 kilograms or more of

12  marijuana; Percocet; Xanax.

13         That the activities took place within one thousand

14  feet of the real properties of housing facilities that we have

15  mentioned here.  That you, aided and abetted by others, and

16  others aiding and abetting you, carried and used firearms

17  during the commission of these trafficking offenses.  And that

18  the object of the conspiracy was the distribution of these

19  substances in these Public Housing Projects for financial

20  gain.

21         You started in distribution of the controlled

22  substance at the projects.  You also provided protection to

23  the leaders and members of the drug trafficking organization,

24  protection to the narcotics and to the proceeds of the sales.

25  You are aware of what the evidence could be, and you along

Case: 11-1259    Document: 00116266399    Page: 111    Date Filed: 09/27/2011    Entry ID: 5582929

1    with your lawyer estimate that if this case were to be tried,

2    you could be convicted beyond a reasonable doubt.  Is that --

3    you're accepting that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Very well.  Has anything else been

6    promised to you aside from this?

7              THE DEFENDANT:  That is all.

8              THE COURT:  Do you still want to plead?

9              THE DEFENDANT:  Yes.

10             THE COURT:  I will accept your plea and sentence you

11   on February 8th at 9:30 AM.  Thank you.

12             MR. CUYAR:  Permission to withdraw, Your Honor.

13             (At 11:34 AM, proceedings concluded.)

14                        *       *       *

15

16

17

18

19

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT      )
 2  DISTRICT OF PUERTO RICO)
 3
 4       I certify that this transcript consisting of 23 pages is
 5  a true and accurate transcription to the best of my ability of
 6  the proceedings in this case before the Honorable Chief Judge
 7  José Antonio Fusté on November 10, 2010.
 8
 9
10
11
12  S/ Amy Walker
13  Amy Walker, CSR 3799
14  Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```

Case: 11-1259    Document: 00116266399    Page: 112    Date Filed: 09/27/2011    Entry ID: 5582929

UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

               Plaintiff,

v.
                               Docket No. 10-251

ANTONIO ORTIZ-APONTE,
                               San Juan, Puerto Rico
                               February 8, 2011

         Defendant.

SENTENCE

BEFORE THE HONORABLE CHIEF JUDGE JOSÉ A. FUSTÉ,

UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Government:     Ms. Jenifer Hernandez, AUSA

For the Defendant:      Mr. Javier Cuyar-Olivo, Esq.

Proceedings recorded by stenography.  Transcript produced by CAT.

Case: 11-1259   Document: 00116266399   Page: 113   Date Filed: 09/27/2011   Entry ID: 5582929

Case: 11-1259    Document: 00116266399    Page: 114    Date Filed: 09/27/2011    Entry ID: 5582929

68

1

2  WITNESSES:

3       None offered.                                    PAGE

4

5  EXHIBITS:

6       None offered.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

Case: 11-1259    Document: 00116266399    Page: 115    Date Filed: 09/27/2011    Entry ID: 5582929

```
 1                                          San Juan, Puerto Rico

 2                                          February 8, 2011

 3                                          At or about 10:09 AM

 4                          *       *       *

 5              COURTROOM DEPUTY:  For status conference (sic),

 6    10-251, United States of America versus Antonio Ortiz-Aponte.

 7    Appearing on behalf of the Government, Jenifer Hernandez, and

 8    appearing on behalf of the defendant, Javier Cuyar-Olivo.

 9              Defendant is present in court and will be assisted

10    with the services of the court interpreter.

11              MR. CUYAR:  Good morning, Your Honor.  Javier

12    Cuyar-Olivo on behalf of Antonio Ortiz-Aponte.  We are ready

13    to proceed.

14              THE COURT:  Give me one second.

15              Well, let me ask you this:  Have you engaged in

16    settlement negotiations, in plea negotiations?

17              COURTROOM DEPUTY:  This is a sentencing.

18              THE COURT:  A sentencing.  One minute.  Sorry.  Let

19    me look at something here.  Yes, I have it right here.

20    Absolutely.  Let me take a look at something.  Give me a

21    minute.

22              Okay.  I see from the record now that there are no

23    objections to the report, correct?

24              MR. CUYAR:  That's correct, Your Honor.

25              THE COURT:  Okay.  And what was the recommendation in
```

Case: 11-1259    Document: 00116266399    Page: 116    Date Filed: 09/27/2011    Entry ID: 5582929

1    this case?

