# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## APPEAL NO.  11-1259 and 11-1676

## UNITED STATES
Appellee

v.

## ANTONIO ORTIZ-APONTE, a/k/a Gordo Zantac,
### a/k/a Antonio Aponte-Ortiz

## ANGEL COLON-DE-JESUS, a/k/a Puri, a/k/a Puritin
### Defendants-Appellants

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## CONSOLIDATED BRIEF FOR APPELLEE

---

**ROSA EMILIA RODRIGUEZ-VELEZ**
**United States Attorney**

**Nelson Pérez-Sosa**
**Assistant United States Attorney**
**Chief, Appellate Division**

**Luke Cass**
**Assistant United States Attorney**
**United States Attorney's Office**
**Torre Chardón, Suite 1201**
**350 Carlos Chardón Avenue**
**San Juan, Puerto Rico 00918**
**Tel. (787) 766-5656**
**Fax (787) 772-3976**

# TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Statement of Issues on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    **I.**    **Ortiz-Aponte's  Guilty  Plea  Should  Not  Be  Set  Aside**

    The Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    Discussion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

    **II.**    **The District Court's Denial Of A Departure Under § 5H1.3**
           **Of The Guidelines Was Not An Abuse of Discretion**

    The Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

    Discussion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

## **FEDERAL CASES**

Gall v. United States, 552 U.S. 38 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Koon v. United States, 518 U.S. 81 (1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Paradiso v. United States, 482 F.2d 409 (3d Cir. 1973). . . . . . . . . . . . . . . . . . . . 18

United States v. Booker, 543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Borrero-Acevedo, 533 F.3d 11 (1st Cir. 2008). . . . . . . . . . . 13, 23

United States v. Brewster, 127 F.3d 22 (1st Cir. 1997). . . . . . . . . . . . . . . . . . . . 27

United States v. Burney, 75 F.3d 442 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . . . 18

United States v. Caraballo-Rodriguez, 480 F.3d 62 (1st Cir. 2007).. . . . . . . . . . 16

United States v. Carrasco-De-Jesús, 589 F.3d 22 (1st Cir. 2009). . . . . . . . . . 5, 18

United States v. Correy, 570 F.3d 373 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . 19

United States v. Cotal-Crespo, 47 F.3d 1 (1st Cir. 1995). . . . . . . . . . . . . . . . . . . 15

United States v. Craven, 239 F.3d 91 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 27

United States v. Cruz, 981 F.2d 613 (1st Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Dávila-González, 595 F.3d 42 (1st Cir. 2010). . . . . . . . . . . . . . . 6

United States v. Deane, 914 F.2d 11 (1st Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Dickerson, 514 F.3d 60 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . 24

iv

United States v. Esparza-Gonzalez, 268 F.3d 272 (5th Cir. 2001). . . . . . . . . . . . 23

United States v. Fernández-Cabrera, 625 F.3d 48 (1st Cir. 2010). . . . . . . . . . . . 25

United States v. Gilman, 478 F.3d 440 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . 22

United States v. Guadalupe-Rivera, 501 F.3d 17 (1st Cir. 2007). . . . . . . . . . . . . 5

United States v. Guzman, 85 F.3d 823 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . 26

United States v. Hogan, 862 F.2d 386 (1st Cir. 1988). . . . . . . . . . . . . . . . . . . . 26

United States v. Joost, 133 F.3d 125 (1st Cir. 1998). . . . . . . . . . . . . . . . . . . . . 13

United States v. Lauzon, 938 F.2d 326 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . 30

United States v. Maldonado-Montalvo, 356 F.3d 65 (1st Cir. 2003). . . . . . . . . . 28

United States v. Molinaro, 428 Fed. Appx. 649 (7th Cir. 2011). . . . . . . . . . . . . 18

United States v. Nguyen, 618 F.3d 72 (1st Cir. 2010). . . . . . . . . . . . . . . . . . . . 23

United States v. Ortiz-García, No. 10-2323, 2011 WL 6061352,
    at *4 (1st Cir. Dec. 7, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Ospina, 18 F.3d 1332 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . 18

United States v. Otero, 277 Fed. Appx. 12 (1st Cir. 2008). . . . . . . . . . . . . . . . . 14

United States v. Pulido, 566 F.3d 52 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . 22

United States v. Raineri, 42 F.3d 36 (1st Cir. 1994). . . . . . . . . . . . . . . . . . . . . 17

United States v. Riggs, 287 F.3d 221 (1st Cir. 2002). . . . . . . . . . . . . . . . . . 12, 25

United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005). . . . . . . . . . 21-22

United States v. Sicher, 576 F.3d 64 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Sklar, 920 F.2d 107 (1st Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Smith, 511 F.3d 77 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Studley, 907 F.2d 254 (1st Cir.1990). . . . . . . . . . . . . . . . . . . . . 30

United States v. Walker, No. 10-1092, 2011 WL 5865652,
    at *14 (1st Cir. Nov. 23, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Williams, 891 F.2d 962 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . 30

United States v. Wright, 582 F.3d 199 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . 29

United States v. Zapata, 589 F.3d 475 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . 24

## FEDERAL RULES

Fed. R. App. P. 4(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Crim. P. 11(b)(1)(H). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Crim. P. 32(i)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 924(c)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3742(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 860. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

### SENTENCING GUIDELINES

U.S.S.G. § 1B1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

U.S.S.G. § 5H1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL NO.  11-1259 and 11-1676

UNITED STATES
Appellee

v.