2        MR. CUYAR:  He pled guilty to both counts.  The

3    recommendation was 70 months on Count I, and 60 months on

4    Count II, to serve consecutively for a total of 130 months.

5        THE COURT:  Very well.  Let me take a look at

6    something else before we do that.  The prior conviction is

7    considered relevant conduct in this case?

8        PROBATION OFFICER:  Yes, Your Honor, because he has

9    a -- Count II is a mandatory consecutive sentence for

10   possession of weapon and the firearms conviction.

11       THE COURT:  But it has nothing to do with the case he

12   pled guilty to here, correct?

13       PROBATION OFFICER:  Well, it is within the conspiracy

14   life span, so we consider it --

15       THE COURT:  You consider it that way because as a

16   matter of plea -- for purposes of plea.

17       PROBATION OFFICER:  Because it was in the same

18   time.

19       THE COURT:  But it was one incident in Arecibo, one

20   incident in Bayamon?

21       PROBATION OFFICER:  Yes.

22       THE COURT:  So it's like a little break.

23       MR. CUYAR:  If you allow me, Your Honor.

24       THE COURT:  Yes.

25       MR. CUYAR:  Okay.  I was going to bring this to the

Case: 11-1259    Document: 0011626399    Page: 117    Date Filed: 09/27/2011    Entry ID: 5582929

1   Court's attention.  First of all, Your Honor, this conviction

2   was on December 14, 2010.  The date that you were -- November

3   10, 2010, the day the change of plea hearing was held, and

4   Your Honor asked about that case, because the report that Your

5   Honor had said no disposition.  I informed to the Court that

6   it was a case that was a trial by jury.  But on December 14,

7   he pled guilty.

8          THE COURT:  I understand that, but the thing is that

9   --

10         MR. CUYAR:  Yes.  And I'm going to explain now the

11  second part, Your Honor.

12         THE COURT:  Okay.

13         MR. CUYAR:  The reason that it's relevant conduct is

14  various reasons.  First of all, it was provided in the Jencks

15  material that was provided by the Government, and the reason

16  is that it was -- it was a Search Warrant.  And they occupied

17  four weapons.  That was what he pled guilty to.  And that --

18  that surveillance was requested, and I have the documents

19  right here that were provided by the Jencks material.

20         Even though the house was in Arecibo, it was

21  requested, the Search Warrant, by the District Attorney's

22  Office of Bayamon, because it was the investigation Bayamon

23  was conducting, Your Honor.

24         THE COURT:  Well, but the thing is this:  How -- I

25  understand the situation, but what I see in the paperwork is

Case: 11-1259    Document: 00116266399    Page: 118    Date Filed: 09/27/2011    Entry ID: 5582929

1    that I have to be certain in my own mind that indeed this is

2    relevant conduct, because he -- you are telling me that a

3    Search Warrant was issued in Bayamon.  The firearms --

4         MR. CUYAR:  It was issued in Arecibo, but it was

5    requested by the District Attorney's Office of Bayamon.  And,

6    Your Honor --

7         THE COURT:  Okay.  The conspiracy in this case

8    involves certain housing projects in Bayamon.

9         MR. CUYAR:  Correct.

10        THE COURT:  What does Arecibo have to do with this,

11   all this?

12        MR. CUYAR:  Because he has a house rented in Arecibo.

13   That is where he was stashing guns, and that's exactly what he

14   was -- he was an enforcer.  He was charged as an enforcer.

15   And one of the acts is that he -- that he kept arms for the

16   organization.

17        THE COURT:  Rather than keeping them in Bayamon or in

18   Guaynabo, he kept them in Arecibo?  That's what you're telling

19   me?