ANTONIO ORTIZ-APONTE, a/k/a Gordo Zantac,
a/k/a Antonio Aponte-Ortiz

ANGEL COLON-DE-JESUS, a/k/a Puri, a/k/a Puritin
Defendants-Appellants

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

CONSOLIDATED BRIEF FOR APPELLEE

---

TO THE HONORABLE COURT:

**COMES NOW**, the United States of America herein represented through the undersigned attorneys, and very respectfully, submits the following Consolidated Brief for Appellee:

## STATEMENT OF ISSUES ON APPEAL

**I.**   **Whether Ortiz-Aponte's Guilty Plea Should Be Set Aside**

**II.**   **Whether The District Court's Denial Of A Departure Under § 5H1.3 Of The Guidelines Was An Abuse Of Discretion**

## STATEMENT OF JURISDICTION

This is a consolidated appeal from the judgments in Criminal Case No. 10-251 (JAF).[1]   The district court exercised jurisdiction over this matter pursuant to 18 U.S.C. § 3231.  The Courts of Appeals have jurisdiction over appeals from final orders of the district courts pursuant to 28 U.S.C. § 1291, and jurisdiction over appeals filed by defendants from final sentences under 18 U.S.C. § 3742(a).  Federal Rule of Appellate Procedure 4(b)(1) requires a notice of appeal in a criminal case to be filed in the district court within fourteen (14) days following the date of entry of the judgment or order.

Defendant-appellants Angel Colón De Jesús ("Colón De Jesús") and Antonio Ortiz-Aponte ('Ortiz-Aponte") (collectively the "defendants") were sentenced on May 16, 2011, and February 8, 2011, respectively, after pleading guilty pursuant to plea agreements.  D.E. 1154, 1756.  Colón De Jesús' judgment was entered on May 17, 2011, and he filed a timely notice of appeal on May 30, 2011.  D.E. 1760, 1855.  Ortiz-Aponte's judgment was entered on February 14, 2011, and he filed a timely notice of two days later.  D.E. 1187, 1224.

---

1.   References to the record will be cited as follows: Docket Entry or Entries (D.E.); Page (p.); Pages (pp.); Number (No.); Plea Agreement (PA); Change of Plea Hearing Transcript (COP); Sentencing Hearing Transcript (SHT); and Pre-Sentence Investigation Report (PSR).

## STATEMENT OF THE CASE

On July 14, 2010, a grand jury in the District of Puerto Rico charged the defendants and 107 others with two (2) Counts. D.E. 3. Count One alleged that from 2005 to July 14, 2010, the defendants knowingly and intentionally conspired to possess with intent to distribute in excess of: one (1) kilogram of heroin, fifty (50) grams of crack, five (5) kilograms of cocaine, 100 kilograms of marijuana, and detectable amounts of Oxycodone and Alprazolam in violation 21 U.S.C. sections 841(a)(1), 846, and 860. *See id*. The defendants and others distributed these narcotics in several housing projects in Bayamón, Puerto Rico. *See id*. The drug trafficking organization had a defined hierarchy of leaders, enforcers, runners, sellers, drug processors, look-outs, and facilitators and used firearms to protect themselves and their enterprise. *See id*. Colón De Jesús was a leader, manager, and enforcer. *See id*. Ortiz-Aponte was an enforcer and drug processor. *See id*. Enforcers used firearms to protect the conspiracy including its leaders and drug points. *See id*. Count Two charged that from 2005 to July 14, 2010, the defendants, aiding and abetting each other, carried and used firearms during and in relation to the drug trafficking offense in Count One in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. D.E. 3.

4

The defendants pled guilty to Counts One and Two with plea agreements. The parties agreed to recommend a sentence of 168 months imprisonment for Colón De Jesús. *See* Colón De Jesús PA pp. 1-3, 7. With respect to Ortiz-Aponte, the parties agreed to recommend 130 months imprisonment assuming a Criminal History Category I, or the lower end of the applicable guideline sentencing range ("GSR") if he had a Criminal History Category of II, or higher. *See* Ortiz-Aponte PA p. 5. Colón De Jesús was sentenced to 135 months for Count One and a consecutive sentence of 60 months for Count Two, for a total sentence of 195 months. D.E. 1760. Ortiz-Aponte was sentenced to 97 months for Count One and a consecutive sentence of 120 months for Count 2 for a total of 217 months. D.E. 1187. This consolidated appeal followed.[2]

---

2.      The government does not seek to enforce the waiver of appeal provisions in the plea agreements. *See United States v. Carrasco-De-Jesús*, 589 F.3d 22, 26 (1st Cir. 2009); *United States v. Guadalupe-Rivera*, 501 F.3d 17, 20 n. 3 (1st Cir. 2007).

### STATEMENT OF THE FACTS[3]

The defendants agreed that they carried and used firearms while members of a conspiracy that, from 2005 to July, 2010, knowingly and intentionally conspired to possess with intent to distribute in excess of: one (1) kilogram of heroin, fifty (50) grams of crack, five (5) kilograms of cocaine, 100 kilograms of marijuana, and detectable amounts of Oxycodone and Alprazolam. *See* Colón De Jesús PA p. 12; Ortiz-Aponte PA p. 11. The object of the conspiracy was to distribute controlled substances in housing projects in Bayamón, Puerto Rico. *See id*. Colón De Jesús was a leader of drug trafficking operations at drug points in housing projects and agreed to be held responsible for 3.5 kilograms, but less than 5 kilograms of cocaine. *See* Colón De Jesús PA p. 13. Ortiz-Aponte participated in drug distribution and provided protection for conspiracy members and profits. *See* Ortiz-Aponte's PA pp. 11-12. He agreed to be held responsible for at least 2 kilograms, but less than 3.5 kilograms of cocaine. *See id*. at 12.