20        MR. CUYAR:  Exactly, Your Honor.  And further, the

21   Jencks material I saw for our defendant is that they were at

22   Rio Grande and other places that weren't in Bayamon, other

23   places not close to Bayamon.

24        THE COURT:  Let me ask the Government, that's the

25   evidence that you have?

1    MS. HERNANDEZ:  Your Honor, it is correct that that

2 evidence was to be used in this case in order to prove the

3 fact that he had weapons for the organization.

4    THE COURT:  I understand that, but are we sure -- are

5 we sure that the facts of the '06 case in Arecibo are related

6 to the conspiracy in Bayamon, or is it just that you are

7 assuming that?

8    MR. CUYAR:  I am showing her what was provided

9 exactly in Jencks material, Your Honor.

10    THE COURT:  Let me tell you what's in my mind,

11 because it is always good, we are told, judges are instructed

12 that honesty in sentencing is extremely important.  And these

13 days where you have so much unacceptable violence on this

14 island -- now last year we had almost one thousand murders

15 committed by individuals who basically have weapons in

16 violation of the law.

17    This month alone, January and February we are almost

18 duplicating the same, the murder rate for the months of

19 January and February of the year 2010.  At the rate we're

20 going, we're going to surpass one thousand murders this year.

21    I am sitting here to sentence an individual who had a

22 conviction in Arecibo for possession of a revolver with

23 mutilated serial number.  You know what that means.  Stolen.

24    MR. CUYAR:  Yes, Your Honor.

25    THE COURT:  Smith and Wesson, nine millimeter pistol

Case: 11-1259    Document: 00116266399    Page: 120    Date Filed: 09/27/2011    Entry ID: 5582929

1  with mutilated serial number; carbon pistol, caliber 5.5; a

2  Glock 40 millimeter pistol; 1,452 bullets of caliber 5.54 --

3  56; 254 bullets of caliber .40; 16 bullets of caliber .45,

4  even though he had no .45 firearms; 77 bullets of nine

5  millimeters; plus some drugs.  Let's forget about drugs for

6  the time being.

7          And you're telling me that he pled guilty, and that's

8  fine, but I have to be convinced inside my own mind that this

9  is related to the conspiracy that was going on in this case in

10  Bayamon, because if it wasn't, I don't think I should accept

11  it just like that, as if it was -- I need to know.  I have

12  to -- so we have to discuss it.

13          MR. CUYAR:  Well, that's the information, what we are

14  stating, Your Honor, that it was in 2006, part of the

15  conspiracy; but further, that it was provided in Jencks

16  material.  And that when we verified the Jencks material, it

17  was requested by the Bayamon District Attorney's Office.

18          THE COURT:  It doesn't mean much.  I need a clear

19  statement here on this record that for sure this stashing of

20  firearms in Arecibo had -- was related to the Bayamon

21  conspiracy, because if it's a different crime, it's not

22  relevant conduct; and I'm not letting guns by -- I am not

23  going to let guns go by easily, no way, because everybody

24  sitting in this courtroom today can be a victim of this kind

25  of individual, while even having an espresso coffee innocently

Case: 11-1259    Document: 00116266399    Page: 121    Date Filed: 09/27/2011    Entry ID: 5582929

1    somewhere.  That's the way it goes.  So I need to know.

2             MS. HERNANDEZ:  Yes, Your Honor.  We would request

3    five minutes to contact the case agent, and also --

4             THE COURT:  Let's call this case for later, because

5    if it's not relevant conduct, I'm going to count it, and I

6    don't want anything made up here.  I need to know for sure.

7             MS. HERNANDEZ:  Yes, Your Honor.

8             THE COURT:  Let's pass this case for later.

9             MR. CUYAR:  Okay.  Your Honor, if you allow me, I

10   have at 10:15 an arraignment with Magistrate Judge Marcos

11   Lopez.

12            THE COURT:  He will have to wait.

13            MR. CUYAR:  Okay.  Thank you.

14            THE COURT:  Very well.  Next case.

15            (Recess taken.)