---

3.    Because this is an appeal from a guilty plea, the facts are taken from the change of plea colloquy and the PSR. *See United States v. Dávila-González*, 595 F.3d 42, 45 (1st Cir. 2010) (quoting *United States v. Vargas*, 560 F.3d 45, 47 (1st Cir. 2009)); Colón De Jesús COP pp. 25-26; Ortiz-Aponte COP pp. 21-22; Colón De Jesús PSR pp. 15-17; Ortiz-Aponte PSR pp. 19-20.

## SUMMARY OF ARGUMENT

Ortiz-Aponte argues that his guilty plea should be set aside because he was never informed of the maximum penalty for Count Two. At the plea hearing the court said, "[l]et's first talk about the statutory penalties, which are the ones that appear in Title 21 and Title 18. One of the alternatives for sentence is making use of those statutory penalties. If you were to be convicted under the Indictment without a Plea Agreement, by that mere fact you are exposing yourself to a statutory mandatory term of ten years; a maximum of life imprisonment." *See* Ortiz-Aponte COP pp. 12-13. Aside from the court's plural use of "statutory penalties," the court's specific reference to those "that appear in Title 21 and Title 18" shows that its comments were intended to cover both Counts One and Two because Count One alleged only violations of Title 21 and the sole violation under Title 18 was Count Two. D.E. 3. Therefore, there was no plain error because the district court correctly advised Ortiz-Aponte that Counts One and Two carried a maximum statutory penalty of life imprisonment.

Even assuming that Ortiz-Aponte satisfied the first two prongs, fulfilling the third prong of plain error requires him to demonstrate a reasonable probability that, but for the alleged error, he would not have pled guilty. Ortiz-Aponte says that he would not have plead guilty if he was informed that Count Two carried a maximum

of life imprisonment and believed he would receive only 60 months. This claim is dubious because he was already exposed to life imprisonment for Count One and the district court repeatedly advised Ortiz-Aponte that it had "the authority to impose a higher sentence or lower sentence" and did not have to follow the sentencing recommendation in the plea agreement. *See* Ortiz-Aponte COP pp. 14-15. The court specifically asked Ortiz-Aponte if he understood that the 60 months contemplated in the plea agreement was "simply a recommendation" and he said, "[y]es, I understand." *See id*. at 18. Therefore, Ortiz-Aponte was aware that a sentence of 60 months for Count Two was a recommendation, not an entitlement, and that he faced life imprisonment.

Ortiz-Aponte argues that the district court erred by not advising him that he faced a potential consecutive sentence for a pending local case. Rule 11 does not require a district court to inform the defendant of mandatory consecutive sentencing and the court's choice between a consecutive or a concurrent sentence is typically discretionary. Therefore, Ortiz-Aponte cannot withstand plain error review under these circumstances and these facts did not affect the voluntariness of his guilty plea.

Ortiz-Aponte argues that the district court clearly erred when it considered a 2006 firearms conviction as unrelated because it occurred within the time-frame of the conspiracy and was listed as relevant conduct in the PSR. Determining whether

a defendant's prior offense is related conduct under U.S.S.G. § 1B1.3 is a fact-specific inquiry that involves consideration of several factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent. The district court took these factors into account and did not clearly err by finding that the 2006 firearm offense was unrelated conduct. Once the government established the existence of a prior conviction, the burden shifted to the defendant to show that it was constitutionally infirm or otherwise inappropriate for consideration. The defense did not meet its burden because its contention that the firearm offense was related to the conspiracy was rebutted by the prosecutor's proffer that it was "a separate case" from the investigation that led to the federal charges. *See* Ortiz-Aponte SHT p. 11. The district court considered the appropriate factors such as geographical proximity of the two offenses and a common criminal plan in making its determination and rejecting the defense's argument. There was no clear error.

Ortiz-Aponte argues that the district court erred by taking into consideration erroneous facts that had nothing to do with the offense conduct, such the high murder rate in Puerto Rico, which led to an unreasonable sentence. The district court's reasoning was not erroneous and this Court has repeatedly affirmed consideration of similar factors in fashioning an appropriate sentence. He also claims that the district

court erred by failing to address him to verify whether the PSR was discussed with him and by failing to explain his 10-year sentence for Count Two. Ortiz-Aponte's attorney lodged no objection to the PSR, therefore, any error under Rule 32(i)(1)(A) was harmless and did not affect Ortiz-Aponte's substantial rights. The district court properly explained the reasons for its sentence on Count Two. It prioritized Ortiz-Aponte's criminal history, pervasive history of illegal firearms, and the gravity of the offense over any mitigating factors and reflected a choice of emphasis.

Despite admitting that the issue was never addressed in the plea agreement, Ortiz-Aponte argues that the government breached the plea agreement by arguing in favor of imposing a consecutive federal sentence to the local conviction. The government cannot breach a term that it never agreed to. Whether the sentence for the Commonwealth firearm charge ran consecutive to his federal sentence was not addressed in the plea agreement, therefore, Ortiz-Aponte had no reasonable expectation for this recommendation. The government abided faithfully to the terms of its written agreement and nothing more was required. Ortiz-Aponte's conviction and sentence should be affirmed.

The district court did not abuse its discretion by denying Colón De Jesús' motion for a departure based on § 5H1.3. A departure based upon a defendant's mental condition are discouraged and requires a finding that the mental condition is

extraordinary or atypical.  The court heard and considered the arguments for and against the departure before finding that Colón De Jesús' circumstances were not atypical.  Therefore, there was no clear error and the denial should be affirmed.