16            (Proceedings resumed.)

17            THE COURT:  Let's recall the case of Mr. Ortiz.

18            COURTROOM DEPUTY:  For sentencing hearing, 10-251

19   United States of America versus Antonio Ortiz Aponte.

20   Appearing on behalf of the Government, Jenifer Hernandez; and

21   appearing on behalf of the defendant, Attorney Javier Cuyar.

22            MR. CUYAR:  Good morning, Your Honor.

23            COURTROOM DEPUTY:  Defendant is present.

24            MR. CUYAR:  Javier Cuyar-Olivo, Court-appointed

25   attorney for Mr. Ortiz Aponte.

Case: 11-1259    Document: 00116266399    Page: 122    Date Filed: 09/27/2011    Entry ID: 5582929

1      Your Honor, before we begin, I would like to clarify

2  something I stated to you regarding the stipulated version of

3  facts.  I didn't have it with me.  I told Your Honor that on

4  the stipulated version of facts it said that he stashed guns.

5  That is not correct, Your Honor.  What it says is -- I have it

6  with me.  I didn't have it with me.  It's that he carried and

7  used firearms.  Carried, stashed, used firearms; but I wanted

8  to clear that for the record, Your Honor.

9      But it says, during and in relationship to such drug

10  trafficking crime, aiding and abetting other persons, used and

11  carried firearms.

12      THE COURT:  I understand that.  That's why he's going

13  to get a consecutive sentence here for the guns.  But the

14  question is which guns.  Are the 2006 guns these guns?

15      MS. HERNANDEZ:  Your Honor.  If we may, Your Honor.

16  Just to clarify why he is making that clarification is, as we

17  indicated to defense counsel, the evidence that we had was not

18  that these firearms were being stashed for the drug

19  trafficking organization of Virgilio Davila.  This was

20  relating to firearms that were received in a residence in

21  Manite, and it was a prosecution in Arecibo, because Manite is

22  part of the Arecibo jurisdiction.

23      As to that, the only reason that the firearms would

24  be used is to establish that in fact he was in possession of

25  firearms, and those firearms were seized in 2006, not that he

Case: 11-1259    Document: 00116266399    Page: 123    Date Filed: 09/27/2011    Entry ID: 5582929

1    was stashing firearms for the organization.  So the relevancy

2    to be used in a trial, for example, would be the fact that he

3    in fact was in possession of firearms and that he had

4    firearms.

5        Nonetheless, this is separate from the fact of

6    establishing that he was stashing those firearms for the

7    organization itself.  He was carrying them, because he was an

8    enforcer for the -- for drug trafficking organizations, one of

9    them being the Virgilio Davila Housing, located in the housing

10   facility of Virgilio Davila.  So as to that respect, this is a

11   separate case from what is the investigation of the Virgilio

12   Davila.  And that is what we learned from the calls that we

13   made to the Strike Force and to the DA.

14       THE COURT:  That is the logical -- only logical

15   explanation, because it doesn't make sense.  It doesn't make

16   sense that he has a 2006 conviction in the Arecibo Superior

17   Court for firearms, and that that is relevant conduct in a

18   conspiracy that has -- and he is arrested for it a lot later

19   in Bayamon in another area completely.

20       This man has a criminal record for firearms, and I do

21   think, I do think that the correct thing to do is to count

22   this as criminal history.  It's the only way we can actually

23   deal with this honestly.  It cannot be relevant conduct to the

24   Bayamon case.  It cannot be.

25       MS. HERNANDEZ:  And there is another matter.

Case: 11-1259     Document: 00116266399     Page: 124     Date Filed: 09/27/2011     Entry ID: 5582929

1      THE COURT:  If you have any evidence that it is, you

2  let me know now, because I don't see it in the record.