**ARGUMENT**

## I.     Ortiz-Aponte's Guilty Plea Should Not Be Set Aside

**<u>The Claim</u>**

Ortiz-Aponte argues that his guilty plea should be set aside because he was "never advised of the maximum penalty he faced nor was he informed of [a] possible consecutive sentence if convicted for local offenses pending" when his hearing was held.  *See* Ortiz-Aponte's Brief p. 12.  He claims that resentencing is warranted because the district court committed "multiple procedural errors" by treating a "related case as unrelated, taking into consideration improper facts in determining [the] sentence to be imposed, failing to explain why it imposed [a] 10 year sentence of incarceration in firearms count and failing to inquire if [the] presentence report had been reviewed." *See id*. at 12-13.  He argues that he is entitled to withdraw his guilty plea because the prosecutor breached the plea agreement by arguing in favor of imposing a consecutive federal sentence to the local conviction. *See id*. at 13, 29.

**<u>Standard of Review</u>**

Ortiz-Aponte agrees that plain error review applies to the district court's purported Rule 11 errors.  *See* Ortiz-Aponte's Brief p. 17.  There was no objection based on a breach of the plea agreement, therefore, plain error review applies to this claim too.  *See United States v. Riggs*, 287 F.3d 221, 224 (1st Cir. 2002).  To satisfy

12

plain error, he must show an "(1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'" *United States v. Borrero-Acevedo*, 533 F.3d 11, 15 (1st Cir. 2008). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). In *United States v. Booker*, the Supreme Court rendered the sentencing guidelines advisory thus limiting appellate review of sentencing decisions to determining whether they were "reasonable." 543 U.S. 220, 260 (2005). Therefore, this Court reviews sentences "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 40 (2007). This standard is used regardless of whether the sentence imposed is inside or outside the GSR. *See id.* at 50. A preserved claim of whether conduct was related under U.S.S.G. § 1B1.3 is reviewed for clear error. *See United States v. Joost*, 133 F.3d 125, 132 (1st Cir. 1998).

## **Discussion**

Rule 11 requires the district court to inform a defendant during a plea colloquy of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H) (2010). The Rule 11 safeguards are meant to ensure the defendant is fully informed of his rights and to ascertain

13

whether the plea is knowing and voluntary. *See United States v. Smith*, 511 F.3d 77, 85 (1st Cir. 2007). This Court does not require the recital of any fixed incantation. *See United States v. Otero*, 277 Fed. Appx. 12, 14 (1st Cir. 2008) (per curiam) (unpublished)[4] (citing *United States v. Cotal-Crespo*, 47 F.3d 1, 5 (1st Cir. 1995)). Rather, it examines the "totality of the circumstances surrounding the plea to determine whether the objectives of the procedural safeguards imposed by Rule 11 have been satisfied." *See Otero*, 277 Fed. Appx. at 14 (citing *United States v. Negron-Narvaez*, 403 F.3d 33, 39 (1st Cir. 2005)).  Ortiz-Aponte claims that his guilty plea should be set aside because he was "never informed" of the maximum penalty for Count Two. *See* Ortiz-Aponte's Brief pp. 14-17.  The plea agreement stated that Ortiz-Aponte faced "a maximum term of life imprisonment" for Count One, but provided no maximum penalty for Count Two. *See* Ortiz-Aponte PA pp. 2-3.  Ortiz-Aponte acknowledged that he understood that "a consecutive term of imprisonment of sixty (60) months is mandatory" and "to be served consecutively to the term of imprisonment imposed in Count One." *See id*. at 3.  At the plea hearing, the court said, "[l]et's first talk about the statutory penalties, which are the ones that appear in Title 21 and Title 18. One of the alternatives for sentence is making use of

---

4.     This unpublished opinion is being cited for its persuasive value as permitted by Local Rule 32.1.0(a).

those statutory penalties. If you were to be convicted under the Indictment without a Plea Agreement, by that mere fact you are exposing yourself to a statutory mandatory term of ten years; a maximum of life imprisonment." *See* Ortiz-Aponte COP pp. 12-13.   Aside from the court's plural use of "statutory penalties," it specifically referenced those "that appear in Title 21 and Title 18," which shows that its comments were intended to cover both Counts One and Two. *See id*.  Count One alleged only violations of Title 21 and the sole violation under Title 18 offense was Count Two.  D.E. 3.  Therefore, the district court correctly advised Ortiz-Aponte that Counts One and Two carried a maximum statutory penalty of life imprisonment and there was no plain error.[5]  *See Cotal-Crespo*, 47 F.3d at 4-5 ("What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant rather than the form of communication"); Ortiz-Aponte COP pp. 12-13.

Even assuming that Ortiz-Aponte satisfied the first two prongs, fulfilling the

---

5.    The district court also stated that Ortiz-Aponte was exposing himself to "a statutory mandatory term of ten years."  Ortiz-Aponte COP p. 13. This would only be true for the firearm charge if the weapon was discharged rather than possessed as here. *See* 18 U.S.C. § 924(c)(1)(A)(i),(iii) (2010). Nonetheless, it is the government's understanding that based on the court's specific reference to Title 18 and its repeated plural use of "statutory penalties" that it intended to inform Ortiz-Aponte that the maximum for Counts One and Two was "life imprisonment." Ortiz-Aponte COP pp. 12-13.