3      MS. HERNANDEZ:  Your Honor, there is another matter

4  we also brought forward to defense counsel, and it's the fact

5  when the prosecutor entered into the agreement, he made sure

6  that it indicated that it were to run consecutive as to any

7  other sentence, because he was aware that he had pled guilty

8  in this case.  Nonetheless, that is the wording that he used

9  in the sentence, that it be consecutive.

10     THE COURT:  Right, has to be also consecutive,

11  because it's a different case.

12     MR. CUYAR:  Our position was, Your Honor, that it was

13  part of the conspiracy, since it was in 2005, the Search

14  Warrant was requested by the Bayamon District Attorney's

15  Office, and it was -- and it was provided in Jencks material,

16  Your Honor.

17     THE COURT:  Well, the mere fact that you are telling

18  me that it's relevant conduct, and the mere fact that the only

19  relationship to Bayamon is that some sort of Search Warrant

20  was initiated at the request of a Bayamon prosecutor, doesn't

21  mean much.  If you have any evidence to prove to me that this

22  is the evidence -- that this is relevant conduct, you better

23  tell me now.  Do you have any evidence that says that?

24     MR. CUYAR:  The evidence that I have told you, Your

25  Honor.

Case: 11-1259     Document: 00116266399     Page: 125     Date Filed: 09/27/2011     Entry ID: 5582929

1          THE COURT:  Okay.  Very well.  Then I am going to

2     consider this as non-relevant conduct, and we have to then

3     give it the -- I think it's three points for criminal history,

4     correct?

5          PROBATION OFFICER:  (Nodding head up and down.)

6          THE COURT:  Correct.  In which case his criminal

7     history should be II, correct?

8          PROBATION OFFICER:  (Nodding head up and down.)

9          THE COURT:  And in that case, the presentence report

10     has to be amended.

11          Very well.  Counsel, anything else that you would

12     like to say?

13          MR. CUYAR:  Well, Your Honor, I have to say that

14     Mr. Ortiz is very remorsed (sic) by the acts he committed.

15     He's suffering the consequences, as well as his family.  Part

16     of his family is present in the courtroom, Your Honor.  His

17     father, Mr. Antonio Ortiz; his mother, Ms. Aponte; one of his

18     his aunts; and one of his nephews, Your Honor.

19          That is one of the reasons he has timely demonstrated

20     a recognition of responsibility for this, his criminal

21     conduct, Your Honor.

22          THE COURT:  Anything that he would like to say?

23          THE DEFENDANT:  Yes.  I'd like to apologize to my

24     family, and tell them that I love them very much.  And I am

25     repentant of what I did.  I am very repentant, and I don't

Case: 11-1259    Document: 00116266399    Page: 126    Date Filed: 09/27/2011    Entry ID: 5582929

1   want to go through this embarrassing process again.  And I

2   assume my responsibility.

3           THE COURT:  Well, let's review also -- anything else,

4   Government, aside from the recommendation and you stand by the

5   Plea Agreement?

6           MS. HERNANDEZ:  No, Your Honor.  That would be the

7   statement.

8           THE COURT:  Let's review the criminal record and the

9   criminal situation here.  Aside from what we discussed

10  previously, the 2006 Arecibo conviction included six counts

11  for violations to the Puerto Rico firearms laws, and included

12  the possession of several firearms.  Actually, he was arrested

13  in Camuy for illegal possession of a revolver with a

14  mutilated -- obliterated serial number; a Smith and Wesson

15  nine millimeter pistol with an obliterated serial number;

16  carbon pistol, caliber 5.56; a Glock, 40 millimeter pistol; as

17  I said before, 1,452 bullets, caliber 5.56; 254 bullets,

18  caliber .40; 16 bullets, caliber .45; 77 bullets, nine

19  millimeter; 73 bullets, .22 caliber.

20          There is also, surprising -- surprising, but not

21  unusual for cases coming out of this region, in May of 2002,

22  he was charged with illegal possession of a Smith and Wesson

23  caliber revolver with an obliterated serial number.  And

24  believe it or not, the case was dismissed for lack of diligent

25  prosecution in state court.