third prong of plain error requires him to demonstrate a reasonable probability that, but for the alleged error, he would not have pled guilty.  *See United States v. Caraballo-Rodriguez*, 480 F.3d 62, 76 (1st Cir. 2007).  Ortiz-Aponte suggests that he would not have plead guilty if he knew that Count Two carried a maximum of life imprisonment.  *See* Ortiz-Aponte's Brief p. 18.  But, he was already exposed to life imprisonment for Count One, therefore, any claim that he would not have pled guilty if he knew that was also true of Count Two is dubious.  *See* Ortiz-Aponte PA p. 2. Ortiz-Aponte's claim that the "impression created by the language of the plea agreement was that he faced a mandatory term of 60 months incarceration not more" is belied by the record.  *See* Ortiz-Aponte's Brief p. 15.  The district court told Ortiz-Aponte that it had "the authority to impose a higher sentence or lower sentence" and did not have to follow the sentencing recommendation in the plea agreement.  *See* Ortiz-Aponte COP pp. 14-15.  The court specifically asked Ortiz-Aponte if he understood that the 60 months contemplated in the plea agreement was "simply a recommendation" and he said, "[y]es, I understand."  *See id*. at 18.  This shows that Ortiz-Aponte was aware that a sentence of 60 months for Count Two was a recommendation, not an entitlement as he now claims.

Ortiz-Aponte argues that the court's error "cannot be considered harmless in light of" his "ten year sentence."  *See* Ortiz-Aponte's Brief p. 12.  Ortiz-Aponte was

advised that he could receive up to life imprisonment, but received 217 months instead and this Court has found Rule 11 errors harmless where, as here, a defendant receives a total sentence that is less than the maximum warned about. *See, e.g., United States v. Raineri*, 42 F.3d 36, 42 (1st Cir. 1994) ("It is true that Raineri might not have pled guilty if he had been correctly told that a far larger penalty threatened him. But one might ask why the defendant is entitled to complain if the actual punishment is no worse than what he was told, and what he was told was even less than the law allows. Arguably, such a defendant ought to be pleased with the error-unless, for extraneous reasons, he has in the meantime changed his mind about making the plea"); *see* Ortiz-Aponte PA p. 2; D.E. 1187.  Therefore, any error was harmless.

Recently, this Court held that the maximum penalty under § 924(c)(1)(A) is life imprisonment. *See United States v. Ortiz-García*, No. 10-2323, 2011 WL 6061352, at *4 (1st Cir. Dec. 7, 2011).  In that case, the defendant was notified for the first time at sentencing that he might receive a life sentence and the omitted information "dramatically altered the sentencing stakes for the defendant." *See id*. at *6-7.  Rather than getting the 120 months recommended in the plea agreement, the defendant received a sentence threefold greater, 360 months. *See id*. at *1.  The circumstances here are different.  Ortiz-Aponte received a within-GSR sentence of 97 months for

Count One and 120 months for Count Two for a total sentence of 217 months. *See* Ortiz-Aponte SHT p. 16; D.E. 1187. Although higher than the parties' recommendation, the circumstances here are not as extreme as those in *Ortiz-García* and the sentence was substantially less than the maximum of life imprisonment.

Ortiz-Aponte argues that the district court erred under Rule 11 by not advising him of "the potential that he faced of a consecutive sentence on the pending local case." *See* Ortiz-Aponte's Brief p. 19. "Rule 11 'does not require a district court to inform the defendant of mandatory consecutive sentencing.'" *United States v. Molinaro*, 428 Fed. Appx. 649, 653 (7th Cir. 2011) (unpublished) (quoting *United States v. General*, 278 F.3d 389, 395 (4th Cir. 2002)); *see also United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996); *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973). "A sentencing court's choice between a consecutive or a concurrent sentence with respect to a defendant who is subject to an undischarged state-court term of imprisonment is normally discretionary." *Carrasco-De-Jesús*, 589 F.3d at 27 (citing 18 U.S.C. § 3584(a)). Ortiz-Aponte cannot withstand plain error review under these circumstances because Rule 11 did not require the district court to advise him of the potential of a consecutive sentence and it was discretionary to run the federal and state sentences consecutively. Therefore, it did not affect the voluntariness of his

guilty plea.

Ortiz-Aponte argues that the district court clearly erred when it considered his 2006 firearms conviction as a separate offense because it occurred within the time-frame of the conspiracy and was listed as relevant conduct in the PSR. *See* Ortiz-Aponte's Brief pp. 21-24. Determining whether a defendant's prior offense is related conduct under U.S.S.G. § 1B1.3 or a distinct offense is a fact-specific inquiry that involves consideration of several factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent. *See United States v. Correy*, 570 F.3d 373, 391 (1st Cir. 2009) (quoting *United States v. Collazo-Aponte*, 216 F.3d 163, 203 (1st Cir. 2000)). The district court took these factors into account when it assessed whether the prior conviction was relevant conduct.[6] The probation officer informed the district court that it considered the offense related conduct because it occurred during "the same time" as the conspiracy. *See* Ortiz-Aponte SHT p. 4. The defense argued that it should be considered relevant conduct because the arrest arose from "the investigation Bayamon was conducting" "[e]ven though the house" where the firearms were found was "in Arecibo." *See id.* at 5. The defense said that Ortiz-Aponte rented a house in

---

6.    Ortiz-Aponte was arrested on April 20, 2006, in Camuy, Puerto Rico for possession of several pistols and cocaine and the case was adjudicated in Arecibo, Puerto Rico. *See* Ortiz-Aponte PSR p. 22.