Case: 11-1259    Document: 00116266399    Page: 127    Date Filed: 09/27/2011    Entry ID: 5582929

1       And in the year 2003, he was charged with theft in

2   Bayamon Superior Court, and the charges were dismissed.   In

3   the year 2009, he was charged with first degree murder,

4   attempted murder, and five counts or violations of the Puerto

5   Rico Firearms Act.   The record shows that he possessed two

6   pistols hidden inside the dash of an Envoy, MCA vehicle.   This

7   was on May 4th, 2009.   And on May 11, 2009, he was again

8   charged with illegal possession of two firearms, one inside

9   the dash of a Sequoia Toyota SUV, and a rifle.

10      On June the 2nd, 2010, surprisingly again all the

11  charges regarding the weapons law violations were dismissed

12  pursuant to local Rule of Criminal Procedure 247(B).   You know

13  what that is?   In the interest of justice they call that rule.

14  In the interest of justice.

15      I'm just reviewing this, because this is something

16  that strikes the reader of this Presentence Report as highly

17  unusual, to say the least.   Anyway, the statutory maximum in

18  the firearms count is ten years; am I right?

19          PROBATION OFFICER:  Maximum?

20          THE COURT:  On the firearms count.

21          PROBATION OFFICER:  Life.

22          THE COURT:  I thought it was ten years for some

23  reason.   Very well.   This is what we're going to do.   His base

24  offense level is 27.

25          MR. CUYAR:  Yes, Your Honor.

Case: 11-1259    Document: 00116266399    Page: 128    Date Filed: 09/27/2011    Entry ID: 5582929

1    THE COURT:  Correct?  His Criminal History Category

2    is II.  The Guideline Imprisonment Range on the drug count is

3    78 to 97 months; and the fine range is 12,500 to four million;

4    plus supervised release of at least eight years as to Count I,

5    and not more than five years as to Count II.

6    Aside from the fact that he has been a drug user, you

7    heard me go through the Presentence Report and discuss his

8    various encounters with the law, surprising encounters, and

9    very surprising dispositions, not knowing the facts of course.

10    But it's a pattern that we see.  It's a pattern that comes out

11    case after case in this area of the island, out of this court.

12    It's a very scary thing that is going on.

13    And then you wonder why is it that some people say

14    that crime pays.  Because apparently it does pay.

15    So what we're going to do is this:  We're going to

16    sentence him to 97 months on the drug count, and to 120 months

17    on the firearms count, to be served consecutively with each

18    other for a total of 270 months.  And at the same time that

19    will be observed consecutively with the state convictions if

20    he's revoked.  Those are cases CLA 2007-G-0151 to G-0156, and

21    with criminal case CSC 2007-G-0456.

22    Upon release from confinement, he will be placed on

23    supervised release for a period of ten years as to Count I and

24    five years as to Count II, to run concurrently with each other

25    under the following terms and conditions.  He will not commit

Case: 11-1259    Document: 00116266399    Page: 129    Date Filed: 09/27/2011    Entry ID: 5582929

1    another Federal, state or local crime; will observe the

2    standard conditions; will not unlawfully possess controlled

3    substances; will refrain from possessing firearms, destructive

4    devices or dangerous weapons.

5         He shall refrain from the unlawful use of a

6    controlled substances while on supervision.  He will be drug

7    tested, first test to occur within 15 days of release, and

8    thereafter random, not exceeding 104 samples per calendar

9    year.

10        Full effect of the Drug After Care Program policy

11   will apply to his case.  He has to give access to his

12   financial information and has to file income tax returns as

13   required by law.

14        The search clause will apply to his supervision.

15   That means that his person, property, house, residence,

16   vehicle, papers, computers, everything can be searched by

17   probation officers moved by reasonable suspicion of him having

18   contraband or having violated the terms and conditions of his

19   release.

20        He has to give DNA samples as required by law; must

21   participate in a vocational training and/or job placement

22   program.  No fine is imposed.  A special monetary assessment

23   is imposed of a hundred dollars per count, for a total of 200.