Arecibo to stash the firearms because he was an enforcer and "kept arms for the organization." *See id*. at 6. The district court remained unconvinced and stated that it needed "a clear statement here on this record that for sure this stashing of firearms in Arecibo had – was related to the Bayamon conspiracy, because if it's a different crime, it's not relevant conduct; and I'm not letting guns by – I am not going to let guns go by easily, no way, because everybody sitting in this courtroom today can be a victim of this kind of individual, while even having an espresso coffee innocently somewhere. That's the way it goes. So I need to know." *See id*. at 8-9. The district court granted a recess so that the prosecutor could contact the case agent. *See id*. at 9. Following the adjournment, the prosecutor advised that "the evidence" "was not that these firearms were being stashed for the drug trafficking organization of Virgilio Davila. This was relating to firearms that were received in [Manatí], and it was a prosecution in Arecibo, because [Manatí] is part of the Arecibo jurisdiction." *See id*. at 10. The prosecutor continued that "the only reason that the firearms would be used is to establish that in fact he was in possession of firearms, and those firearms were seized in 2006, not that he was stashing firearms for the organization. So the relevancy to be used in a trial, for example, would be the fact that he in fact was in possession of firearms and that he had firearms." *See* Ortiz-Aponte SHT pp. 10-11. The government emphasized that "this is separate from the fact of establishing that

he was stashing those firearms for the organization itself." *See id*. at 11. Therefore, the prosecutor said "this is a separate case from what is the investigation of the Virgilio Davila" as confirmed by calls with investigating agents even though Ortiz-Aponte was carrying them because he was an enforcer for the conspiracy. *See id*. The district court found the government's argument to be the "only logical explanation" because it occurred in a different geographic area and he was arrested for his participation in the conspiracy "a lot later." *See id*. The district court asked if the defense had any other evidence to show that the 2006 firearm offense was relevant conduct besides "the mere fact that the only relationship to Bayamon is that some sort of Search Warrant was initiated at the request of a Bayamon prosecutor," which did not "mean much." *See id*. at 12. The defense said that it had only the "evidence" it previously "told" the court. *See id*. The court held that the offense was "non-relevant conduct" and added three criminal history points. *See id*. at 13.

The district court did not clearly err by finding that the 2006 firearm offense was unrelated conduct. "Once the government establishes the existence of a prior conviction, the burden shifts to the defendant to show that the earlier conviction was constitutionally infirm or otherwise inappropriate for consideration." *United States v. Serrano-Beauvaix*, 400 F.3d 50, 54 (1st Cir. 2005) (quoting *United States v. Barbour*, 393 F.3d 82, 93 (1st Cir. 2004)). The defense did not do so here because

its contention that the firearm offense was related to the conspiracy was rebutted by the prosecutor's proffer that it was "a separate case" from the investigation that led to the federal charges. *See* Ortiz-Aponte SHT p. 11. The district court's detailed colloquy showed that it considered the appropriate factors such as geographical proximity of the two offenses and a common criminal plan or intent in making its determination and rejecting the defense's argument. *See Serrano-Beauvaix*, 400 F.3d at 54. There was no clear error.

Ortiz-Aponte argues that the district court erred by considering "erroneous facts that had nothing to do with" the "offense conduct" such the high murder rate in Puerto Rico, which led to an unreasonable sentence. *See* Ortiz-Aponte's Brief pp. 22-23, 25-26. The district court's consideration of the "unacceptable violence on this island" and the numerous "murders committed by individuals who basically have weapons in violation of the law" was not erroneous and this Court has repeatedly affirmed consideration of similar factors in fashioning an appropriate sentence. *See United States v. Pulido*, 566 F.3d 52, 64 (1st Cir. 2009) (finding no error where the district court emphasized the "danger" that defendant's "crimes posed to society"); *United States v. Gilman*, 478 F.3d 440, 447-48 (1st Cir. 2007) (observing district court's "consideration of the harm caused to society by Gilman's conduct" and noting that the court "was permissibly weighing the comparative harms caused by those

crimes in an effort to impose a 'just punishment for the offense' under Section 3553(a)(2)(A)"); *see* Ortiz-Aponte's SHT p. 7.

Ortiz-Aponte claims that the district court erred by failing to address him to verify whether the PSR was discussed with him and by failing to explain his 10-year sentence for Count Two. *See* Ortiz-Aponte's Brief pp. 26-27. "Federal Rule of Criminal Procedure 32(i)(1)(A) requires a sentencing court to 'verify that the defendant and the defendant's attorney have read and discussed the presentence report.'" *United States v. Nguyen*, 618 F.3d 72, 74 (1st Cir. 2010) (quoting Fed. R. Crim. P. 32(i)(1)(A) (2010)). The record is silent as to this inquiry although the court confirmed with Ortiz-Aponte's attorney that there were no objections to the report. *See* Ortiz-Aponte SHT p. 3. Ortiz-Aponte claims that this error "combined with the other procedural errors committed" means that remand and resentencing is appropriate. *See* Ortiz-Aponte's Brief p. 27. This is insufficient under plain error review because Ortiz-Aponte must show that this error affected his substantial rights, which he has not done here. *See Borrero-Acevedo*, 533 F.3d at 15; *see also United States v. Esparza-Gonzalez*, 268 F.3d 272, 273-74 (5th Cir. 2001) (requiring showing of prejudice for Rule 32(i)(1)(A) error). Additionally, where, as here, it is clear from the record that Ortiz-Aponte's counsel was thoroughly familiar with the PSR, the Court "will not assume that defense counsel did not discuss so critically important a document with his client, especially since appellant claims no such dereliction." *See*

*United States v. Cruz*, 981 F.2d 613, 620 (1st Cir. 1992). Since Ortiz-Aponte's attorney lodged no objection to the PSR, any error under 32(i)(1)(A) was harmless and did not affect Ortiz-Aponte's substantial rights. *See United States v. Dickerson*, 514 F.3d 60, 65 (1st Cir. 2008) ("if the error is harmless, it cannot be plain").