24        The defendant has 14 days to enter a Notice of

25   Appeal.  Anything else, Counsel?

Case: 11-1259    Document: 00116266399    Page: 130    Date Filed: 09/27/2011    Entry ID: 5582929

1          MR. CUYAR:  Permission to withdraw.

2          THE COURT:  Thank you very much.  You are now

3    excused.

4          MR. CUYAR:  Thank you.

5          (At 11:13 AM, proceedings concluded.)

6                         *      *      *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 11-1259    Document: 00116266399    Page: 131    Date Filed: 09/27/2011    Entry ID: 5582929

```
 1  U.S. DISTRICT COURT    )
 2  DISTRICT OF PUERTO RICO)
 3
 4      I certify that this transcript consisting of 19 pages is
 5  a true and accurate transcription to the best of my ability of
 6  the proceedings in this case before the Honorable Chief Judge
 7  José Antonio Fusté on February 8, 2011.
 8
 9
10
11
12  S/ Amy Walker
13  Amy Walker, CSR 3799
14  Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```

86

Antonio Ortiz Aponte
reg num:35382-069  2-C
Metropolitan Detention Center
PO Box 2005
Cataño, PR. 00963-2005

cc num: 10-251 (JAF)

NOTICE OF APPEAL

In the U.S. District Court of Puerto Rico Motion to proceed in Forma Pauperis

I the above-named petitioner in the above-entitled proceeding, unable to pay the cost of said proceeding or give security, that so I believe I am entitled to address;  also I have a meritorious case due to lack of effective asistance as of Public Counsel, not knowing the consequences of acceptance of guilt, in where the terms by all parties were breached in a confused final judgement set by the Honorable Judge Jose A. Fuster on Febuary 8, 2011, in an exceeded term of prison which was stated at 264 months.

This judgement was ill concieved without the proper facts of case:06-2-400-0196 included by the U.S. Distrct Attorney in the discovery presented against me all related and negotiated before-hand in accordance to the Sentencing Guidelines to a term of 130 months pursuant to Title 18 USC § 3553(a).

I pray this Honorable Court of Appeals will comply and proceed to open this matter as relief to vacate, set aside or correct the sentence imposed.

Att: _Antonio Ortiz_____
Date: _09-Feb-2011_____

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT

2011 FEB 14  P 12: 47

Case: 11-1259   Document: 00116266399   Page: 132   Date Filed: 09/27/2011   Entry ID: 5582929

Case: 11-1259    Document: 00116266399    Page: 133    Date Filed: 09/27/2011    Entry ID: 5582929



**87**

ANTONIO ORTIZ APONTE 35382-069
METROPOLITAN DETENTION CENTER
PO. BOX 2005
CATAÑO, PR. 00963-2005

OFFICIAL BUSINESS
LEGAL DOCUMENT

USMS
SCREEN

SAN JUAN PR 009
10 FEB 2011 PM 1 T

OFFICE OF THE CLERK
UNITED STATES COURT OF APPEALS
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY- SUITE  2500
BOSTON, MA.  02210

OFFICE OF THE CLERK
# UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**88**

MARGARET CARTER
CLERK

JOHN JOSEPH MOAKLEY
UNITED STATES COURTHOUSE
1 COURTHOUSE WAY, SUITE 2500
BOSTON, MA 02210
(617) 748-9057

February 15, 2011

Frances Rios de Moran, Clerk
United State District Court
  for the District of Puerto Rico
150 Carlos Chardon Ave
San Juan, PR 00918

      Re:    10-cr-00251-JAF-16
              <u>United States</u> v. <u>Ortiz-Aponte</u>
              Mistakenly Filed Notice of Appeal

Dear Ms. Rios de Moran:

      Please find attached a notice of appeal filed by Antonio Ortiz-Aponte on February 14, 2011, from the judgment entered in this case on February 14, 2011.  This notice is being transmitted to the district court for docketing pursuant to Fed. R. App. P. 4(d).

                            Sincerely,

                            <u>/s/ Margaret Carter, Clerk</u>