The district court properly explained the reasons for its sentence on Count Two when it detailed Ortiz-Aponte's criminal history in the PSR, which included numerous firearm offenses and a first degree murder charge. *See* Ortiz-Aponte SHT pp. 14-16; Ortiz-Aponte PSR pp. 22-23. The court emphasized these "surprising encounters, and very surprising dispositions" of his extensive criminal history. *See* Ortiz-Aponte SHT p. 16. The court also discussed the gravity of the offense earlier and its harmful societal effects. *See id*. at 7. The court's reasoning prioritized Ortiz-Aponte's criminal history, pervasive history of illegal firearms, and the gravity of the offense over any mitigating factors and reflected a choice of emphasis. *See United States v. Zapata*, 589 F.3d 475, 488 (1st Cir. 2009) ("The court's decision to emphasize the nature of the crime over the mitigating factors was a 'choice of emphasis' that is 'not a basis for a founded claim of sentencing error'") (quoting *United States v. Rodríguez*, 525 F.3d 85, 110 (1st Cir. 2008)). "Where the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is

24

sufficiently explained to pass must under section 3553(c)." *United States v. Fernández-Cabrera*, 625 F.3d 48, 54 (1st Cir. 2010).

Despite admitting that the issue was "never addressed" in the plea agreement, Ortiz-Aponte argues that the government breached the plea agreement by arguing in favor of imposing a consecutive federal sentence to the local conviction.[7] *See* Ortiz-Aponte's Brief pp. 19, 27-29. This Court holds "prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance." *See Riggs*, 287 F.3d at 225. However, the prerequisite to that standard is that there first be a promise. The government cannot breach a term that it never agreed to. The prosecutor stated that when it "entered into the agreement, he made sure that it indicated that it were to run consecutive as to any other sentence, because he was aware that he had pled guilty in this case" and "that is the wording that he used in the sentence, that it be consecutive." *See* Ortiz-Aponte SHT p. 12. The defense argued why the sentence should not be consecutive, but did not dispute the government's contention. *See id*. The government's statement was correct because when Ortiz-Aponte pled guilty trial was set for his Commonwealth firearm offense and he had not

---

7.　　Ortiz-Aponte also argues that the government breached the plea agreement "when it failed to uphold" the "recommended guideline agreed upon in the plea." Ortiz-Aponte's Brief p. 29. The government stated that it stood by the recommendation in the plea agreement at sentencing. *See* Ortiz-Aponte SHT p. 14.

even been sentenced yet. *See* Ortiz-Aponte COP pp. 19-20. Ortiz-Aponte pled guilty to this offense one month after pleading guilty to his federal offense. *See* Ortiz-Aponte PSR p. 22. Therefore, neither the parties nor the plea agreement memorialized the future outcome of Ortiz-Aponte's firearm offense. The integration clause in paragraph 21 of the plea agreement does not prove any breach and demonstrates just the opposite. *See* Ortiz-Aponte's Brief p. 28; Ortiz-Aponte PA p. 8. Whether the Commonwealth firearm sentence ran consecutive to his federal sentence was not addressed in the plea agreement, therefore, Ortiz-Aponte had no reasonable expectation for any recommendation for that charge. The fact that he "assumed" that the Commonwealth firearm offense would be relevant conduct is not tantamount to a breach. *See* Ortiz-Aponte's Brief p. 28. The "government abided faithfully by the clear terms of its written agreement" and nothing more was required. *See United States v. Guzman*, 85 F.3d 823, 829 (1st Cir. 1996); *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir. 1988). It made no promises for the Commonwealth charges, which were outside its jurisdictional purview. Ortiz-Aponte's conviction and sentence should be affirmed.

## II.   The District Court's Denial Of A Departure Under § 5H1.3 Of The Guidelines Was Not An Abuse Of Discretion

**<u>The Claim</u>**

Colón De Jesús argues that the district court abused its discretion when it denied his request for a departure under U.S.S.G. § 5H1.3.  *See* Colón De Jesús' Brief pp. 15-17.  He claims that the district court clearly erred by finding his personal characteristics typical, which made his sentence unreasonable.  *See id*. at 17.

**<u>Standard of Review</u>**

Departure decisions are reviewed for abuse of discretion and the attendant factual findings are reviewed for clear error.  *See United States v. Walker*, No. 10-1092, 2011 WL 5865652, at *14 (1st Cir. Nov. 23, 2011); *see also Koon v. United States*, 518 U.S. 81, 96-100 (1996).  The Court affords "substantial deference to most departure decisions."  *United States v. Craven*, 239 F.3d 91, 98 (1st Cir. 2001).

**<u>Discussion</u>**

"[S]entencing courts have substantial leeway regarding degrees of departure." *United States v. Brewster*, 127 F.3d 22, 31 (1st Cir. 1997).  Section 5H1.3 of the Guidelines provides that mental and emotional conditions "may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and

distinguish the case from the typical cases covered by the guidelines." U.S.S.G. §
5H1.3 (2010). A departure "based upon a defendant's mental condition are
discouraged." *United States v. Maldonado-Montalvo*, 356 F.3d 65, 74 (1st Cir.
2003). In order to qualify, "the sentencing court must first make a finding that the
mental condition is extraordinary or atypical." *See id*. The district court did not
abuse its discretion because it heard and considered the arguments for and against the
departure before making a finding that Colón De Jesús' circumstances were not so
unusual to warrant a departure.

Colón De Jesús argued that a departure under § 5H1.3 was warranted because
of his borderline intellectual functioning, minimal cerebral dysfunction, suicide
attempts, history of head trauma, psychological and environmental problems, and
personality disorder. D.E. 1712. The PSR described a history of mental health and
emotional issues as well as Colón De Jesús' extensive drug abuse since childhood.
*See* Colón De Jesús' PSR pp. 22-23. At sentencing, defense counsel argued that
Colón De Jesús' mental health warranted a departure. *See* Colón De Jesús SHT pp.
3-5, 10-11. The district court added that a competency evaluation prepared by the
Bureau of Prisons ("BOP") "concluded voluntary malingering and personality
disorder with antisocial features." *See id*. at 5. The government argued that Colón
De Jesús' leadership role did not conform with a mental "defect" and also referenced

28

the BOP report that concluded Colón De Jesús was malingering and did not suffer from a mental defect. *See id*. at 12. The court denied Colón De Jesús' motion for a departure and found that his circumstances were not atypical. *See id*. at 15. The court said, "I don't think there's anything on this record that allows me to find that the characteristics in this case are unusual or that they are distinguished from the typical participation of a defendant in a typical case covered by the guidelines. So therefore I will not make use of the 5H1.3 guideline." *See id*. On the one hand, the court was presented with an unfortunate background of pervasive drug use and mental and emotional issues. *See* PSR pp. 22-23; D.E. 1712. On the other hand, there was a diagnosis of malingering and a leadership role in criminal behavior that did not comport with a severe mental deficiency. *See* Colón De Jesús SHT pp. 5, 12. The court ultimately concluded that Colón De Jesús' circumstances were not atypical and denied the request. *See id*. at 15. This was not clearly erroneous because "'when two or more legitimate interpretations of the evidence exist, the factfinder's choice between them cannot be deemed clearly erroneous.'" *United States v. Wright*, 582 F.3d 199, 208 (1st Cir. 2009) (quoting *United States v. Espinoza*, 490 F.3d 41, 46 (1st Cir. 2007)). Colón De Jesús' claim that the district court "should have refused to give preferential weight to the BOP" report is unavailing. *See* Colón De Jesús' Brief pp. 15-16. The district court had the discretion to rely on the report and Colón De

29

Jesús has made no showing that the facts therein were clearly erroneous.

Colón De Jesús' claim that his mental and emotional conditions were atypical from the average defendant is unpersuasive. *See* Colón De Jesús' Brief pp. 16-17. This Court has affirmed the denial of downward departures and found there were no extraordinary circumstances justifying a mental health departure for reasons similar to those presented here. *See, e.g., United States v. Lauzon*, 938 F.2d 326, 333 (1st Cir. 1991) (defendant's "borderline intelligence" insufficient to warrant § 5H1.3 departure); *United States v. Sklar*, 920 F.2d 107, 116-17 (1st Cir. 1990) (post-arrest rehabilitation insufficient); *United States v. Deane*, 914 F.2d 11, 14 n. 2 (1st Cir.1990) (family ties insufficient); *United States v. Studley*, 907 F.2d 254, 258 (1st Cir.1990) (mental or emotional condition insufficient); *United States v. Williams*, 891 F.2d 962, 965-66 (1st Cir. 1989) (history of addiction insufficient). The district court appropriately considered Colón De Jesús' evidence, but did not find it persuasive. *See United States v. Sicher*, 576 F.3d 64, 74 (1st Cir. 2009) ("The record demonstrates that the district court in fact did consider the defendant's mental health evidence, but simply did not find it persuasive"). Therefore, the court did not abuse its discretion and its denial should be affirmed.

## CONCLUSION

For the above stated reasons, Ortiz-Aponte's conviction and the defendants' sentences should be affirmed.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of January, 2012.

**ROSA EMILIA RODRIGUEZ-VELEZ**
United States Attorney

/s/ Nelson Pérez-Sosa
Assistant United States Attorney
Chief, Appellate Division

/s/ Luke Cass
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 772-3976

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

Appeal No.  11-1259
11-1676

**UNITED STATES**
**APPELLEE**

v.

**ANTONIO ORTIZ-APONTE, A/K/A GORDO ZANTAC, A/K/A ANTONIO APONTE-ORTIZ**

**ANGEL COLÓN-DE-JESÚS, A/K/A PURI, A/K/A PURITIN**
**DEFENDANTS-APPELLANTS**

1.      This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

  X   14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman).  Specify software name and version, typeface name, and point size below (for example Word Perfect 8, CG Times, 14 point): WordPerfect X4, Times New Roman, 14 point

_____12 point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and characters per inch below (for example, WordPerfect 8, Courier, 12 point):_____

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

_____ Pages (give specific number of pages; may not exceed **30** pages for opening or answering brief or **15** pages for reply brief); **_OR_**

 6,580  Words (give specific number of words; may not exceed **14,000** words for opening or answering brief or **7,000** for reply brief); **_OR_**

_____ Lines of Monospaced Type (give specific number of lines; may not exceed **1,300** lines for opening or answering brief or **650** for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

        I understand that  a material misrepresentation can result in the Court striking the brief or imposing sanctions.  If the Court so directs, I will provide a copy of the word or line print-out.

_____/s/ Luke Cass_____
Date:___January 25, 2012_____                                        Signature of Filing Party

32

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 25, 2012, a copy of the foregoing brief has been filed through the ECF system which will send notification to Rafael F. Castro-Lang, Esq., counsel for appellants.


/s/ Luke Cass
Assistant United States Attorney

33